PATRIC HOOPER (State Bar No. 57343)
JORDAN B. KEVILLE (State Bar No. 217868)
ABIGAIL WONG (State Bar No. 245652)
**HOOPER, LUNDY & BOOKMAN, INC.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-mail: phooper@health-law.com

Attorneys for Plaintiffs SHARP
HEALTHCARE, INTERNIST
LABORATORY and SCRIPPS HEALTH

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE; INTERNIST LABORATORY and SCRIPPS HEALTH,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LEAVITT, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | CASE NO. 08-CV-0170 WPor<br><br>**DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>[filed concurrently with Application for Temporary Restraining Order; Memorandum of Points and Authorities in Support thereof; Declarations in Support thereof; [Proposed] Order thereon]<br><br>Date:   TBD<br>Time:   TBD<br>Courtroom of the Hon. Thomas J. Whelan |

## DECLARATION OF GARY STEVENS

I, GARY STEVENS, declare as follows:

1. I am a co-owner of Internist Laboratory ("Internist"), one of the plaintiffs in the above-entitled action. I am also the technical director of the laboratory. I make this declaration in support of PLAINTIFFS APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION. The facts set forth herein are true of my own personal knowledge, and if called upon to testify thereto, I could and would competently do so under oath.

2. Internist is a community-based clinical laboratory with a single location in Oceanside, California. My wife, Christine, and I opened Internist 18 years ago. We both work on a full-time basis for the laboratory. As mentioned above, I am the technical director for the laboratory, while Christine handles a variety of administrative responsibilities, including billing. We currently have 8 other employees working for us, including a receptionist, phlebotomists and laboratory technicians. Our laboratory mainly services office-based physicians in the Vista, San Marcos, Carlsbad and Oceanside area.

3. Although Internist is a relatively small laboratory, we perform approximately 1 million tests per year. As things stand now, Internist is able to compete against larger laboratories because of the service we provide. We are able to draw a patient's blood and perform all necessary tests on-site at our office. This means that we are able to provide test results to patients and their doctors quickly, often on the same day. This is not always the case with other laboratories that obtain blood samples at "drawing centers" and then send the samples elsewhere to be analyzed. Our quick turn around times are very valuable for cancer patients, who need blood test results before they can get chemotherapy.

4. Internist also furnishes emergency or "stat" testing, which involves providing test results within as little as two hours. Stat testing can be important for,

1042589.1

1

08-CV-0170WPor

DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

among others, patients suffering from certain psychiatric conditions who cannot receive prescriptions without first having their blood levels checked.

5. Internist is the only independent laboratory that can actually perform blood draws and testing right in the Oceanside, San Marcos, Vista, Carlsbad area. Our location is therefore extremely convenient for patients in this area, many of whom are seniors. We also are regularly referred patients with special needs. Caretakers for these patients bring them directly to our laboratory for blood draws and testing. The medical or physical conditions of these patients make drawing blood from them difficult. However, we have sufficient staffing to service these "hard draws," where other laboratories or drawing stations cannot. We routinely hear from our patients and their physicians how much they like and appreciate the personal, friendly service that Internist provides.

6. I believe that Internist's dedication to the community it serves is illustrated by the fact that it was the only laboratory in the area that remained opened during the wildfires that ravaged the region in late 2007. During the fires, our employees, most of whom live close to the laboratory, came in, put masks on and went to work as usual. Given that no other laboratories in the area were open, Internist was very busy and serviced a number of patients who needed laboratory results urgently.

7. Internist has been a participant in the Medicare program since the laboratory opened 18 years ago. In fact, approximately 65% of the laboratory services Internist provides are for the benefit of Medicare program beneficiaries. Internist depends on participation in Medicare to remain in business. For this reason, I am extremely apprehensive about the laboratory competitive bidding "demonstration project" the Medicare program is implementing in the San Diego area.

8. The demonstration project has presented problems for our laboratory ever since the San Diego area was designated as the location for the project in

1  October 2007. In particular, ever since the "Bidder's Package" was distributed by
2  the Centers for Medicare and Medicaid Services ("CMS") at the "Bidder's
3  Conference" held in San Diego on December 5, 2007, my wife Christine has been
4  spending nearly half of her time putting together a bid application for Internist. Her
5  work on the bid application has been at the expense of her normal job functions for
6  Internist and therefore has increased her burden in keeping up with billing for the
7  laboratory's services.

8      9.     Compiling a bid package for the demonstration project has been
9  difficult in part because many of the rules and policies related to the project are not
10  clear and have been continually changing. Laboratories like ours were not given
11  any meaningful opportunity to give input on the scope and design of the
12  demonstration project until the Bidder's Conference in December and, at that point,
13  CMS had all of the fundamental aspects of the program, including what laboratories
14  would be required to submit bids, in place. However, it became clear at the Bidder's
15  Conference that CMS had not worked out all the details of the project because the
16  CMS representatives at the Conference were not able to provide immediate
17  responses to all of the questions posed there.

