UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE, INTERNIST LABORATORY, AND SCRIPPS HEALTH,<br><br>           Plaintiffs,<br>     vs.<br><br>MICHAEL LEAVITT, Secretary of the Department of Health and Human Services,<br><br>           Defendant. | CASE NO. 08-CV-0170 W (POR)<br><br>ORDER (1) DENYING MOTION FOR A TEMPORARY RESTRAINING ORDER [DOC. NO. 6] AND (2) TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED |

Plaintiffs Sharp Healthcare, Scripps Health, and Internist Laboratory have filed a motion for a temporary restraining order. Plaintiffs seek to enjoin Defendant Michael Leavitt, Secretary of Health and Human Services, from implementing a new Medicare demonstration project on the ground that the Secretary failed to follow the Administrative Procedures Act.

The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d.1). For the following reasons, the Court **DENIES** Plaintiffs' motion for a TRO [Doc. No. 6] and **ORDERS** Plaintiffs to show cause why this case should not be dismissed.

I.   **BACKGROUND**

This litigation involves Part B of the Medicare program. Medicare Part B is a voluntary insurance program that covers a portion of the costs for, among other things, clinical diagnostic laboratory services for Medicare beneficiaries. Typically, Medicare pays for clinical laboratory services on a fee-for-service basis according to the Medicare Part B Clinical Laboratory Fee Schedule established in 1984. See 42 U.S.C. § 13951(h).

In 2003, Congress passed the Medicare Prescription Drug Improvement, and Modernization Act of 2003, 42 U.S.C. § 1395w-3. The Act requires the Secretary, through the Center for Medicare and Medicaid Services ("CMS"), to conduct a project on the application of competitive acquisition for payment of clinical diagnostic laboratory tests that would otherwise be covered by the Medicare Part B Fee Schedule (the "project"). 42 U.S.C. § 1395w-3(e). Pap smear and colorectal cancer screening tests are excluded from the project, as well as tests performed by entities that have a "face-to-face encounter with the individual" being tested. 42 U.S.C. § 1395w-3(e)(1)(A)-(B). The statute also requires the Secretary to designate competitive acquisition areas where the project will be implemented. 42 U.S.C. § 1395w-3(a)(1)(A).

On October 17, 2007, the Secretary announced the San Diego-Carlsbad-San Marcos area as the first competitive acquisition demonstration site. See 72 F.R. 5886-01. Under the bidding process, laboratories must submit bids for 303 laboratory tests, and for the collection and handling of laboratory specimens. Laboratories are required to bid for each of the 303 tests, even if the laboratory does not provide the specific test. Bids will be evaluated based on CMS's determination of the "best value for the Medicare program," using price and non-price criteria. The deadline for submitting bids is February 15, 2008.

On January 29, 2008, Plaintiffs filed this lawsuit under 28 U.S.C. § 1331, seeking to enjoin the Secretary from implementing the project. On February 4, 2008, Plaintiffs

filed the instant TRO to enjoin the project before the February 15, 2008 application deadline.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure outline the procedures a federal court must follow when deciding whether to grant a temporary restraining order. See Fed.R.Civ.P. 65. The standard for granting a temporary restraining order is the same as the standard for entering a preliminary injunction. Bronco Wine Co. v. U.S. Dep't of Treasury, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996); Franklin v. Scribner, Civil No. 07-0438 BTM (LSP), 2007 WL 1491100, at *3 (S.D. Cal. May 21, 2007). The Ninth Circuit has prescribed the following equitable criteria for determining whether to grant injunctive relief:

> (1) the likelihood of the moving party's success on the merits; (2) the possibility of irreparable injury to the moving party if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by granting the preliminary relief. The moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits... [T]he required degree of irreparable harm increases as the probability of success decreases.

Owner Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co., 367 F.3d 1108, 1111 (9th Cir. 2004) (quoting Miller ex. rel. N.L.R.B. v. Cal. Pac. Med. Ctr., 19 F.3d 449, 456 (9th Cir. 1994)). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 439 (1974); accord L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1200 (9th Cir. 1980); Del Toro-Chacon v. Chertoff, 431 F. Supp. 2d 1135, 1139-40 (W.D. Wash. 2006).

### III. DISCUSSION

#### A. Irreparable Harm.

Plaintiffs allege that the project, as currently being implemented, will result in substantial harm to the Plaintiffs, their employees and patients. Internist alleges that it will lose sixty-five percent of its business if not selected as a winner. Although Sharp's and Scripps' loss of business will be less dramatic, they assert that layoffs will be required. Additionally, Plaintiffs argue that patients depending on Plaintiffs' laboratories will have their healthcare disrupted. Sharp and Scripps also argue that the project will significantly disrupt patient care by, for example, adversely impacting currently integrated medical networks, and the communication of critical patient health information between laboratories and clinicians.

Traditionally, the irreparable injury standard focuses on the possibility of injury to the plaintiff, not third parties. Poeng v. United States, 167 F.Supp.2d 1136, 1142 (S.D.Cal. 2001) (citing Los Angeles Memorial Coliseum Commission v. National Football Leauge, 634 F.2d 1197, 1200 (9th Cir. 1980). Thus, although the Court appreciates Plaintiffs' concern over the disruption to patients, the proper focus is on the likely harm to Internist, Sharp and Scripps.

Courts have consistently found that a loss of at least thirty percent of a plaintiff's business constitutes irreparable harm. See Poeng, 167 F.Supp.2d at 1143 (recognizing that the "majority of district courts addressing this issue have concluded that a loss of at least thirty percent of a plaintiff's business can constitute irreparable harm.") But such a finding generally occurs after plaintiff's participation in the government program is suspended or terminated, thereby eliminating any concern that the alleged harm is speculative. See Kim v. United States, 822 F.Supp. 107 (E.D.N.Y. 1993) (finding plaintiff's loss of business as a result of being terminated from participation in food stamp program constituted irreparable injury); De La Nueces v. U.S., 778 F.Supp. 191 (S.D.N.Y. 1991) (same); Ibrahim v. U.S. Through Dept. of Agriculture, 650 F.Supp. 163

(N.D.N.Y. 1987) (same); Barbosa v. U.S., 633 F.Supp. 16 (E.D.Wisc. 1986) (same); Turnage v. U.S., 639 F.Supp. 228 (E.D.N.C. 1986) (same).

Here, Plaintiffs seek a TRO to enjoin the project before the February 15, 2008 application deadline. But according to Plaintiffs' motion, the loss of business will only occur, *if at all*, after they lose the bidding competition. The Secretary anticipates that winners will be announced on April 11, 2008.[1] Thus, not only is Plaintiffs' alleged injury speculative, but it does not support granting a TRO two months before the injury might occur.

### B. Likelihood of Prevailing on the Merits.

In filing this lawsuit, Plaintiffs invoke federal question jurisdiction under 28 U.S.C. § 1331. The Secretary argues, however, that jurisdiction under § 1331 is not available because the sole avenue for judicial review for all claims arising under the Medicare Act is 42 U.S.C. § 1395ff(b)(1)(A). Accordingly, in addition to denying the TRO, the Secretary contends that the lawsuit should be dismissed for failure to exhaust administrative remedies.

In Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1 (2000), an association of nursing homes filed a lawsuit under 28 U.S.C. § 1331 against the Secretary of Health and Human Services (HHS), alleging that Medicare-related regulations violated various statutes and the Constitution. The District Court dismissed the case for lack of subject-matter jurisdiction. The Seventh Circuit reversed, and the Supreme granted certiorari.

In reversing the Seventh Circuit, the Supreme Court held that 42 U.S.C. § 405(h)–which is incorporated into the Medicare Act by 42 U.S.C. § 1395ii–"demands the 'channeling' of virtually all legal attacks through the agency." Id. at 13. By channeling legal challenges through the agency, § 405(h) "assures the agency greater

---

[1] To the extent Plaintiffs believe that the April 11, 2008 deadline should be enjoined, there is sufficient time to file a motion for a preliminary injunction to be heard on a normal briefing schedule.

Case 3:08-cv-00170-W-POR    Document 13    Filed 02/14/2008    Page 6 of 7

opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts...." Id. Thus, administrative review is required in all claims arising under the Medicare Act, unless application of § 405(h) would amount to "no review at all." Id. at 19.

The Secretary contends that Plaintiffs may obtain administrative review of the claims raised in this lawsuit, and thus § 405(h) applies. In support of this argument, the Secretary asserts that Plaintiffs may obtain review under the following scenario:

> [I]n order to bring their claims to a court, plaintiffs would have to proceed through the bidding process. Once the winners are selected, plaintiffs would then (whether they win or lose) be in a position to submit claims for laboratory tests to Medicare. If they are dissatisfied with the reimbursement they receive, they may then present their claim to CMS and pursue an administrative remedy–both prerequisites to judicial review. ... Once the Secretary renders a decision, plaintiffs may then seek judicial review–but pursuant to § 1395ff(b)(2) rather than the APA.

(Oppo., pp. 13:15–14:1.)

The Court recognizes that Plaintiffs have not had an opportunity to respond to this issue. Nevertheless, Illinois Council's interpretation of § 1395ii and § 405(h) raises serious concerns regarding whether the Court has jurisdiction over this case. For this reason, the Court finds that Plaintiffs have not demonstrated a likelihood of success on the merits. See Fowler v. United States, 258 F. Supp. 638, 644 (C.D. Cal. 1966) (stating that a TRO will not ordinarily be granted if any debate or doubts are created by the record as to the merits of the claimed relief or power of the court to act). The Court, however, will refrain at this time from deciding whether jurisdiction exists in order to give Plaintiffs an opportunity to respond to this and other issues raised by the Secretary.

//
//
//
//
//

## IV. CONCLUSION & ORDER TO SHOW CAUSE

For the foregoing reasons, the Court **DENIES** Plaintiffs' motion for a TRO [Doc. No. 6] and **ORDERS PLAINTIFFS TO SHOW CAUSE** why this case should not be dismissed. Petitioner shall, therefore, file and serve a memoranda of points and authorities no later than **February 29, 2008** that addresses the following issues:

1. Do Plaintiffs have to exhaust administrative remedies before pursuing their claims in federal court?
2. Is judicial review of Plaintiffs' claims barred under 42 U.S.C. § 1395w-3(10)?
3. Are ripeness and standing requirements met?

The Secretary may file and serve a response no later than **March 14, 2008**. Neither party's brief shall exceed 15 pages

**IT IS SO ORDERED**.

DATED: February 14, 2008

_____
Hon. Thomas J. Whelan
United States District Judge