PATRIC HOOPER (State Bar No. 57343)
JORDAN B. KEVILLE (State Bar No. 217868)
ABIGAIL WONG (State Bar No. 245652)
**HOOPER, LUNDY & BOOKMAN, INC.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-Mail: phooper@health-law.com

Attorneys for Plaintiffs SHARP HEALTHCARE, INTERNIST LABORATORY and SCRIPPS HEALTH

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE; INTERNIST LABORATORY and SCRIPPS HEALTH,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL LEAVITT, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | CASE NO. 08-CV-0170 W (POR)<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO COURT'S FEBRUARY 14, 2008 ORDER**<br>Date: TBD<br>Time: TBD<br>Place: Courtroom of the Hon. Thomas J. Whelan |

**TABLE OF CONTENTS** <span style="float:right">**Page**</span>

I.   INTRODUCTION ..................................................................................1

II.  THE COURT HAS JURISDICTION OVER THIS MATTER .......3

    A.   Section 405(h) Does Not Apply in this Case ............................3

    B.   Exhaustion of Administrative Remedies may be Excused ......5

III. JUDICIAL REVIEW OF PLAINTIFFS' CLAIMS IS NOT PRECLUDED UNDER 42 U.S.C. § 1395w-3(b)(10) .........................8

IV. PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE ........12

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## TABLE OF AUTHORITIES | Page

### Federal Cases

*Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler,*
  789 F.2d 931 (D.D.C. 1986)..................................................................................13

*Appalachian Power Co. v. Environmental Protection Agency,*
  208 F.3d 1015 (10th Cir. 2000)..........................................................................14, 15

*Arizona v. Shalala,*
  121 F. Supp. 2d 40 (D.D.C. 2000)......................................................................14, 15

*Beno v. Shalala,*
  30 F.3d 1057 (9th Cir. 1994).................................................................................9

*Bowen v. Michigan Academy of Family Physicians,*
  476 U.S. 667, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986).........................9, 10, 11

*Buckeye Forest Council v. United States Forest Service,*
  337 F. Supp. 2d 1030 (S.D. Ohio 2004)................................................................7

*Center for Automobile Safety v. Tieman,*
  414 F. Supp. 215 (D.D.C. 1976)..........................................................................13

*Downtown Medical Ctr./Comprehensive Health Care Clinic v. Bowen,*
  944 F.2d 756 (10th Cir. 1991)..............................................................................10

*Erringer v. Thompson,*
  189 F. Supp. 2d 984 (D. Ariz. 2001)....................................................................6

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,*
  528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)....................................13

*Johnson v. Shalala,*
  2 F.3d 918 (9th Cir. 1993)...................................................................................6, 7

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).................................13

*McNary v Haitian Refugee Ctr., Inc.,*
  498 U.S. 479, 111 S. Ct. 888, 112 L.3d.2d 1005 (1991)......................................9

*Medical Fund-Philadelphia Geriatric Ctr. v. Heckler,*
  804 F.2d 33 (3rd Cir. 1986)..................................................................................9

*Ohio Forestry Association, Inc. v. Sierra Club,*
  523 U.S. 726, 118 S. Ct. 1665, 140 L.3d.2d 921 (1998)....................................14

*Paulsen v. Daniels,*
  413 F.3d 999 (9th Cir. 2005)...............................................................................13

*Rio Grande Pipeline Co. v. FERC,*
  178 F.3d 533 (D.C.Cir.1999)..............................................................................14

*Shalala v. Illinois Council on Long Term Care,*
  529 U.S. 1, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (1999)..........................................4

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## TABLE OF AUTHORITIES    Page

*Skagit County Public Hospital v. Shalala,*
   80 F.3d 379 (9th Cir. 1996) ................................................................. 12

*Tucson Women's Clinic v. Eden,*
   379 F.3d 531 (9th Cir. 2004) ............................................................... 12

*United Farmworkesr of America v. Chao,*
   227 F. Supp. 2d 102 (D.D.C. 2002) .................................................... 14

*Universal Health Services of McAllen, Inc. v. Sullivan,*
   770 F. Supp. 704 (D.D.C. 1991) aff'd 978 F.2d 745 (D.C. Cir. 1992) ........... 10, 12

*Warth v. Seldin,*
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ...................... 13

*Western State University of So. Cal. v. American Bar,*
   301 F. Supp. 1129 (C.D. Cal. 2004) ..................................................... 6

*Wyoming Outdoor Council v. United States Forest Service,*
   165 F.3d 43 (D.C. Cir. 1999) ............................................................... 13

### Federal Statutes

42 U.S.C. § 1395ff ...................................................................... 4, 5, 9, 10

42 U.S.C. § 1395hh ................................................................................ 3

42 U.S.C. § 1395ii .............................................................................. 3, 4

42 U.S.C. § 1395w-3(b)(10) ........................................................ 1, 8, 9, 11

42 U.S.C. § 405(h) ............................................................................ 3, 4

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

Pursuant to this Court's Order of February 14, 2008, Plaintiffs Sharp HealthCare, Internist Laboratory and Scripps Health submit this memorandum addressing the following issues: (1) whether Plaintiffs must exhaust administrative remedies before pursuing their claims in federal court; (2) whether judicial review of Plaintiffs' claims are barred under 42 United States Code ("U.S.C.") § 1395w-3(b)(10); and (3) whether standing and ripeness requirements are met.

## I. **INTRODUCTION**

In his February 12, 2008 Opposition to Plaintiffs' Application for Temporary Restraining Order ("TRO"), to which Plaintiffs did not have an opportunity to respond, Defendant Secretary of the Department of Health and Human Services ("Secretary") misrepresents and overstates the applicability of the following principles to this case: 1) jurisdiction, 2) reviewability, and 3) ripeness and standing. It is thus unfortunate for Plaintiffs and their Medicare patients, but not surprising, that the Court was reluctant to grant immediate injunctive relief.

Plaintiffs are not seeking to preemptively dispute the Secretary's determinations about what laboratories are winners and losers under the Medicare Clinical Laboratory Competitive Bidding Demonstration Project ("Demonstration Project") before he makes them. Rather, Plaintiffs are attacking the entire process the Secretary has used for developing the polices on which those determinations, among others, will be made. In this regard, Plaintiffs raise constitutional and other significant procedural and substantive challenges to the Secretary's policies for the ongoing implementation of Demonstration Project. Plaintiffs are directly and immediately affected by these policies as reflected by the fact that, because their request for a TRO was denied, they had to submit (as best they could) bids to the Secretary by February 15, 2008. Under well established case law, as explained below, Plaintiffs should not have to wait "for the axe to fall," on April 11, 2008, before they obtain preliminary injunctive relief, which they will be seeking in a separate motion.

As explained below, the Medicare Act generally requires Medicare providers to pursue administrative remedies when such remedies are **available** under the Act. This is the so-called "channeling" requirement that may limit a court's jurisdiction. However, where, as here, there is no administrative remedy (or in some cases where the pursuit of an administrative remedy would be futile), there is no limit on a court's review authority. The Secretary well knows that "losers" under the Demonstration Project will have no appeal rights to challenge the project's very policies that caused them and their patients to become losers. Under the Secretary's own rules, losers are prohibited from submitting claims to Medicare altogether and have no appeal rights. Moreover, there are also no appeal process for "winners" to present the challenges presented here. Thus, the Secretary's discussion of jurisdiction is based on an entirely contrived premise.

The Secretary's alternative assertion that Congress has precluded court review of the issues raised here stands on its head the well established presumption of judicial review of agency action. Indeed, such review could not be limited with respect to constitutional issues under the doctrine of separation of powers even if Congress tried to do so. In any event, any attempt by Congress to limit review of non-constitutional issues must be interpreted narrowly in favor of review. The express provisions of the statute cited by the Secretary simply do not preclude review of the important legal issues presented by Plaintiffs.

Finally, the issues presented are ripe for immediate review at the request of these Plaintiffs because the purely legal issues raise a clear and present controversy directly affecting Plaintiffs that require no further factual development to be resolved. For example, there is simply no reason why Plaintiffs should await a determination of whether they are winners or losers before the Court determines whether the Secretary has complied with the rulemaking requirements of the Administrative Procedure Act ("APA"). If the Court decides that the policies being used to implement the project, which are now in full force, should have been

developed through the APA procedures, as Congress expressly requires for such Medicare policies (see 42 U.S.C. § 1395hh), then the project may not go forward.

## II.   THE COURT HAS JURISDICTION OVER THIS MATTER

In its February 14, 2008 Order, the Court denied Plaintiffs' application for a TRO based in part on the Secretary's contention that the Court lacks jurisdiction to grant relief because Plaintiffs have not yet pursued their claims through administrative channels. This now-familiar jurisdictional argument of the Secretary is based on case law construing a provision of the Medicare Act, 42 U.S.C. § 1395ii, Title XVIII of the Social Security Act ("SSA"), which incorporates a provision of Title II of the SSA, 42 U.S.C. Section 405(h). The Secretary misleads the Court by raising these statutes because, as explained below, Sections 1395ii and 405(h) only preclude judicial review in cases in which there is in fact an available administrative remedy in the Medicare Act for the type of the claim a party has raised. Here, there simply is no administrative forum that can grant the relief Plaintiffs are seeking.

In any event, in cases where these judicial review preclusion provisions arguably apply, courts have discretion to waive any administrative exhaustion requirement. Thus, even if the Plaintiffs had an administrative remedy available to them (which they absolutely do not), this case presents ideal circumstances for waiving exhaustion of those remedies.

### A.   Section 405(h) Does Not Apply in this Case

Section 405(h) provides that:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal or government agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 to recover any claim arising under this subchapter.

42 U.S.C. § 405(h). On its face, this statute establishes only that decisions of the Commissioner of Social Security may be reviewed exclusively in accordance with the SSA and no claim arising under the subchapter of the SSA in which Section 405

appears may be brought under general federal jurisdiction statutes.

Congress expanded the scope of Section 405(h) to the Medicare Act through 42 U.S.C. § 1395ii. This statute provides that Section 405(h), among other SSA provisions, also applies to the Medicare Act and cases that challenge the actions of the Secretary. Therefore, any limitations present in Section 405(h) apply equally to the Medicare Act, Title XVIII of the SSA.

Although courts have construed the jurisdictional impact of these statutes somewhat broadly, they are not without limits. One very important limit, which is applicable here, is discussed in *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 120 S.Ct. 1084, 146 L.Ed.2d 1 (1999). In clarifying prior precedent regarding the scope of Section 405(h), the Supreme Court stated that, "§ 1395ii does not apply § 405(h) when application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Id.* at 19.

Notwithstanding the Secretary's false suggestions to the contrary, there are no Medicare statutes or regulations that create a right to administrative or judicial review for the "claims" Plaintiffs are asserting, which challenge to the methodology (or lack thereof) the Secretary has used in creating, modifying and implementing the Demonstration Project. In fact, as the Secretary knows, if Plaintiffs are not declared winners under the Demonstration Project, they are precluded from invoking the administrative proceeding suggested by the Secretary, 42 U.S.C. § 1395ff(b)(1).

Nevertheless, the Secretary contends that 42 U.S.C. § 1395ff(b)(1) "prevents plaintiffs from bringing any of the claims they raise in their complaint," because they have not pursued this remedy. Sec. Opp. at 13. According to the Secretary, after the winners are declared under the Demonstration Project, plaintiffs, "whether they win or lose," will be in a position to submit claims for laboratory tests to Medicare and "if they are dissatisfied with the reimbursement they receive, they may then present their claim to CMS and pursue an administrative remedy." Sec. Opp. at 13. This is false.

As the Secretary concedes in his Opposition brief, required bidders who lose under the Demonstration Project "**may not bill Medicare directly for any of the laboratory tests involved in the project.**" Sec. Opp. at 5 (emphasis added). Non-required bidders who chose to bid and lose also are "precluded from billing Medicare directly . . ." Sec. Opp. at 5. Indeed, in a February 1, 2008 release to providers, the Secretary expressly states that "non-winner laboratories … **have no appeal rights**." *See*, page 7 of CMS Feb. 1, 2008 provider letter, copy attached as Exhibit A, page 7 (emphasis added).

In fact, by telling this Court in his opposition papers that losers may simply file claims and then pursue administrative remedies, the Secretary was not only misleading the Court but was also inviting plaintiffs and others to file claims for which they know they are not entitled to any Medicare reimbursement. The Secretary and the Department of Justice typically regard such claims as fraudulent.[1]

**B.   Exhaustion of Administrative Remedies may be Excused**

Even if 405(h) arguably applies to a particular case, courts nevertheless have discretion to hear the case without requiring exhaustion of administrative remedies.

---

[1] Further, even if the administrative procedure created by 42 U.S.C. § 1395ff(b) were available to Plaintiffs, the substantive claims Plaintiffs have raised are beyond the scope of administrative review available under the statute. Under the terms of 42 U.S.C. § 1395ff, appeal rights only attach to certain types of decisions or "initial determinations." *See* 42 U.S.C. § 1395ff(b)(1)(A). All the "initial determinations" that may be appealed under the statute concern individual claims for benefits. *See* 42 U.S.C. § 1395ff(a)(1)(A) – (C). A challenge to the validity of entire reimbursement scheme for particular services, which includes a constitutional argument, therefore cannot be appealed under this statute. Thus, in this case, channeling Plaintiffs' claims through the procedures afforded by 42 U.S.C. § 1395ff would deprive Plaintiffs of any meaningful review of those claims. Moreover, even if the administrative procedure created by 42 U.S.C. § 1395ff(b) were available to Plaintiffs, the substantive claims Plaintiffs have raised are beyond the scope of administrative review available under the statute.

In the Ninth Circuit, waiver of exhaustion under Section 405(h) is appropriate where a claim is: (1) collateral to a substantive claim of entitlement; (2) colorable in its showing that denial of relief will cause irreparable harm; and (3) one whose resolution would not serve the purposes of exhaustion. *See Johnson v. Shalala*, 2 F.3d 918, 920 (9th Cir. 1993). This waiver test has been applied by courts within the Ninth Circuit after the Supreme Court's ruling in *Illinois Council*. *See Erringer v. Thompson*, 189 F. Supp.2d 984, 992-994 (D. Ariz. 2001) (distinguishing Illinois Council and finding that waiver of compliance with Section 405(h) was appropriate). Plaintiffs here meet all of the requirements for having any exhaustion requirement imposed by Section 405(h) waived in this case.

The first factor mentioned above, collaterality, is obvious in this case because there are no "substantive claims of entitlement" at issue, *i.e.* no Medicare claim for reimbursement. A claim is collateral if it "is not 'bound up' with the merits so closely that [the court's] decision would constitute interference with the agency process." *See Johnson*, 2 F.3d at 920. As explained above, part of Plaintiffs' concern about the Demonstration Project is that it will preclude them from filing claims for Medicare reimbursement for laboratory services. If Plaintiffs are Demonstration Project losers, they will be prohibited from submitting claims to Medicare directly. As such, the relief Plaintiffs are seeking through this litigation necessarily must be considered collateral to any substantive claims of entitlement.

Plaintiffs also meet the "irreparability" element of the *Johnson* test. The potential harm to Plaintiffs posed by the Demonstration Project is explained in detail in Plaintiffs' TRO papers, including the declarations from the Plaintiffs themselves. They do not have to wait for the "axe to fall" before seeking court intervention. *See Western State University of So. Cal. v. American Bar*, 301 F. Supp. 1129, 1137-38 (C.D. Cal. 2004). If Plaintiffs are required to wait until winners are declared officially before challenging the Demonstration Project, assuming they do not win, by the time a court is able to rule on the matter, it will be too late to prevent the

harm that necessarily will follow from being effectively excluded from Medicare. This is why it is appropriate for Plaintiffs to seek relief now. *See Buckeye Forest Council v. United States Forest Service,* 337 F. Supp.2d 1030, 1039 (S.D. Ohio 2004) (finding claim for injunctive relief timely despite fact that additional steps had to happen before alleged harm would occur). Therefore, Plaintiffs have made more than a "colorable" showing that irreparable harm will ensue if they are denied relief in this action. *See Johnson,* 2 F.3d at 920.

Finally, there is nothing to be gained by vetting Plaintiffs' claims through any administrative appeal process even if one existed. The recognized purposes of the administrative exhaustion requirement are: (1) to compile a detailed factual record; (2) apply agency expertise in administering its own judicial resources; and (3) provide the agency the opportunity to correct errors through administrative review. *See Johnson,* 2 F.3d at 922. None of these purposes is served here.

First, there is no need in this case for the compilation of a detailed factual record. The facts necessary to resolve Plaintiffs lawsuit are minimal and are not in dispute, *e.g.* that the Secretary has developed and implemented the Demonstration Project without going through APA rulemaking procedures. Second, this is not a dispute that will benefit from application of agency expertise. This case turns entirely on purely legal issues that are the province of courts to decide. Finally, this is not a situation where the agency need be provided an opportunity to correct its own errors. The Secretary maintains that he has discretion to implement the Demonstration Project in the way he sees fit. None of the Secretary's administrative tribunals is going to find the entire Demonstration Project, or even major policy components of the project, to be unlawful or otherwise invalid. Accordingly, exhaustion should be waived here.[2]

---

[2] In *Victor Valley Hosp. v. Leavitt,* Case No. EDCV 07-1189-VAP, the United States (footnote continued)

## III. JUDICIAL REVIEW OF PLAINTIFFS' CLAIMS IS NOT PRECLUDED UNDER 42 U.S.C. § 1395w-3(b)(10)

The Secretary contends in his Opposition that **all** aspects of the Demonstration Project are shielded from any type of administrative or judicial review by 42 U.S.C. § 1395w-3(b)(10) [hereinafter "Section 1395w-3(b)(10)"]. *See* Sec. Opp. at 10 ("Through this provision, Congress insulated from judicial review the fundamental aspects of the competitive bidding process . . . essentially covering its creation, design and operation."). This argument is patently inconsistent with the well established presumption in favor of review of agency action (as well as the terms of the statute itself).

Section 1395w-3(b)(10) arguably applies to the Demonstration Project by virtue of Section 1395w-3(e)(2)(A). Notably, the provision does not state that all aspects of the Secretary's design and implementation of the Demonstration Project are precluded from review. Rather, the statutes address only the following six categories of determination by the Secretary:

(A) the establishment of payment amounts .

(B) the awarding of contracts .

(C) the designation of the competitive bidding acquisition areas .

(D) the phased in implementation .

(E) the selection of items and services for competitive acquisition .

---

District Court for the Central District of California assumed jurisdiction, over the Secretary's objection, over the plaintiff hospital's claims in another case involving laboratory services. Although, in *Victor Valley*, it was a much closer question than in this case as to whether there were administrative review proceedings that applied to the plaintiff's claims, the Court nevertheless waived any exhaustion requirement through application of the factors enumerated in *Johnson, supra*. *See Victor Valley*, Slip. Op. at 14 – 28 (copy attached hereto as Exhibit B). While the facts of *Victor Valley* are quite different from the facts at issue here, the case nevertheless is illustrative of the limits on the jurisdictional impact of Sections 405(h) and 1395ii.

1  (F) the bidding structure and number of contracts selected .

2  42 U.S.C. § 1395w-3(b)(10)(A) – (F).

If Congress intended to shield the entire Demonstration Project from judicial review, as the Secretary suggests, the statute at issue presumably state as much instead of focusing six discrete types of decisions. As such, Section 1395w-3(b)(10) simply cannot be interpreted to preclude the Court from entertaining the claims Plaintiffs are asserting with respect to the Demonstration Project because they do not come within the provisions of the statute.

Moreover, there is a longstanding, strong presumption that Congress intends judicial review of administrative action. *See Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct 2133, 2135, 90 L.Ed.2d 623 (1986); *McNary v Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S.Ct. 888, 898, 112 L.3d.2d 1005 (1991); *see also Beno v. Shalala*, 30 F.3d 1057, 1065 (9th Cir. 1994). This presumption places a "heavy" burden on the Secretary to show that Congress meant to prohibit all judicial review of his decisions. *See Bowen*, 476 U.S. at 672. The presumption ". . . is even stronger for Medicare claims that lack an administrative forum, for its is implausible to think that Congress provided no forum [for] statutory and constitutional challenges to the Secretary's policies. . . ." *Medical Fund-Philadelphia Geriatric Ctr. v. Heckler*, 804 F.2d 33, 39 (3rd Cir. 1986).

Courts applying the aforementioned presumption, both in the Medicare context and beyond, have taken a restrictive approach in construing statutes that impose limitations on judicial review. Courts generally decline to read such statutes to limit broad based attacks on the methodology that the agency uses to make certain determinations. *See McNary*, 498 U.S. at 497. Courts also have routinely declined to interpret statutes limiting judicial review to bar collateral challenges to unconstitutional or otherwise unlawful practices or policies used by the agency. *See id.* at 675; *see also Medical Fund*, 804 F.2d at 39 (claims alleging Secretary exceeded his rulemaking authority were not precluded from review by 42 U.S.C.

1  § 1395ff); *Downtown Med. Ctr./Comprehensive Health Care Clinic v. Bowen*, 944
2  F.2d 756, 764 – 767 (10th Cir. 1991) (jurisdiction existed over claims that Secretary
3  applied policies that exceeded his statutory authority); *Universal Health Services of*
4  *McAllen, Inc. v. Sullivan*, 770 F. Supp. 704, 712 (D.D.C. 1991) aff'd 978 F.2d 745
5  (D.C. Cir. 1992) (" . . . the Medicare Act's preclusion of review of . . . the
6  Secretary's reclassification decisions does not preclude judicial inquiry into the
7  validity of the Secretary's guidelines").
8      As stated by the Supreme Court in Bowen, "[w]e ordinarily presume that
9  Congress intends the executive to obey its statutory commands and, accordingly,
10 that it expects the courts to grant relief when an executive agency violates such a
11 command." *Bowen*, 476 U.S. at 681. In light of these principles, the statute on
12 which the Secretary is relying cannot be read to cut off this Court's review of
13 Plaintiffs' claims.
14     The majority of Plaintiffs claims against the Secretary represent the kind of
15 broad, collateral challenges to the Secretary's policies that courts have declined to
16 find are shielded from review. In particular, Plaintiffs contend that the policies used
17 to implement the Demonstration Project are invalid because they were not
18 developed through the rulemaking procedure mandated by the APA. None of the
19 provisions of Section 1395w-3(b)(10) can – or should – be read to render the Court
20 without jurisdiction to consider such a broad procedural claim, particularly because,
21 as explained above, there is no alternative forum for such a claim. To read the
22 statute in such a manner would effectively authorize the Secretary to disregard the
23 mandates of fundamental, far reaching federal laws.
24     Similarly, Section 1395w-3(b)(10) cannot be interpreted to limit the Court's
25 review of Plaintiff's contention that the Secretary's policy requiring "losing"
26 laboratories to treat Medicare patients, without payment, will result in an
27 unconstitutional taking. As noted by the Supreme Court in *Bowen*, a "serious
28 constitutional question" arises when a statute is construed to deny a judicial forum

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

for constitutional claims. *See Bowen*, 476 U.S. at 681, n.12. The Secretary has presented no compelling reason why the Court should deviate from this principle.

The Secretary specifically takes issue with Plaintiffs' challenge to the Demonstration Project policy requiring applicants to submit bids on specimen collection. The Secretary apparently believes the Court is divested of jurisdiction over this claim by the provision in Section 1395w-3(b)(10) that precludes review of the Secretary's determinations about the "items . . . for competitive acquisition." 42 U.S.C. §1395w-3(b)(10)(D). Given that Plaintiff is contending that the Secretary is without any statutory authority to require bids for specimen collection in the first place, the Secretary's jurisdictional argument must be rejected.

As noted above, an assertion that an agency has acted outside the scope of its authority is the type of "collateral" claim that has repeatedly been held to be unaffected by review preclusion statutes. Although Congress may have generally intended to insulate the Secretary's decisions about the items included in the Demonstration Project from review, Congress could not have intended to authorize the Secretary to act in an *ultra vires* manner.[3]

None of the cases relied upon by the Secretary in his Opposition supports reading Section 1395w-3(b)(10) to preclude review of all of Plaintiffs claims. *See*

---

[3] None of the Demonstration Act policies that Plaintiffs challenge as arbitrary and capricious falls within any of the categories of determination enumerated in Section 1395w-3(b)(10). For example, the Secretary's application of the statutory exclusion from the Demonstration Project for laboratories that have "face-to-face" encounters, which Plaintiffs maintain is arbitrary, is not a determination: (a) establishing payment; (b) awarding a contract; (c) the designation of competitive acquisition areas; (d) the phased in implementation of the Project; (e) the selection of items and services for competitive acquisition; or (f) the bidding structure and number of contractors selected. *See* 42 C.F.R. § 1395w-3(b)(10)(A)-(F). The same is true with respect to Plaintiffs' claims that the Secretary's Demonstration Act policies do not adequately protect small businesses and unfairly treat laboratories that treat exclusively skilled nursing facility and end-stage renal disease patients.

Sec. Opp. at 11. First and foremost, none of the cases involved an attempt to invalidate certain of the Secretary's policies on the grounds that those policies were not promulgated in accordance with the procedural requirements of the APA. As such, the cases are inapposite on that basis alone. In addition, the case to which the Secretary devotes the most attention actually supports Plaintiffs. In *Skagit County Public Hosp. v. Shalala*, 80 F.3d 379 (9th Cir. 1996), although the Ninth Circuit ultimately found that jurisdiction over the plaintiff's claim was precluded by a statute in the Medicare Act, the Court made a point of distinguishing the plaintiff's claim from the kind of collateral attack that would not be subject to the jurisdictional bar. *See Skagit*, 80 F.3d at 387. Citing *Universal Health Servs. of McAllen, supra*, The *Skagit* Court acknowledged that if the plaintiff had attacked the Secretary's methodology for making the determination at issue, rather than the determination itself, the Court would have had jurisdiction over the claim. *See id.* Therefore, *Skagit* fully supports the Court accepting jurisdiction over those claims in this case.

## IV.   PLAINTIFFS HAVE STANDING AND THEIR CLAIMS ARE RIPE

Plaintiffs (and their patients) have suffered actual, concrete injuries that are ripe for review. Case law demonstrates that Plaintiffs do not have to wait until they are officially declared "losers" under the Demonstration Project before mounting an attack against the critically flawed manner in which the Secretary has designed and carried out the Project. The Secretary's failure to promulgate the policies governing the Demonstration Project through the public notice and comment procedures required by the APA, in and of itself, has resulted in a cognizable injury to Plaintiffs and their patients whether they are winners or losers that is properly addressed through immediate judicial intervention.[4]

---

[4] Plaintiffs, as providers of health care services, may assert the rights of their patients. *See Tucson Women's Clinic v. Eden*, 379 F. 3d 531 (9th Cir. 2004).

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs have standing to pursue their claims. The standing doctrine is concerned with "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To establish standing in federal court under Article III of the Constitution, a plaintiff must show: (1) it has suffered an injury-in-fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). An agency's failure to follow legally proscribed procedures can give rise to a cognizable injury for standing purposes. *See, e.g. Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005); *Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler*, 789 F.2d 931, 937 (D.D.C. 1986) [hereinafter "*AASC*"]; *Center for Auto Safety v. Tieman*, 414 F. Supp. 215, 219 – 221 (D.D.C. 1976). In fact, Supreme Court precedent establishes that a person can assert a "procedural right" without meeting the "normal standards for redressability and immediacy." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 n. 7, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

More specifically, courts have held that procedural violations of the APA can give rise to an injury in fact. *See Paulsen*, 413 F.3d at 1002 – 1003 (conferring standing on plaintiff because agency's procedural violation of the APA threatened plaintiff's concrete interest to have the public participate in the rulemaking); *see also Center for Auto Safety*, 414 F.Supp. at 220. If the procedural violation creates a mere "risk" of further injury to the plaintiff, there is standing to challenge the violation. *See Wyoming Outdoor Council v. United States Forest Service*, 165 F.3d 43, 51 (D.C. Cir. 1999) (plaintiffs had standing to challenge agency's failure to follow proper procedures); *see also AASC*, 789 F.2d at 937; *Center for Auto Safety*, 414 F. Supp. at 220 (where policy adopted in violation of proper procedures could have lead to additional problems, plaintiffs had standing to challenge procedural

violation). Under the foregoing case law, Plaintiffs have standing here.

Plaintiffs and their patients have a concrete interest in having the public participate in the development of the rules governing the Demonstration Project, which will directly impact their continued participation in the Medicare program with respect to laboratory services. The Secretary, by failing to comply with the APA, has not allowed the public to sufficiently participate in the development of the Demonstration Project and has therefore not surprisingly promulgated a number of arbitrary policies. As such, Plaintiffs have sustained an injury in fact in this case. This injury was caused by the Secretary and can only be redressed if the Court prohibits the Secretary from going forward with the Demonstration Project under the current policies and requires the Secretary to establish the governing policies through notice and comment rulemaking.

Plaintiffs' claims are ripe for review. A case is ripe "when it 'presents a concrete legal dispute [and] no further factual development is essential to clarify the issues...'" *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 540 (D.C.Cir.1999). In addition, where a plaintiff's claim raises a "purely legal question, threshold suitability for judicial determination is assumed." *See Arizona v. Shalala*, 121 F. Supp.2d 40, 48 (D.D.C. 2000). Courts have regularly found challenges to agency policies under the APA to be ripe for review notwithstanding the fact the agency had not yet begun enforcement of the policy or claimed the policy still was being refined. *See Appalachian Power Co. v. Envtl Protection Agency*, 208 F.3d 1015, 1020 – 1024 (10th Cir. 2000); *Arizona*, 121 F. Supp.2d at 48 – 50; *United Farmworkesr of America v. Chao*, 227 F. Supp.2d 102, 107 (D.D.C. 2002). As stated by the Supreme Court, a person injured by an agency's failure to comply with a procedural requirement may complain of that failure at the time it takes place, "for the claim can never get riper." *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737, 118 S.Ct. 1665, 140 L.3d.2d 921 (1998).

Under the standard set forth above, Plaintiffs claims are ripe for review. The

majority of Plaintiffs' claims, including the allegation that the Demonstration Project violates the procedural requirements of the APA, present pure issues of law. Plaintiffs have presented a concrete legal dispute about whether the Secretary promulgated the policies at issue in a procedurally proper manner and whether those policies violate of federal law or otherwise arbitrary and capricious. No further factual development is needed for the Court to resolve these issues.

The facts that the Secretary may yet change the Demonstration Project policies or even scrap the current version of the project altogether do not render Plaintiff's claims "unripe" (but instead actually confirm the Secretary's haphazard approach to policymaking here). As stated in *Appalachian, supra*, "the fact that a law may be altered in the future has nothing to do with whether it is subject to judicial review at the moment." *See Appalachian*, 208 F.3d at 1023; *see also Arizona*, 121 F. Supp.2d at 49 - 50. The Demonstration Project, as currently constituted, is the consummation of three years of (mostly behind closed doors) development by CMS. As illustrated by the fact Plaintiffs have now already all submitted bids, the current Demonstration Act policies impose obligations and carry legal consequences. That is all that is required for these policies to be subject to judicial review at this point in time. *See Appalachian*, 208 F.3d at 1022. Accordingly, Plaintiffs' challenges to the Secretary's current version of the Demonstration Project are ripe for the Court's consideration.

DATED: February 28, 2008            HOOPER, LUNDY & BOOKMAN, INC.


By: /s/
PATRIC HOOPER
Attorneys for Plaintiffs SHARP HEALTHCARE, INTERNIST LABORATORY and SCRIPPS HEATLH

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1600, Los Angeles, California 90067-2517.

On February 28, 2008, I served the following document(s) described as **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO COURT'S FEBRUARY 14, 2008 ORDER** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Christopher B. Latham<br>Assistant United States Attorney<br>Christopher.Latham@usdoj.gov | *Attorneys for Defendant* |
| Sheila Lieber<br>Assistant United States Attorney<br>Sheila.Lieber@usdoj.gov | *Attorneys for Defendant* |
| Kathryn L. Wyer<br>Assistant United States Attorney<br>Kathryn.Wyer@usdoj.gov | *Attorneys for Defendant* |

**ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from pnewler@health-law.com on February 28, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 28, 2008, at Los Angeles, California.

/s/
Patric Hooper