1  PATRIC HOOPER (State Bar No. 57343)
   JORDAN B. KEVILLE (State Bar No. 217868)
2  ABIGAIL WONG (State Bar No. 245652)
   **HOOPER, LUNDY & BOOKMAN, INC.**
3  1875 Century Park East, Suite 1600
   Los Angeles, California 90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
5  E-Mail: phooper@health-law.com

6  Attorneys for Plaintiffs SHARP
   HEALTHCARE, INTERNIST
7  LABORATORY and SCRIPPS HEALTH

8

9            **UNITED STATES DISTRICT COURT**

10          **SOUTHERN DISTRICT OF CALIFORNIA**

11

12  SHARP HEALTHCARE; INTERNIST    | CASE NO. 08-CV-0170 W POR
    LABORATORY and SCRIPPS
13  HEALTH,                        | **MEMORANDUM OF POINTS AND**
                                    | **AUTHORITIES IN SUPPORT OF**
14        Plaintiff,               | **MOTION FOR PRELIMINARY**
                                    | **INJUNCTION**
15    vs.
                                    | [Notice of Motion and Motion,
16  MICHAEL LEAVITT, SECRETARY     | [Proposed] Order, filed concurrently
    OF THE DEPARTMENT OF           | herewith]
17  HEALTH AND HUMAN SERVICES,
                                    | Date:   April 7, 2008
18        Defendant.               | Time:   10:30 a.m.
                                    | Crtrm:  Hon. Thomas J. Whelan
19

20

21

22

23

24

25

26

27

28

*Left margin (vertical):* HOOPER, LUNDY & BOOKMAN, INC. • 1875 CENTURY PARK EAST, SUITE 1600 • LOS ANGELES, CALIFORNIA 90067-2517 • TEL.: (310) 551-8111 • FAX: (310) 551-8181

1044312.2

## TABLE OF CONTENTS

Page

I.   INTRODUCTION/BACKGROUND ............................................................... 1

II.  LEGAL STANDARD ............................................................................... 2

III. PLAINTIFFS MEET THE IRREPARABLE HARM REQUIREMENT
     FOR A PRELIMINARY INJUNCTION ...................................................... 3

     A.   The Harm Plaintiffs Are Alleging Is Not Too Speculative to
          Warrant Injunctive Relief........................................................... 4

     B.   The Court May Consider Potential Harm to Parties Other than
          Plaintiffs .................................................................................... 6

     C.   Plaintiffs Need Not Show Irreparable Harm Because They Are
          Alleging that Defendant Violated a Federal Statute ..................... 7

IV.  THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST
     FACTORS WEIGH IN FAVOR OF A PRELIMINARY
     INJUNCTION ....................................................................................... 9

V.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF
     THEIR CLAIMS .................................................................................. 10

     A.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims
          Under the APA ........................................................................... 10

          1.   The Secretary's Policies Are Sufficiently Final to Come
               Within the APA Judicial Review Provisions.......................... 11

          2.   Plaintiffs Have Shown that Several of the Secretary's
               Demonstration Act Policies Are Arbitrary and Capricious........ 14

     B.   Plaintiffs Are Likely to Prevail on their Claim Under the Takings
          Clause of the U.S. Constitution.................................................. 16

     C.   Plaintiffs are Likely to Prevail on their Claim that The Secretary
          Has Violated the Demonstration Project Statute.......................... 18

VI.  CONCLUSION .................................................................................... 19

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20  21  22  23  24  25  26  27  28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION

## TABLE OF AUTHORITIES <span style="float:right">Page</span>

### Federal Cases

*Appalachian Power Co. v. Environmental Protection Agency,*
  208 F.3d 1015 (D.C. Cir. 2000)..................................................11, 12, 13

*Buckeye Forest Council v. United States Forest Service,*
  337 F. Supp. 2d 1030 (S.D. Ohio 2004) ........................................4, 6

*Burlington Northern Railroad Co. v. Department of Revenue, State of Washington,*
  934 F.2d 1064 (9th Cir. 1991) .........................................................7

*Castellini v. Lappin,*
  365 F. Supp. 2d 197 (D. Mass. 2005) .............................................9

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
  401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971) ........................14

*City of Fremont v. FERC,*
  336 F.3d 910 (9th Cir. 2003) .........................................................14

*Earth Island Institute v. Hogarth,*
  494 F.3d 757 (9th Cir. 2007) ....................................................15, 18

*Frontier Health, Inc. v. Shalala,*
  113 F. Supp. 2d 1192 (E.D. Tenn. 2000)........................................7

*Ga. Gazette Publishing Co. v. United States Department of Defense,*
  562 F. Supp. 1004 (S.D. Ga. 1983) ...............................................9

*International Long Term Care, Inc. v. Shalala,*
  947 F. Supp. 15 (D.D.C. 1996) .....................................................7

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) .......................................................3

*Los Angeles  Memorial Coliseum v. National Football League,*
  634 F.2d 1197 (9th Cir. 1980) .......................................................2

*National Association of Psychiatric Treatment Centers v. Weinberger,*
  661 F. Supp. 76 (D. Colo. 1986) ...............................................6, 15

*Native Ecosystems Council v. United States Forest Serv.,*
  418 F.3d 953 (9th Cir. 2005) .......................................................14

*Oregon v. Ashcroft,*
  368 F.3d 1118 (9th Cir. 2004) .....................................................14

*Public Utility District Number 1 v. Bonneville Power Admin.,*
  506 F.3d 1145 (9th Cir. 2007) .....................................................11

*Regents of the University System of Georgia v. Carroll,*
  338 U.S. 586, 70 S. Ct. 586, 94 L. Ed. 363 (1950) ............................18

*Resident Councils of Washington v. Leavitt,*
  500 F.3d 1025 (9th Cir. 2007) .....................................................18

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**                                    Page

*Save Our Sonoran, Inc. v. Flowers,*
   408 F.3d 1113 (9th Cir. 2005) ........................................................4

*Southern Utah Wilderness Alliance v. Thompson,*
   811 F. Supp. 635 (D. Utah 1993) ................................................7

*Southwest Voter Registration Education Project v. Shelley,*
   344 F.3d 914 (9th Cir. 2003) ........................................................3

*State of Alaska ex rel. Yukon Flats School District v. Native Village of Venetie,*
   856 F.2d 1384 (9th Cir. 1988) ......................................................3

*Thomas Jefferson University v. Shalala,*
   512 U.S. 504, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) ....................14

*United States v. D'Annolfo,*
   474 F. Supp. 220 (D. Mass. 1979)................................................7

*Western State University of Southern California v. American Bar Association,*
   301 F. Supp. 2d 1129 (C.D. Cal. 2004)......................................4, 5

**Federal Statutes**

5 U.S.C. § 553 ................................................................1, 10

5 U.S.C. § 706.............................................................8, 11, 14

42 U.S.C. § 1395l(h)(1)(A) ...............................................19

42 U.S.C. § 1395w-3.................................................5, 10, 18

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## I.    **INTRODUCTION/BACKGROUND**

As the Court is aware, Plaintiffs Internist Laboratory ("Internist"), Sharp HealthCare ("Sharp") and Scripps Health ("Scripps") [collectively "Plaintiffs"] are seeking to prevent the Defendant Secretary of the United States Department of Health and Human Services ("Secretary") from continuing to implement a Competitive Bidding Demonstration Project for clinical laboratory services in the San Diego-Carlsbad-San Marcos area.  The relevant details of this "Demonstration Project" are set forth in the Application for Temporary Restraining Order ("TRO") and supporting documents that Plaintiffs filed with the Court on February 4, 2008.

Plaintiffs sought immediate relief through a TRO because they were hoping for a court order enjoining the Demonstration Project before bids were required to be submitted on February 15, 2008.  The Court declined to issue a TRO, primarily due to concerns about whether it properly has jurisdiction over Plaintiffs' claims. Consequently, Plaintiffs, as well as other competing laboratories, submitted bid applications, which include highly confidential, proprietary information, to the Secretary on February 15.

 The Secretary will now announce winners and losers under the Demonstration Project on April 11, 2008.  However, regardless of whether plaintiffs are declared winners or losers on April 11, 2008, their rights under the Constitution and federal law are being, and will continue to be, trampled by the Secretary unless the Demonstration Project is immediately enjoined.

The policies being used by the Secretary to develop and carry out the Demonstration Project violate the procedural mandates of the Administrative Procedure Act ("APA"), 5 United States Code  ("U.S.C.")  § 553, because the Secretary has flagrantly ignored required rulemaking procedures.   Further, and aside from the procedural invalidity of the policies, many of them are also substantively invalid under the APA, 5 U.S.C. § 706,  because they are arbitrary and capricious and/or they violate other laws, including the United States Constitution.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1   The harm caused by such violations of the law are ongoing and pose significant

2   risks of irreparable injuries to Plaintiffs whether they are declared winners or losers

3   under the Demonstration Project.  If any of the Plaintiffs are indeed losers, even

4   greater irreparable harm will result to their employees and patients and to them.

5       For the reasons explained below, Plaintiffs are thus entitled to injunctive

6   relief here and now.  Plaintiffs explain in their Memorandum of Points and

7   authorities submitted to the Court on February 28, 2008 that the Court has

8   jurisdiction over Plaintiffs' claims, which are ripe for immediate review.  Further,

9   the threatened irreparable harm Plaintiffs are alleging is real and substantial.  Case

10  law shows conclusively that Plaintiffs do not have to wait for that harm to occur

11  before seeking judicial intervention.  In any event, because Plaintiffs are seeking to

12  enjoin the Secretary from violating federal law, it is not necessary that they even

13  demonstrate additional irreparable harm.

14      Plaintiffs are likely to prevail on the merits of their claims as explained

15  previously and below.  The Secretary's current Demonstration Project policies

16  constitute final agency action that is subject to review under the APA.  While

17  Congress may have granted the Secretary the authority to develop and implement

18  the Demonstration Project, Congress did not authorize the Secretary to do so in a

19  procedurally and substantively invalid manner as manifested by the ad hoc policies

20  he is using to implement the Project.

21      Accordingly and most respectfully, the Court should act now to prevent the

22  Secretary from going any further with this critically flawed Project.

23

24  **II.    LEGAL STANDARD**

25      As this Court is well aware, to obtain temporary injunctive relief, a moving

26  party must demonstrate either (a) a combination of probable success on the merits

27  and the possibility of irreparable harm, or (b) that serious questions are raised and

28  the balance of hardships tips sharply in the moving party's favor.  *Los Angeles*

1  *Memorial Coliseum v. National Football League*, 634 F.2d 1197, 1201 (9th Cir.

2  1980).  Where the balance of hardships "tips decidedly" toward the plaintiff, the

3  plaintiff can make a lesser showing of likelihood of success on the merits than in

4  other cases.  *State of Alaska ex rel. Yukon Flats School Dist. v. Native Village of*

5  *Venetie*, 856 F2d 1384, 1389 (9th Cir. 1988).  The more likely plaintiff is to prevail

6  on the merits, the less irreparable harm must be shown.  *Kootenai Tribe of Idaho v.*

7  *Veneman*, 313 F.3d 1094, 1124 (9th Cir. 2002).  A district court must also consider

8  whether the public interest favors issuance of the injunction.  *See Southwest Voter*

9  *Registration Education Project v. Shelley*, 344 F. 3d 914, 918 (9th Cir. 2003).

10  　　　As demonstrated below, Plaintiffs meet the requirements for obtaining

11  injunctive relief under either formulation of the standard set forth above.

12

13  **III.    PLAINTIFFS MEET THE IRREPARABLE HARM REQUIREMENT**

14  　　　　**FOR A PRELIMINARY INJUNCTION**

15  　　　Plaintiffs meet the irreparable harm element of the standard for preliminary

16  injunctive relief.  As set forth in detail in Plaintiffs' TRO papers, including the

17  supporting declarations from the Plaintiffs themselves, if any of the Plaintiffs are not

18  declared winners under the Demonstration Project, jobs will be lost and health care

19  disrupted.  With respect to Internist, losing the ability to submit claims to Medicare

20  to laboratory services will drive them out of business.  *See* Declaration of Gary

21  Stevens ("Stevens Decl.") ¶¶ 15-16.[1]  Although  Sharp and Scripps likely will be

22  able to continue to operate even as Demonstration Project losers, they will certainly

23  have to scale back operations and make significant changes to the way laboratory

24  care is delivered within the respective hospital systems.  *See* Declaration of Donna

25  _____

26  [1] All references to declarations herein are to the declarations that were filed by
27  Plaintiffs in support of their Application for Temporary Restraining Order on
    February 4, 2008.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  Thompson ("Thompson Decl.") ¶¶ 16-19; Declaration of Cindy Wiesner ("Wiesner
2  Decl.") ¶¶ 16-20.  Most of these changes will work to the detriment of hospital
3  patients.  *See* Thompson Decl. ¶¶ 16-19; Wiesner Decl. ¶¶ 17-19.   Accordingly,
4  Plaintiffs, their employees and patients face a serious threat of substantial, wide-
5  ranging harm due to the Demonstration Project.  As explained below, Plaintiffs do
6  not have to wait until this harm actually befalls them before seeking injunctive
7  relief.

8      A.    **The Harm Plaintiffs Are Alleging Is Not Too Speculative to**
9            **Warrant Injunctive Relief**

10         In the Ninth Circuit, Plaintiffs do not have to demonstrate a certainty of
11  irreparable harm in order to obtain injunctive relief.  Rather, where plaintiffs
12  establish probable success on the merits of their claims, they need only show the
13  "possibility" of irreparable injury.  *See Save Our Sonoran, Inc. v. Flowers*, 408 F. 3d
14  1113, 1120 (9th Cir. 2005).  Along these lines, the fact that certain contingencies
15  must happen in order to bring about the harm does not necessarily render the
16  possible harm too speculative to warrant immediate injunctive relief.  *See Western*
17  *State University of Southern California v. American Bar Association*, 301 F.
18  Supp.2d 1129, 1137-1138 (C.D. Cal. 2004) (stating that the plaintiff did not "have to
19  wait for the axe to fall" before seeking an injunction); *Buckeye Forest Council v.*
20  *United States Forest Service*, 337 F.Supp.2d 1030, 1039 (S.D. Ohio 2004) (granting
21  injunctive relief despite fact that several additional events had to happen before any
22  harm would occur).

23         *Western State* involved an action by a law school to prevent the American Bar
24  Association ("ABA") from taking final steps to withdraw the school's ABA
25  provisional accreditation.  *See Western State*, 301 F. Supp.at 1132.  A council of the
26  ABA had determined that Western State's accreditation should be withdrawn, but
27  the decision was subject to review by the ABA's "House of Delegates."  *See id.*  The
28  law school sought a preliminary injunction to stop the House of Delegates from

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA  90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  voting on the matter.  With respect to irreparable harm, the ABA argued that the law

2  school's claims were too speculative because "the House may or may not vote to

3  withdraw Western's accreditation . . ." *Id.* at 1137.  The Court disagreed.

4      In finding that the law school adequately demonstrated irreparable harm, the

5  *Western State* court stated:

6      The harm **if** the accreditation is withdrawn is real and substantial.

7      **Western need not wait for the axe to fall before seeking an**

8      **injunction**.  The court finds sufficient **possibility** of irreparable harm if

9      the preliminary injunction is not granted.

10  *Id*. at 1138 (emphasis added).  *Western State* therefore recognizes that if the harm

11  that could result from an adverse decision by an agency is substantial enough, a

12  party may seek injunctive relief to stop the decision from being made.

13      The reasoning employed by the court in *Western State* applies here.  It cannot

14  reasonably be disputed that it is indeed a possibility that one or all of the Plaintiffs

15  will be declared losers under the Demonstration Project.  Plaintiffs have established

16  that real and substantial harm will result from failing to submit winning bids.  The

17  fact that the Secretary may or may not declare any of the Plaintiffs winners does not

18  negate the threat of irreparable harm.  Accordingly, as in *Western State*, a

19  preliminary injunction is justified here.

20      Another way to emphasize the immediacy of the harm Plaintiffs are alleging

21  is to stress that, assuming any of them lose under the Demonstration Project, it

22  would be futile for them to wait until CMS announces the winners officially before

23  initiating legal action.  First, it is questionable whether Plaintiffs would even have

24  access to the courts to challenge the Demonstration Project after bid awards are

25  announced.  The Secretary no doubt would characterize any action initiated after the

26  Demonstration Project winners are announced as a challenge to the bid awards

27  themselves, which is one of the categories of determination that is expressly

28  shielded from review by 42 U.S.C. § 1395w-3(d)(10).  Second, assuming Plaintiffs

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 would be able to mount a challenge in court after the bids are awarded, by the time

2 they could get a ruling on their claims, the harm would have already occurred.

3     As explained in the Plaintiffs' respective declarations in support of their

4 Application for TRO, losing the right to bill Medicare for laboratory services will

5 require all of them to make immediate and substantial changes to the way their

6 laboratories operate. *See* Stevens Decl. ¶ 15; Thompson Decl. ¶¶ 16-18; Wiesner

7 Decl. ¶¶ 16-17. Among other things, depending on the Plaintiff, some or all of their

8 employees will have to be laid off, and some of their long-time patients will be

9 diverted elsewhere. These kinds of actions cannot be undone. So, even if Plaintiffs

10 somehow obtained a favorable court decision shortly after the bid winners are

11 announced (which is doubtful, given court docket demands), it would be of little

12 benefit as people already would have lost their jobs and had their health care

13 disrupted. Other courts have granted injunctive relief under similar circumstances.

14 *See Buckeye Forest Council*, 337 F.Supp.2d at 1039 (". . . if an injunction does not

15 issue . . . Plaintiffs will not have an opportunity to even argue the case on the merits

16 because the alleged harm will have already occurred. The balance of the equities

17 therefore weighs in favor of preserving the status quo.").

18     **B.    The Court May Consider Potential Harm to Parties Other than**

19          **Plaintiffs**

20     In denying Plaintiffs' Application for TRO, the Court indicated that only the

21 potential harm to the Plaintiffs is relevant for the purposes of determining whether

22 injunctive relief is available. Most respectfully, case law shows otherwise. In

23 numerous cases involving Medicare and similar health care programs that were

24 initiated by providers, as here, courts have considered potential harm to provider

25 employees as well as Medicare beneficiaries in deciding whether to enjoin the

26 Secretary from taking certain actions or enforcing certain policies. *See, e.g. Nat'l*

27 *Ass'n of Psychiatric Treatment Centers v. Weinberger*, 661 F. Supp. 76, 81 (D.

28 Colo. 1986) (hereinafter "*NAPTC*") (potential impact to patients sufficient to

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1 | constitute irreparable harm); *Int'l Long Term Care, Inc. v. Shalala*, 947 F.Supp. 15,

2 | 20 (D.D.C. 1996) (issuing injunction to stop Secretary from terminating facility's

3 | Medicare participation agreement in order to prevent potential closure and maintain

4 | status quo during related administrative proceedings); *Frontier Health, Inc. v.*

5 | *Shalala*, 113 F. Supp.2d 1192, 1193 – 1194 (E.D. Tenn. 2000).

6 |     Through their declarations, Plaintiffs have described numerous ways their

7 | employees and patients will be irreparably harmed if Plaintiffs lose under the

8 | Demonstration Project.  Under the foregoing authorities, this potential harm to third

9 | parties is relevant to the preliminary injunction analysis and must be given due

10 | weight.

11 |     **C.**   **Plaintiffs Need Not Show Irreparable Harm Because They Are**

12 |         **Alleging that Defendant Violated a Federal Statute**

13 |     As explained above, Plaintiffs have satisfied the irreparable harm element of

14 | the test for injunctive relief.  However, even assuming that Plaintiffs' irreparable

15 | harm allegations are inadequate, the Court still should grant an injunction in light of

16 | the nature of Plaintiffs claims.  Case law establishes that the normal requirements

17 | for equitable relief, including preliminary injunctions, need not be satisfied when an

18 | injunction is sought to prevent the violation of a federal statute.  *See Burlington*

19 | *Northern Railroad Co. v. Department of Revenue, State of Washington*, 934 F.2d

20 | 1064, 1075 (9th Cir. 1991).  When a party "acts to enforce a statute or make

21 | effective a declared policy of Congress, the standard of public interest and not the

22 | requirements of private litigation measure the propriety of the need for injunctive

23 | relief."  *United States v. D'Annolfo*, 474 F. Supp. 220, 222 (D. Mass. 1979); *see also*

24 | *Southern Utah Wilderness Alliance v. Thompson*, 811 F. Supp. 635, 641 (D. Utah

25 | 1993) (finding that injunctive relief was "presumptively available" where plaintiff

26 | had shown likelihood of prevailing on APA claim).  Under the legal principles set

27 | forth above, injunctive relief should be available in this case regardless of Plaintiffs'

28 | showing on irreparable harm.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    Plaintiffs allege that the Secretary's development and continued

2   implementation of the Demonstration Project violate the rulemaking requirements of

3   the APA, a federal statutory scheme.  Notably, the Secretary has not asserted (nor

4   can he assert) that the Demonstration Project is exempt from the requirements of the

5   APA.  Accordingly, Plaintiffs are seeking to make effective a declared policy of

6   Congress in favor of developing agency rules through a public notice and comment

7   process.  One of Plaintiffs' other claims seeks to enforce the express terms of the

8   Demonstration Project statute itself.  Therefore, given the nature of their claims,

9   Plaintiffs fall within the rule that exempts a party from showing irreparable harm

10  where the Party is seeking to enjoin an ongoing violation of federal law.

11    The Court's ability to grant injunctive relief in this case, irrespective of

12  Plaintiffs' showing on irreparable harm, is supported by the text of the APA itself.

13  The APA vests reviewing courts with the authority to, among other things, "compel

14  agency action unlawfully withheld or unreasonably delayed. . . ." 5 U.S.C. § 706(1).

15  This broad grant of authority would appear to encompass ordering injunctive relief

16  in connection with "agency action unlawfully withheld."  Here, as explained above,

17  Plaintiffs are contending that the Secretary acted unlawfully by failing to

18  promulgate the Demonstration Act policies through formal rulemaking proceedings.

19    In light of the foregoing, Plaintiffs have established a possibility of

20  irreparable harm, both to themselves and others, sufficient to justify preliminary

21  injunctive relief in this case.  In the alternative, if the Court finds Plaintiffs'

22  irreparable harm allegations inadequate, a preliminary injunction still is warranted in

23  this case because Plaintiffs seek an injunction to remedy the Secretary's violation of

24  a federal statute.

25  / / /

26  / / /

27  / / /

28  / / /

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

IV.    **THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF A PRELIMINARY INJUNCTION**

Plaintiffs explain in their TRO papers why the balance of hardships in this case tips sharply in their favor.  *See* Pls. Points and Authorities in Support of TRO at 16-17.  To reiterate briefly, as discussed above, Plaintiffs, their employees and patients, are threatened with serious irreparable harm by the Secretary's continued implementation of the Demonstration Project in its current form.  In contrast, the Secretary is faced with only further delay of the implementation of the Demonstration Project, which already has taken three years to develop and is not required by Congress to be in operation by any particular date.  The Secretary's primary argument on the relative hardships to the parties is to point out the so-called "speculative" nature of the harm Plaintiffs are alleging.  *See* Secretary's Opposition to Plaintiffs' Application for Temporary Restraining Order ("Sec. Opp.") at 25. This argument should be rejected for the reasons discussed above with respect to irreparable harm.

The public interest factor plainly weighs in Plaintiffs' favor.  Courts have determined repeatedly the public has an interest in ensuring that agencies comply with federal law, including the APA.  *See Castellini v. Lappin*, 365 F. Supp.2d 197, 206 (D. Mass. 2005) (". . . maintaining plaintiff's eligibility . . . pending [the agency's] compliance with the APA is in the public's interest); *see also Ga. Gazette Publ'g Co. v. United States Dep't of Def.*, 562 F. Supp. 1004, 1011 (S.D. Ga. 1983). Accordingly, the public certainly has more of an interest in seeing that the Secretary's current, ongoing disregard of federal law be rectified than it does in any monetary savings to the government that may or may not result from the Demonstration Project.

/ / /

/ / /

/ / /

1  V.    **PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF**
2        **THEIR CLAIMS**

3         Plaintiffs are likely to succeed on the merits of their claims.  As mentioned
4  above, Plaintiffs explain in detail in their Memorandum of Points and Authorities
5  submitted to the Court on February 28, 2008 that: (1) this Court has jurisdiction over
6  the claims; (2) the Court is not precluded from reviewing the claims under 42 U.S.C.
7  § 1395w-3(d)(10); and (3) Plaintiffs have standing to pursue the claims, which are
8  ripe for review.  As such, having established the reviewability of the claims,
9  Plaintiffs are entitled to relief on the substance of those claims.

10        A.    **Plaintiffs Are Likely to Succeed on the Merits of Their Claims**
11              **Under the APA**

12        Counts 1 and 2 in Plaintiffs' complaint are predicated on the APA.  Count 1
13  alleges that the Secretary's development and implementation of the Demonstration
14  Project, as a whole, is invalid because the Secretary did not proceed through notice
15  and comment rulemaking as required under 5 U.S.C. § 553.  Count 2 alleges that,
16  independent of the procedural invalidity of the Demonstration Project, several of the
17  Secretary's policies are also substantively invalid because they are arbitrary,
18  capricious and otherwise not in accordance with federal law.  The Secretary's
19  Opposition to Plaintiffs' Application for a TRO takes issue with these APA based
20  claims for various reasons, none of which is persuasive.

21        This is the proverbial case of the Secretary wanting to "have his cake and eat
22  it to."  He wants to adopt policies that are binding on laboratories in the
23  Demonstration Project area and that have had, and will continue to have, significant
24  practical and legal consequences for laboratories, but does not want to be
25  accountable for how those policies were developed or whether the policies are
26  rational and lawful.  As explained below, the APA does not allow agencies to act in
27  such an unfettered, unrestrained and ad hoc manner.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1.     <u>The Secretary's Policies Are Sufficiently Final to Come Within the APA Judicial Review Provisions</u>

Notably, as mentioned above, the Secretary has not claimed at any point in this case that the Demonstration Project has been exempted by Congress from the procedural requirements of the APA. Rather, the Secretary seeks to avoid the impact of the APA by claiming his Demonstration Project policies are not "final" and therefore do not come within the APA's judicial review provision, 5 U.S.C. § 706(2). *See* Sec. Opp. at 16. This argument is premised on the fact that the Secretary may yet change some or all of the current Demonstration Project policies. *See id.* at 16 – 19. While Plaintiffs readily concede that certain aspects of the Demonstration Project may yet change, that does not render the entire Project non-final and non-reviewable.

Case law establishes a two prong test for determining whether agency action is "final" for the purposes of the APA. First, the action must mark the "consummation" of the agency's decision making process. *See Public Utility Dist. No. 1 v. Bonneville Power Admin.*, 506 F.3d 1145, 1152 (9th Cir. 2007); *see also Appalachian Power Co. v. Environmental Protection Agency*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). Second, the action must be one by which rights or obligations have been determined or from which legal consequences flow. *See Public Utility Dist. No. 1*, 506 F.3d at 1152. In the Ninth Circuit, certain factors have been held to provide an "indicia of finality," including "whether the [action] amounts to a definitive statement of the agency's position, whether the [action] has a direct impact on the day-to-day operations of the party seeking review, [and whether] immediate compliance [with the terms] is expected." *See id.*

Applying the factors listed above, the Secretary's Demonstration Project Policies must be deemed final or subject to review. With respect to the first factor, the Demonstration Project policies mark the consummation of the Secretary's decision making process even though they are not set forth in formal regulations.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  As explained in Plaintiffs' TRO papers, the Secretary's current implementation

2  policies are the product of more than three years development and internal

3  deliberation by the Secretary and his contractor, RTI.  The Secretary communicated

4  these policies to impacted laboratories at the 2007 Bidder's Conference and

5  indicated the policies would control the bid application and award process.  Along

6  these lines, the Secretary's current policies are set forth in a "Bidder's Package" that

7  spans nearly 100 pages, which was distributed at the Bidder's Conference.  A copy

8  of the Bidder's Package is attached hereto as Exhibit A, for the Court's

9  convenience.  The Bidder's Package uses affirmative, unequivocal language to set

10  forth the Demonstration Act policies, *i.e.* it discusses in detail what bidders "must"

11  do and how CMS/RTI "will" process and evaluate bid submissions.[2]  In short, the

12  Secretary disseminated the current policies to prospective bidders with every

13  indication that they were controlling for the purposes of the Demonstration Project.

14      With respect to the second factor, the Secretary's current Demonstration

15  Project policies fix specific rights and obligations from which legal consequences

16  flow.  In the alternative, stated in terms of the recognized "indicia" of finality, the

17  Demonstration Project policies directly impacted the day to day operations of

18  laboratories, as immediate compliance was expected.  This is no better illustrated by

19  the fact that all of the Plaintiffs had to submit bids to the Secretary on February 15,

20  2008 just to be considered for continued participation in the Demonstration Project.

21  Under the Secretary's policies, as "required" bidders, if Plaintiffs did not submit

22

23  _____

24  [2] The Bidder's Package includes a paragraph stating that, because the Demonstration
   Project is experimental, CMS reserves the right to change the policies reflected in

25  the Bidder's Package.  *See* Bidder's Package at 51.  This kind of disclaimer from an
   agency is not dispositive of whether agency action is final for the purposes of the

26  APA.  *See Appalachian*, 208 F.3d at 1023 (finding agency policy statement to be

27  "final" despite disclaimer set forth therein stating that statement was not final
   agency action).

28

1   bids by the deadline they would have automatically been declared losers under the

2   Project. Moreover, completing the bid application was no simple task. One or more

3   persons working for each of the Plaintiffs had to work on compiling a bid

4   immediately upon receiving the Bidder's Package in November 2007. *See, e.g.,*

5   Stevens Decl. ¶¶ 8-9; Thompson Decl. ¶ 14. These efforts took time away from

6   other, normal job functions. Accordingly, the mere preparation of bid applications

7   impacted the day-to-day operations for all of the Plaintiffs.

8        Aside from the labor required to complete bid applications, the submission of

9   the bids is also extremely significant because bidders were required to furnish the

10  Secretary with highly sensitive, proprietary information, including the bid prices.

11  Much of the information that Demonstration Project bidders had to furnish has

12  independent economic value when maintained confidentially. That information is

13  now in the hands of the Secretary. This fact, by itself, shows that the Secretary's

14  Demonstration act policies have obvious practical and legal consequences for

15  Plaintiffs, as well as other impacted laboratories.

16       In light of the foregoing, the fact that the Secretary may still change some or

17  all of the Demonstration Project policies, or even abandon the Demonstration

18  Project altogether, does render the current policies non-final. As stated in

19  *Appalachian*:

20          EPA may think that because the Guidance, in all its particulars is

21          subject to change, it is not binding and therefore not final action. There

22          are suggestions in its brief to this effect . . . But all laws are subject to

23          change. Even that most enduring of documents, the Constitution of the

24          United States, may be amended from time to time. **The fact that a law**

25          **may be altered in the future has nothing to do with whether it is**

26          **subject to judicial review at the moment.**

27  *Appalachian*, 208 F.3d at 1022 (emphasis added). In light of *Appalachian*, because

28  the Demonstration Act policies satisfy the factors for establishing finality now, those

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  policies are reviewable under the APA.  It is immaterial that the policies may be

2  further refined or changed completely.[3]

3       For the foregoing reasons, the Secretary's current policies for implementing

4  and carrying out the Demonstration Project are final and therefore reviewable under

5  the provisions of the APA.  As there is no authority indicating that the

6  Demonstration Project is somehow exempt from the notice and comment

7  requirements of the APA, Plaintiffs have demonstrated a substantial likelihood of

8  prevailing on Count 1 in the Complaint, which is their procedural APA claim.

9            2.    Plaintiffs Have Shown that Several of the Secretary's

10                Demonstration Act Policies Are Arbitrary and Capricious

11       As established above, the Secretary's policies regarding the development and

12  continued implementation of the Demonstration Project are subject to review under

13  the APA.  *See* 5 U.S.C. § 706; *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504,

14  512, 114 S. Ct. 2381, 2386, 129 L. Ed. 2d 405 (1994).  Under 5 U.S.C. § 706(2)(A),

15  the Court must hold the Secretary's action unlawful and set them aside if they are

16  "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

17  law."  In reviewing agency action under the arbitrary and capricious standard, the

18  Court must "engage in a substantial inquiry" and undertake a "thorough, probing, in-

19  depth review."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415,

20  91 S. Ct. 814, 823, 28 L. Ed. 2d 136 (1971); *see also Native Ecosystems Council v.*

21  *United States Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005) ("Although the

22

23  _____

24  [3] It is also immaterial that some of the legal consequences flowing from the

25  Secretary's Demonstration Project policies will not result until the Secretary

announces the winners and losers.  An agency action can be final even its concrete

26  legal effects are contingent upon a future event.  *See City of Fremont v. FERC*, 336

27  F.3d 910, 914 (9th Cir. 2003); *see also Oregon v. Ashcroft*, 368 F.3d 1118, 1148

(Wallace, J. dissenting) (9th Cir. 2004).

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  arbitrary and capricious standard is a 'narrow one,' we are required to 'engage in a

2  substantial inquiry . . .'").

3    Under this standard, even where an agency has been vested with broad

4  discretion to carry out a program, a court still may set aside agency action where it

5  is arbitrary or otherwise inconsistent with Congressional directives.  *See NAPTC*,

6  661 F. Supp. at 81 (granting injunction to stop implementation of new regulations

7  governing federal health care program because agency failed to follow procedural

8  requirements of the APA and otherwise acted in an arbitrary manner).  Further,

9  while courts are directed to defer to an agency's interpretation or application of a

10  statute, that deference is not unbounded.  Agency interpretations of statutes must be

11  "reasonable."  *See Earth Island Institute v. Hogarth*, 494 F.3d 757, 765 (9th Cir.

12  2007).  Agency constructions that are contrary to clear Congressional intent or

13  frustrate the policy that Congress sought to implement "must be rejected."  *See id.*

14  Given these judicial review principles, for the purposes of obtaining a preliminary

15  injunction, Plaintiffs have adequately shown that several of the Secretary's

16  Demonstration Act policies are substantively invalid under the APA.

17    Plaintiffs explain in detail in their TRO papers the arbitrary nature of the

18  Secretary's policies regarding: (1) the exemption from the Demonstration Project for

19  laboratories that have "face-to-face" encounters with patients; (2) the reimbursement

20  rates paid under the Demonstration Project to laboratories servicing only skilled

21  nursing facility ("SNF") and end stage renal disease ("ESRD") patients; and (3)

22  ensuring the continued participation of small businesses in the Medicare program.

23  *See* Pls. Points and Authorities in Support of TRO at 21 – 25.  Plaintiffs therefore

24  have shown a "reasonable probability" that they will prevail on the merits with

25  respect to these arguments, which is all that is required for the purposes of a

26  preliminary injunction.  *See NAPTC*, 661 F. Supp. at 80 (stating that, "While we are

27  mindful of the considerable deference due the Agency, we believe the plaintiffs may

28  ultimately prevail on the merits" and granting preliminary injunction).

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**B.**    **Plaintiffs Are Likely to Prevail on their Claim Under the Takings**
**Clause of the U.S. Constitution**

As explained in Plaintiffs' TRO papers, one of the Secretary's Demonstration Act policies requires losing bidders to provide laboratory services to Medicare beneficiaries even though they will not be paid for such services. *See* Pls. Points and Authorities in Support of TRO at 19.  Plaintiffs maintain that this policy results in a "taking" under the Fifth Amendment to the United States Constitution. Whether losing laboratories provide the testing for Medicare patients themselves or refer the tests out, they will have to utilize resources in furnishing, or arranging for, the tests without any right to compensation.  Such a scenario presents a Constitutionally prohibited taking.

In his Opposition to Plaintiffs' Application for a TRO, the Secretary contends that it is unlikely any takings will result from his policy because "laboratory tests are conducted through referrals from physicians and hospitals, who will be informed of which laboratories can bill Medicare under the project." Sec. Opp. at 23.  This argument relies on a huge, unfounded assumption by the Secretary.  Given the way the information about the Demonstration Project has been communicated to parties outside of the agency to date, there simply is no way the Secretary can be assured that all potential referring physicians and hospitals will be able to keep track of which laboratories can bill Medicare and which cannot after bids are awarded.  The Secretary further assumes that physicians will go to the trouble of altering their referral patterns based on the particular type of health insurance a patient has.  If a physician referred all tests for both Medicare and non-Medicare patients to a single laboratory before the Demonstration Project, it seems likely that he or she would continue to do so even after the Demonstration Project, especially if the physician treats only a relatively small number of Medicare beneficiaries.  The Secretary should not be able to wash his hands of an otherwise unconstitutional policy by

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

16

08-CV-0170 W POR

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  simply assuming losing laboratories will not be referred samples for Medicare

2  patients.

3      The Secretary's assertion that losing laboratories can seek to contract with

4  winning laboratories to receive compensation for services rendered to Medicare

5  beneficiaries is similarly myopic. *See* Sec. Opp. at 23.  There appears to be no

6  reason why a winning laboratory will pay a losing laboratory to perform a service

7  that the winning laboratories can bill Medicare for directly.  Rather, what is much

8  more likely, is that the winning laboratory simply would suggest that the losing

9  laboratory refer out any samples, rather than perform the testing themselves for free.

10  As explained in Plaintiffs' TRO papers, there is a necessary cost element inherent in

11  referring laboratory testing samples out.  Accordingly, even if losing laboratories

12  simply refer all Medicare testing out to winning laboratories, they still will have to

13  devote resources to ensure these tests are performed without the prospect of

14  compensation.

15      The Secretary's main argument against Plaintiffs' taking claim relies on the

16  notion that Medicare is a voluntary program for providers. *See* Sec. Opp. at 23.  In

17  effect, the Secretary is arguing that, if losing laboratories do not want to treat

18  Medicare patients for free, they can simply drop out of the Medicare program

19  altogether.  Plaintiffs TRO papers explain why most laboratories cannot practically

20  withdraw from Medicare completely. *See* Pls. Points and Authorities in Support of

21  TRO at 20.

22      The cases the Secretary cites in his TRO Opposition in which courts declined

23  to find that certain Medicare or Medicaid policies resulted in any prohibited takings

24  are distinguishable from the present case.  All the laws in these cases either reduced

25  Medicare or Medicaid payment rates or limited the rates at which providers could

26  charge patients.  Accordingly, the providers still could be paid for services rendered

27  to Medicare or Medicaid patients, just not at rates they believed were adequate.  In

28  short, at least some compensation remained available in these cases.  Here, as

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1 explained above, losing laboratories cannot even bill the Medicare program for tests

2 furnished on behalf of Medicare patients and therefore have no right to any level of

3 compensation. Thus, the present case is sufficiently unique that, notwithstanding

4 the alleged "voluntary" nature of participation in Medicare, Plaintiffs have presented

5 a compelling takings claim for the purposes their Motion for Preliminary Injunction.

6 **C.    Plaintiffs are Likely to Prevail on their Claim that The Secretary**

7 **Has Violated the Demonstration Project Statute**

8    Count 4 in Plaintiffs' complaint alleges that the Secretary has violated the

9 terms of the Demonstration Project statute by requiring laboratories to submit bids

10 for specimen collection. As explained in Plaintiffs' TRO documents the express

11 language of the controlling statute, 42 U.S.C. § 1395w-3(e)(1), limits the scope of

12 the demonstration project to "laboratory tests." The collection and handling process

13 is not a laboratory test. Accordingly, the Secretary has exceeded his statutory

14 authority by including collection and handling in the Demonstration Project, which

15 is prohibited. *See See Regents of the University System of Georgia v. Carroll*, 338

16 U.S. 586, 597, 70 S.Ct. 586, 94 L.Ed. 363 (1950) (agency's can only act in

17 accordance with the authority afforded them by Congress).

18    The Secretary once again relies on general administrative law principles of

19 deference in contending that his construction of the statute with respect to what

20 constitutes a laboratory test should be upheld. *See* Sec. Opp. at 24. As such, the

21 Secretary has once again overstated the bounds of his discretion. Count 4 of

22 Plaintiff's Complaint turns entirely on a matter of statutory construction, which is a

23 pure issue of law. Courts resolve such issues de novo. *See Earth Island Institute*,

24 494 F.3d at 765. If a statute is plain on its face, a reviewing court need not afford an

25 deference to an agency's interpretation. *See Resident Councils of Washington v.*

26 *Leavitt*, 500 F.3d 1025, 1030 (9th Cir. 2007). In this connection, the Secretary is not

27 entitled to deference here.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    Again, the relevant statute refers only to "laboratory tests." Specimen

2  handling and collection is not testing. If Congress regarded specimen collection and

3  handling as merely a component of laboratory testing, existing Medicare statutes

4  would not establish totally different reimbursement methodologies for these two

5  types of services. *Compare* 42 U.S.C. § 1395l(h)(1)(A) to 42 U.S.C. § 1395l(h)(3).

6  Plaintiffs therefore have shown a reasonable probability of prevailing on Count 4 in

7  their Complaint.

8

9  **VI.    <u>CONCLUSION</u>**

10    In light of the foregoing, Plaintiffs respectfully request that the Court issue a

11  preliminary injunction restraining the Secretary from further carrying out the

12  Demonstration Project in its current form and requiring the Secretary to promulgate

13  the Demonstration Project policies through notice and comment rulemaking

14  procedures under the APA.

15  DATED: March 10, 2008         HOOPER, LUNDY & BOOKMAN, INC.

16

17              By:____/s/_____
                     PATRIC HOOPER
18              Attorneys for Plaintiffs SHARP
                HEALTHCARE, INTERNIST
19              LABORATORY and SCRIPPS HEATLH

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1600, Los Angeles, California 90067-2517.

On March 10, 2008, I served the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Christopher B. Latham                    *Attorneys for Defendant*
Assistant United States Attorney
Christopher.Latham@usdoj.gov

Sheila Lieber                            *Attorneys for Defendant*
Assistant United States Attorney
Sheila.Lieber@usdoj.gov

Kathryn L. Wyer                          *Attorneys for Defendant*
Assistant United States Attorney
Kathryn.Wyer@usdoj.gov

**ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from pnewler@health-law.com on March 10, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e-mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission and such transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 10, 2008, at Los Angeles, California.


_____/s/_____
Patric Hooper

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1044312.2