18      10.     One example of the problems we are facing relates to the requirement
19  in the bid application that we provide a "Reviewed Financial Report," as part of the
20  submission for Internist. This kind of financial report is slightly less detailed than
21  an audited financial statement. Unlike publicly traded companies, Internist does not
22  routinely undergo complete financial audits. We contacted our certified public
23  accountant ("CPA") about obtaining the kind of report required by the bid
24  application and he indicated that it would cost us approximately $6,000.00. He also
25  was not sure whether he would have time to complete the report before bid
26  applications are due on February 15, 2008. Christine contacted CMS by phone to
27  determine if she could provide a less costly and less time consuming "Reviewed
28  Compilation Financial Report," instead of the "Reviewed Financial Report." After

1 several attempts, Christine was verbally informed that she could provide the
2 financial compilation for the application. This is only one example of how the
3 ambiguous language in the bid application has caused us stress and confusion.

4     11.    Perhaps the most problematic aspect of the demonstration project is the
5 requirement that all applicants must submit bids for the 303 service codes that CMS
6 has designated for inclusion in the project. Internist only provides approximately
7 half of these services. Consequently, we need to get prices from outside reference
8 laboratories for the services we do not provide in order to submit bids on those
9 services. The reference laboratories, which are also submitting bids for the
10 demonstration project, have no incentive to provide us with information, as they are
11 competing against Internist for the same Medicare business. Our fears about this
12 requirement have been realized as, to date, we have not received useful pricing
13 information from any of the reference laboratories we have contacted.

14     12.    I have raised the problems I am encountering with getting prices on the
15 services Internist does not perform with CMS at the December 5 Bidder's
16 Conference. I was simply advised by the officials presiding over the Conference
17 that I needed to be a good negotiator in my dealings with the reference laboratories.
18 These comments were wholly unhelpful because, under the system CMS has set up,
19 there is nothing motivating other laboratories to even enter into negotiations with
20 me.

21     13.    At this point, since I have not received useful pricing information from
22 any reference laboratories, we will be forced to bid the currently established
23 Medicare fee schedule rates for the services Internist does not perform. Since one of
24 the announced purposes of the demonstration project is to determine if competitive
25 bidding is a viable way for Medicare to pay less than the fee schedule rates, I am
26 sure we will be pricing most services higher than our competitors. Since we are not
27 going to be able to compete with larger laboratories on price for the services at
28 issue, I am doubtful we will be declared a "winner" under the demonstration project.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1042589.1

4

08-CV-0170WPor
DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING
ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

14. The bidder's application for the demonstration project does not provide any real meaningful way for me to emphasize Internist's favorable attributes other than the prices the laboratory can offer on services. There is a single page in the application whereby laboratories can discuss the quality of the service they provide in a narrative form. The application does not request, nor permit inclusion of, testimonials from patients or physicians. For this reason, it does not seem that there is any real way that CMS can objectively evaluate our laboratory's convenient, personal service or take into account our fast turn-around times for test results.

15. If we are not a "winning" laboratory, Internist will no longer be able to bill Medicare directly for services rendered to Medicare beneficiaries residing in the demonstration project area. Since all of the Medicare patients we service reside in the demonstration project area, Internist will effectively lose 65% of its business. Virtually no business could withstand this kind of revenue loss and Internist is no different. Plain and simple, if Internist "loses" in the demonstration project bidding process, we will have to close the laboratory. Our employees will lose their jobs and the patients who have come to depend on us will have to look elsewhere for laboratory services.

16. If Internist closes, I am not sure what I will do to make a living. The laboratory has been Christine and my life's work for the past 18 years. Our home is in Carlsbad, which neighbors Oceanside, where the laboratory is located.

17. I do not understand why the Medicare program is taking an "all or nothing" approach for the laboratories that are competing as part of the demonstration project. If Internist could continue to bill Medicare for services, even at the lower rates that result from the demonstration project business, the laboratory would at least be able to remain in business. Under the current rules of the demonstration project, that will not be an option. I find it both tragic and tremendously unfair that the Medicare program would risk driving an institution that

has been a long-standing fixture in the community out of business for the sake of experimenting with the laboratory fee schedule.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 1, 2008, at Oceanside, California.

_____
GARY STEVENS

1042589.1

6

08-CV-0170WPor

DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1600, Los Angeles, California 90067-2517.

On February 4, 2008, I served the following document(s) described as **DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Christopher B. Latham<br>Assistant United Sattes Attorney<br>Christopher.Latham@usdoj.gov | *Attorneys for Defendant* |
| Thomas C. Stahl<br>Assistant Untied States Attorney<br>Thomas.Stahl@usdoj.gov | *Attorneys for Defendant* |

**BY ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from phooper@health-law.com on February 4, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 4, 2008, at Los Angeles, California.

                             s/Patric Hooper
                             Patric Hooper

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1042589.1

08-CV-0170WPor

DECLARATION OF GARY STEVENS IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER/ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION