1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  KAREN P. HEWITT
   United States Attorney
3  SHEILA LIEBER
   Deputy Director
4  KATHRYN L. WYER
   U.S. Department of Justice, Civil Division
5  20 Massachusetts Avenue, N.W.
   Washington, DC  20530
6  Tel.  (202) 616-8475 / Fax (202) 616-8470
   kathryn.wyer@usdoj.gov
7  *Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE; INTERNIST LABORATORY; AND SCRIPPS HEALTH,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>MICHAEL LEAVITT, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　　Defendant. | Case No. 08 CV 0170 W Por<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' MEMORANDUM PURSUANT TO THE COURT'S FEBRUARY 14, 2008, ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE DISMISSED**<br><br>special briefing schedule ordered<br><br>Courtroom:    7<br><br>HONORABLE THOMAS J. WHELAN |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ................................................................................................................1

ARGUMENT .......................................................................................................................2

    I.    ASSUMING ARGUENDO THAT PLAINTIFFS' CLAIMS ARE NOT BARRED ENTIRELY BY 42 U.S.C. § 1395w-3(b)(10), THEY ARE SUBJECT TO THE ADMINISTRATIVE CHANNELING REQUIREMENT OF 42 U.S.C. § 405(h) ...................................................................................2

        A.    The Court Cannot Retain Federal Question Jurisdiction Under The "No Review At All" Exception Based On CMS' Interpretation Of 42 U.S.C. § 1395w-3(b)(10) Because That Provision Bars Judicial Review As Well ..................................................................................4

        B.    Plaintiffs' Waiver Argument Fails Because Plaintiffs Have Not Presented Their Claims To The Agency, They Essentially Assert Future Entitlement To Medicare Payments, And Exhaustion Would Serve A Useful Purpose ........................................................................6

    II.    JURISDICTION IS PRECLUDED BY 42 U.S.C. § 1395w-3(b)(10) .......................8

    III.    BECAUSE PLAINTIFFS' ALLEGED INJURIES ARE SPECULATIVE AND THE PROJECT TERMS ARE NOT FINAL, RIPENESS AND STANDING REQUIREMENTS ARE NOT MET ...................................................................12

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931 (D.D.C. 1986) ..............................13

Amgen, Inc. v. Smith, 357 F.3d 103 (D.C. Cir. 2004) ................................................................8, 10

Ass'n of Flight Attendants-CWA v. Chao, 493 F.3d 155 (D.C. Cir. 2007) ..................................14

Bennett v. Spear, 520 U.S. 154 (1997) .....................................................................................14-15

Bowen v. City of New York, 476 U.S. 467 (1986) ......................................................................3, 6

Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667 (1986) ...............................................8

Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354 (6th Cir. 2000) .............................6

Ctr. for Auto Safety v. Tieman, 414 F. Supp. 215 (D.D.C. 1976) .................................................13

Ecology Ctr., Inc. v. U.S. Forest Serv., 192 F.3d 922 (9th Cir. 1999) ..........................................14

Great Rivers Home Care, Inc. v. Thompson, 170 F. Supp. 2d 900 (E.D. Mo. 2001) ......................3

Heckler v. Ringer, 466 U.S. 602 (1984) ..........................................................................................3

Indus. Customers of Nw. Utilities v. Bonneville Power Admin., 408 F.3d 638 (9th Cir. 2005) ....15

Kaiser v. Blue Cross of Cal., 347 F.3d 1107 (9th Cir. 2003) .........................................................7

Kildare v. Saenz, 325 F.3d 1078 (9th Cir. 2003) ............................................................................7

Laub v. U.S. Dep't of Interior, 342 F.3d 1080 (9th Cir. 2003) .....................................................14

Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293 (11th Cir. 2004) .........................6

Loritz v. U.S. Court of Appeals for the Ninth Circuit, 382 F.3d 990 (9th Cir. 2004) ...................12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ...................................................................13

Malama Makua v. Rumsfeld, 136 F. Supp. 2d 1155 (D. Haw. 2001) ...........................................13

Mathews v. Eldridge, 424 U.S. 319 (1976) .....................................................................................3

McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479 (1991) ........................................................12

Nat'l Athletic Trainers Ass'n, Inc. v. U.S. Dep't of Health & Hum. Servs.,
    455 F.3d 500 (5th Cir. 2006) ...................................................................................................5

Ore. Natural Desert Ass'n v. U.S. Forest Serv., 465 F.3d 977 (9th Cir. 2006) ............................14

Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005) ........................................................................13

Portman v. County of Santa Clara, 995 F.2d 898 (9th Cir. 1993) ................................................13

Queen of Angels v. Shalala, 65 F.3d 1472 (9th Cir. 1995) ............................................................7

Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1 (2000) ..................................... *passim*

Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832 (9th Cir. 2007) ...............................13

Skagit County Public Hospital v. Shalala, 80 F.3d 379 (9th Cir. 1996) ........................................11

TAP Pharm. v. U.S. Dep't of Health & Human Servs., 163 F.3d 199 (4th Cir. 1998) ..................14

Texas v. United States, 497 F.3d 491 (5th Cir. 2007) ...................................................................14

Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134 (9th Cir. 2000) (en banc) .............12

Victor Valley Cmty. Hosp. v. Leavitt, No. 07-1189 (C.D. Cal. Jan. 10, 2008) ...............................6

Weinberger v. Salfi, 422 U.S. 749 (1975) ...............................................................................5, 7

Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43 (D.C. Cir. 1999) .........................................13

**STATUTES**

5 U.S.C. § 553 ................................................................................................................................11

28 U.S.C. § 1331 ........................................................................................................................ 3, 12

42 U.S.C. § 405 .........................................................................................................................3, 4

42 U.S.C. § 1395*l* ..........................................................................................................................10

42 U.S.C. § 1395w-3 ..........................................................................................................*passim*

42 U.S.C. § 1395ff ......................................................................................................................4, 6

42 U.S.C. § 1395ii ...........................................................................................................................3

42 U.S.C. § 1395ww ................................................................................................................ 11, 12

**ADMINISTRATIVE MATERIALS**

42 C.F.R. § 414.424 .........................................................................................................................4

CMS, Final Rule, 72 Fed. Reg. 17992 (Apr. 10, 2007) ...............................................................4, 9

**MISCELLANEOUS**

15 Moore's Federal Practice, § 101.74 (Matthew Bender 3d ed. 2005) .........................................13

# INTRODUCTION

Plaintiffs fail to show why this case should not be dismissed. Defendant Michael Leavitt, Secretary of Health and Human Services ("the Secretary" or "defendant"), has identified three independent jurisdictional bars to this action, which seeks to challenge various aspects of a Medicare competitive bidding demonstration project for clinical diagnostic laboratory tests, now being implemented by the Secretary, through the Centers for Medicare and Medicaid ("CMS"). The first bar is that imposed by the Medicare Act, which precludes federal question jurisdiction for all claims arising under the Act and requires presentment of such claims to the agency and exhaustion of administrative remedies prior to judicial review. Plaintiffs attempt to rebut this jurisdictional bar on two grounds. Their first suggestion – that requiring administrative channeling would mean "no review at all" of their claims because CMS has precluded administrative review of such claims – mixes up two separate jurisdictional arguments. CMS has indicated that administrative review is precluded based on the statutory bar set forth in 42 U.S.C. § 1395w-3(b)(10). That very statutory provision places an identical bar on judicial review, and defendant has in fact argued that this statutory bar precludes jurisdiction over plaintiffs' claims. If plaintiffs are correct that administrative review is unavailable, judicial review is also unavailable. Only if the Court concludes or assumes arguendo that judicial review is not barred by § 1395w-3(b)(10) must it address whether the Medicare channeling requirement applies – in which case, the Court must also conclude or assume that administrative review is not barred.

Plaintiffs also argue that, even if the channeling requirement applies, the Court should waive administrative exhaustion. Plaintiffs ignore the other prong of the channeling requirement – that the claim be presented to the agency – which may not be waived and which is not satisfied here. Because plaintiffs fail to establish presentment, the Court need not reach the question of an exhaustion waiver. In addition, waiver would be inappropriate here because plaintiffs' claims are inextricably connected to their assertions of future entitlement to Medicare payments for laboratory services, and because in the context of an experimental demonstration project that continues to evolve, administrative exhaustion plays a useful role by allowing the agency to make

any adjustments that are warranted without the necessity of judicial involvement.

As already noted, the second jurisdictional bar that applies here was imposed by Congress in § 1395w-3(b)(10). Plaintiffs claim this provision does not bar claims such as theirs which, they allege, are collateral or limited to the agency's methodology. However, there is no general rule exempting collateral or procedural challenges from a statutory bar on jurisdiction. The scope of a statutory bar depends on the text of the statute. Section 1395w-3(b)(10) applies here, and bars plaintiffs' claims, because those claims are encompassed within the categories described by the statutory language.

The third jurisdictional bar on plaintiffs' claims derives from the speculative nature of plaintiffs' alleged injury, which deprives them of standing and makes their claims unripe. Plaintiffs do not even attempt to identify a nonspeculative injury that could support standing or ripeness with respect to Counts Two, Three, and Four of their Complaint. They simply claim that such an injury is unnecessary in order for these claims to be ripe, while ignoring the "injury-in-fact" requirement of standing. As this Court has already recognized, at the time plaintiffs filed their Complaint, which is the relevant time for purposes of determining standing or ripeness, plaintiffs could establish no concrete and particularized injury, and that continues to be true since the determination of plaintiffs' status under the competitive bidding demonstration project has yet to be made. In regard to plaintiffs' procedural rulemaking challenge, plaintiffs incorrectly claim that an alleged denial of public participation in the rulemaking process is sufficient to establish an injury-in-fact. It is well established that standing to challenge rulemaking procedures requires that plaintiffs assert a concrete injury to their own interests caused by the challenged rule. Plaintiffs have alleged no such injury here. Moreover, because the "rules" at issue here do not constitute "final agency action," plaintiffs' rulemaking challenge is unripe.

## **ARGUMENT**

**I. ASSUMING ARGUENDO THAT PLAINTIFFS' CLAIMS ARE NOT BARRED ENTIRELY BY 42 U.S.C. § 1395w-3(b)(10), THEY ARE SUBJECT TO THE ADMINISTRATIVE CHANNELING REQUIREMENT OF 42 U.S.C. § 405(h)**

As this Court recognized in its Order of February 14, 2008, "virtually all legal attacks"

implicating the Medicare program must be "channeled" through the agency before they may be subject to judicial review. Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 10, 13 (2000) (noting 42 U.S.C. § 405(h) applies to the Medicare Act through 42 U.S.C. § 1395ii). The Supreme Court has explained that this channeling requirement bars federal question jurisdiction over any claim "arising under" the Medicare Act, even where – as here – a plaintiff has not yet suffered the denial of Medicare benefits or payment that would give rise to an administrative claim.[1] Id. For such claims, the Secretary must render a "final decision" before the claim may proceed to judicial review, which is then conducted pursuant to the Medicare Act rather than 28 U.S.C. § 1331. Ringer, 466 U.S. at 615. The Secretary's decision is "final" when two conditions are met: (1) presentment of a claim to the Secretary, and (2) exhaustion of administrative remedies. Bowen v. City of New York, 476 U.S. 467, 483 (1986). The presentment requirement is jurisdictional and cannot be waived. Id. The exhaustion requirement is waivable by the Secretary. See id. Because the "final decision" prerequisite necessarily contemplates that the Secretary have considered and passed on an issue, courts have "deem[ed]" the exhaustion requirement waived, Ill. Council, 529 U.S. at 24, only in very limited circumstances, where a claim is "entirely collateral" to the claimant's entitlement to Medicare payment. Mathews v. Eldridge, 424 U.S. 319, 330 (1976).[2]

Here, plaintiffs attempt to evade the Medicare channeling requirement on two bases. They first argue that the Court may exercise federal question jurisdiction because imposing an administrative exhaustion requirement here would amount to allowing "no review at all" of their

---

[1] It is uncontested that plaintiffs' claims "arise under" the Medicare Act. See Ill. Council, 529 U.S. at 10 (recognizing that claims raising "evidentiary, rule-related, statutory, constitutional, or other legal grounds" for challenging a Medicare decision are covered by the "arising under" language); see also Heckler v. Ringer, 466 U.S. 602, 614 (1984).

[2] As one court has noted, the Supreme Court in Illinois Council "explained that Eldridge did not so much create an exception to [42 U.S.C.] §[] 405(g) and (h), as it required the Secretary to excuse some of its procedural requirements so that its decision would be considered a 'final decision' and judicial review could follow under § 405(g)." Great Rivers Home Care, Inc. v. Thompson, 170 F. Supp. 2d 900, 905 (E.D. Mo. 2001).

claims. Pl. Mem. at 4 (citing Ill. Council, 529 U.S. at 19). They also contend that even if the channeling requirement applies, the Court should waive administrative exhaustion. Pl. Mem. at 5-7. Neither suggestion has merit.

**A.  The Court Cannot Retain Federal Question Jurisdiction Under The "No Review At All" Exception Based On CMS' Interpretation Of 42 U.S.C. § 1395w-3(b)(10) Because That Provision Bars Judicial Review As Well**

In Illinois Council, the Court recognized a narrow exception to exclusive Medicare Act jurisdiction where imposing the channeling requirement of § 405(h) would not simply postpone judicial review but "would mean no review at all." 529 U.S. at 19. Plaintiffs attempt to invoke that exception here by citing a CMS provider letter dated February 1, 2008, which indicates that nonwinning laboratories "have no appeal rights" if they submit claims to Medicare for laboratory tests that, under the demonstration project, they cannot bill directly to Medicare. Pl. Mem. at 5. The Court should not credit this argument. First of all, there is no basis for assuming at this point that plaintiffs will be nonwinning bidders since winners have yet to be selected. There is also no reason to assume that nonwinning bidders' claims will be denied review based solely on a provider letter, since the position stated in the letter could be modified before any nonwinning bidder is denied payment under the demonstration project and seeks review under § 1395ff.

Moreover, to the extent CMS has set forth a definitive policy regarding administrative review in the competitive bidding context, this policy reflects its interpretation of the bar on administrative review set forth in 42 U.S.C. § 1395w-3(b)(10). See 42 C.F.R. § 414.424 (interpreting § 1395w-3(b)(10) for purposes of the competitive bidding program established in 42 U.S.C. § 1395w-3(a) for durable medical equipment and other items).[3] However, § 1395w-

---

[3] In its final rule implementing § 1395w-3(a), CMS interprets the statutory bar in § 1395w-3(b)(10) by, in addition to listing the six categories of precluded claims set forth in the statute, stating that "[a] denied claim is not appealable if the denial is based on a determination by CMS that a competitively bid item was furnished in a [competitive bidding area] in a manner not authorized by this subpart." 42 C.F.R. § 414.424(b). CMS has indicated that this regulation "would have no impact on the current beneficiary or supplier right to appeal denied claims." CMS, Final Rule, 72 Fed. Reg. 17992, 18055 (Apr. 10, 2007). Rather, the regulation bars administrative claims that challenge the areas specified in the statute because they are submitted outside the scope of the competitive bidding program. The statement in the provider letter

3(b)(10) places an identical statutory bar on both administrative <u>and judicial</u> review of certain categories of claims related to competitive bidding. <u>See</u> 42 U.S.C. § 1395w-3(b)(10) ("There shall be no administrative or judicial review . . . ."). Accordingly, if there is in fact no administrative review of plaintiffs' claims based on § 1395w-3(b)(10), there is also no judicial review of those claims. As discussed below, defendant maintains that this statutory bar on judicial review does indeed preclude plaintiffs' claims. Defendant's argument that the Court lacks federal question jurisdiction under the Medicare Act is an <u>alternative</u> to his primary argument that review of plaintiffs' claims is barred entirely, pursuant to § 1395w-3(b)(10). If the Court were to conclude, contrary to defendant's position, or assume arguendo, for purposes of this analysis, that judicial review is not barred by § 1395w-3(b)(10), it must also conclude or assume that administrative review is not barred, which must in turn lead to the conclusion that the Medicare Act's channeling requirement applies, and jurisdiction under § 1331 is lacking. Thus, this Court should reject as meritless plaintiffs' contention that this is a situation where judicial review is available because administrative review is not.[4]

Plaintiffs are also incorrect in asserting that their claims are, in any case, "beyond the scope of administrative review available" under 42 U.S.C. § 1395ff. <u>See</u> Pl. Mem. at 5 n.1. Although, as defendant has previously explained, any challenges would have to accompany a claim for payment, statutory, constitutional, and rulemaking claims may – and indeed must – be raised in that context, as the Supreme Court has repeatedly recognized. <u>Ill. Council</u>, 529 U.S. at 10, 23; <u>Weinberger v. Salfi</u>, 422 U.S. 749, 762 (1975). Indeed, § 1395ff contains a specific expedited review provision that the agency may apply when the nature of a claimant's challenge

---

referenced by plaintiffs derives from this interpretation of § 1395w-3(b)(10).

[4]In addition, the Court should reject as baseless plaintiffs' suggestion that, by offering an alternative jurisdictional argument, defendant has sought to mislead the Court and to invite nonwinning laboratories to submit fraudulent claims to the government. Indeed, such claims are not likely to be held fraudulent even if CMS deemed them barred. <u>Cf.</u> <u>Nat'l Athletic Trainers Ass'n, Inc. v. U.S. Dep't of Health & Hum. Servs.</u>, 455 F.3d 500, 507 (5th Cir. 2006) (rejecting plaintiff's argument that administrative remedies were unavailable because submitting a statutorily-barred claim to CMS would subject him to criminal or civil fraud penalties).

leads the agency to conclude that the issue would more appropriately be decided by a court. 42 U.S.C. § 1395ff(b)(2). This expedited review procedure was developed for the very reason that all claims arising under the Medicare Act must be reviewed by the agency (unless review is statutorily barred), even where the nature of the claim makes administrative resolution unlikely.

### B. Plaintiffs' Waiver Argument Fails Because Plaintiffs Have Not Presented Their Claims To The Agency, They Essentially Assert Future Entitlement To Medicare Payments, And Exhaustion Would Serve A Useful Purpose

Plaintiffs' argument that the Court should waive the administrative exhaustion requirement (which assumes plaintiffs amend their Complaint to allege Medicare Act jurisdiction) is also easily dispensed with. Indeed, the Court need not reach the issue of waiver because the Medicare Act's presentment requirement is not waivable; it is a statutory prerequisite to jurisdiction that has not been satisfied here. See City of New York, 476 U.S. at 483. Plaintiffs' claims must be dismissed on that basis alone, and plaintiffs have conceded as much by failing to respond to defendant's prior assertion on this point.[5] Cf. Def.'s TRO Opp. at 14.

Furthermore, this is not a case where the remaining jurisdictional requirement that administrative remedies be exhausted can be waived. "'In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations[,]'" any claim that a court should deem exhaustion waived "must be examined critically." Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354 (6th Cir. 2000) (quoting Ill. Council, 529 U.S. at 13). Indeed, the Supreme Court has emphasized that § 405(h) expresses Congress' intent, in this complex context, to "assure[] the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts," even where "occasional individual, delay-related hardship" may result. Ill. Council, 529 U.S. at 13; cf. Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1296 (11th Cir. 2004) (recognizing the Medicare channeling requirement as "nearly absolute").

---

[5] In contrast, in Victor Valley Cmty. Hosp. v. Leavitt, No. 07-1189 (C.D. Cal. Jan. 10, 2008), which plaintiffs attached to their brief, presentment was satisfied. Slip. op. at 13.

Defendant's Response to Plaintiffs' Memorandum Pursuant to the Court's February 14, 2008, OSC        08CV0171 W POR
- 6 -

1  The Ninth Circuit, which has not deemed exhaustion waived in any case since the
2  Supreme Court's Illinois Council decision, has explained waiver is appropriate, if ever, cf. Queen
3  of Angels v. Shalala, 65 F.3d 1472, 1482 (9th Cir. 1995) (holding court could not waive
4  Medicare exhaustion), only where a claim is "(1) collateral to a substantive claim of entitlement
5  (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm
6  (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion
7  (futility)." Kildare v. Saenz, 325 F.3d 1078, 1082 (9th Cir. 2003) (internal quotation omitted).
8  Far from being collateral to any claim of entitlement to Medicare payment for laboratory tests,
9  plaintiffs' challenge here is wholly bound up with their alleged entitlement to future Medicare
10 payments, which they assert is in jeopardy under the demonstration project.  The fact that
11 plaintiffs have "no 'substantive claims of entitlement'" now, Pl. Mem. at 6, does not suggest
12 collaterality; rather, it merely demonstrates, as discussed further below, that plaintiffs' claims are
13 unripe and that they have suffered no injury-in-fact sufficient to confer standing.  Similarly,
14 plaintiffs cannot make a colorable showing of irreparability when their asserted harm is purely
15 speculative.  See Order of February 14, 2008, at 5 (recognizing plaintiffs' asserted injury "will
16 only occur, *if at all*, after they lose the bidding competition").

17  Even if the collaterality and irreparability requirements were met, waiver is inappropriate
18 because administratively channeling plaintiffs' claims is not futile.  Rather, it would serve the
19 traditional function of "'preventing premature interference with agency processes, so that the
20 agency may function efficiently and so that it may have an opportunity to correct its own errors,
21 [and] to afford the parties and the courts the benefit of its experience and expertise.'" Kaiser v.
22 Blue Cross of Cal., 347 F.3d 1107, 1115 & n.4 (9th Cir. 2003) (quoting Salfi, 422 U.S. at 765).
23 This is all the more true in a demonstration project where requirements will evolve in response to
24 on-the-ground realities, which the agency may learn of through administrative claims.  In the
25 context of Medicare competitive bidding, the agency's expertise in the economics of competitive
26 bidding and in the provision of Medicare services to eligible beneficiaries is essential to the
27 ongoing development of the project.  Plaintiffs' claims therefore must be administratively
28

exhausted under the Medicare Act, and the Court should dismiss them on that basis – unless the Court determines that plaintiffs' claims are barred altogether by 42 U.S.C. § 1395w-3(b)(10).

**II.    JURISDICTION IS PRECLUDED BY 42 U.S.C. § 1395w-3(b)(10)**

Congress has expressly barred judicial review of the fundamental aspects of the Secretary's implementation of the competitive bidding demonstration project for clinical diagnostic laboratory services, including the aspects that plaintiffs seek to challenge.[6]  42 U.S.C. § 1395w-3(b)(10), (e)(2)(A). While plaintiffs make much of the fact that the statute exempts "only . . . six categories" of the Secretary's determinations from judicial review, Pl. Mem. at 8, these six categories in fact cover plaintiffs' claims.  In contrast to Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 673 (1986), and the other (pre-Illinois Council) cases relied on by plaintiffs, see Pl. Mem. at 9-10, where there was no express statutory language barring review, the statutory text here overcomes the presumption in favor of judicial review.  See Bowen, 476 U.S. at 673 ("Congress can, of course," overcome the presumption by setting forth "specific language . . . that is a reliable indicator of congressional intent" to preclude review); cf. Amgen, Inc. v. Smith, 357 F.3d 103, 112 (D.C. Cir. 2004) (holding statutory text clearly barred review).

Many of the categories that Congress specified as exempt from judicial review focus on the initial stages of the competitive bidding process and are thus of particular significance here. These include: establishing a bidding structure, 42 U.S.C. § 1395w-3(b)(10)(F); determining what items and services must be included in the bidders' bids, id. § 1395w-3(b)(10)(E); determining how many bidders to select as contract winners, id. § 1395w-3(b)(10)(F); the "awarding of contracts" to certain bidders, id. § 1395w-3(b)(10)(B); and determining how much these winning bidders should be paid, id. § 1395w-3(b)(10)(A).  In doing so, Congress clearly recognized that these highly technical determinations, which require expertise in the complex interaction between the economics of competitive bidding and the structural mechanisms

---

[6]Plaintiffs do not seriously dispute that § 1395w-3(b)(10) applies to the demonstration project through § 1395w-3(e)(2)(A). See Pl. Mem. at 8 (conceding that "[s]ection 1395w-3(b)(10) arguably applies to the Demonstration Project by virtue of Section 1395w-3(e)(2)(A)").

necessary to provide laboratory services to Medicare beneficiaries, are best left to the Secretary's discretion. The designated categories also indicate Congress' intent to prevent suppliers unhappy with the inevitable result of competitive bidding – that some of them must lose – from interfering with the bidding process in order to undermine the goals that competitive bidding is meant to serve. As CMS has recognized, Congress sought through these limitations "to avoid any delay or disruption in the implementation of the program caused by challenges and appeals regarding specified aspects of" competitive bidding. 72 Fed. Reg. at 18055. Contrary to plaintiffs' assertions, the challenges raised in plaintiffs' Complaint fall squarely within the categories that Congress expressly exempted from review.

First, category (F),[7] covering the Secretary's establishment of a bidding structure, necessarily incorporates the determination of who is and is not required to submit bids in order to participate in the demonstration project. The Secretary's application of the face-to-face encounter exception in § 1395w-3(e)(1)(B) so as to require hospital laboratories providing services to nonpatients to participate in competitive bidding, even when the laboratories are located on hospital premises, is encompassed within his overall effort to create a viable bidding structure by including a sufficient number of laboratories that already compete against each other in the marketplace as competitors in the bidding process. Setting the revenue threshold for required bidders at $100,000 is part of the same effort.[8] Indeed, requiring bidders to include a bid for collection of the specimens to be tested is also encompassed within this category since laboratories' bids might otherwise not accurately assess the charges included in testing, thus interfering with the success of the bidding process and of the demonstration project itself as a means of testing whether competitive bidding can achieve overall cost savings without sacrificing the quality of services. In accord with the latter goal, the Secretary's exclusion of

---

[7]The category labels refer to the statutory subsection; e.g., "category (F)" refers to the bar on judicial and administrative review set forth in 42 U.S.C. § 1395w-3(b)(10)(F).

[8]As explained in the Secretary's TRO opposition, the Secretary's implementation of these measures as a means of establishing a successful bidding structure also supports the conclusion that these measures are not arbitrary. See Def.'s TRO Opp. at 21-22.

laboratories that exclusively serve nursing facility residents or ESRD patients from the bidding requirement is also part of establishing a bidding structure – one that is not only economically successful but also protects the special needs of vulnerable Medicare beneficiary populations.

Second, category (E), covering the Secretary's selection of items and services for the competitive bidding demonstration project, encompasses his determination that specimen collection is part and parcel of the clinical laboratory diagnostic tests he has selected for inclusion in the project since payment for both is otherwise pursuant to 42 U.S.C. § 1395*l*. See 42 U.S.C. § 1395*l*(h)(3) (allowing a "nominal fee," in addition to the fee schedule test charge, for collection). While plaintiffs claim the Secretary acted beyond the scope of his authority in making this determination, that assertion does not remove their claim from the statutory bar where it is meritless. When considering subject matter jurisdiction, the Court may look at the merits of a plaintiff's claim to the extent necessary to determine whether judicial review is statutorily barred. See Amgen, Inc., 357 F.3d at 113-14 (where "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action, . . . the court must address the merits to the extent necessary to determine whether the challenged agency action falls within the scope of the preclusion on judicial review"). Here, the Secretary does have authority to require bids on specimen collection, based on his broad authority to set any "conditions as [he] determines to be appropriate" in order to carry out the competitive bidding demonstration project. 42 U.S.C. § 1395w-3(e)(2)(A). As discussed, specimen collection charges are undeniably relevant to the determination of which bids actually produce the lowest cost of supplying laboratory services, and the Secretary deemed it appropriate to require bidders to include those costs in their bids.

Third, categories (F) and (B), covering the Secretary's determination of the number of winning bidders, and the overall process of "the awarding of contracts," encompass any claim that a laboratory might raise based on the fact that it did not win under the competitive bidding process. The very concept of competitive bidding requires that some bidders will win while others lose. Congress understandably sought to foreclose challenges based on that inevitable

result. To the extent plaintiffs' takings claim is ripe,[9] it is barred under these categories.

Fourth, categories (F) and (B), covering the Secretary's establishment of a bidding structure, together with his "awarding of contracts," encompass any challenge to the procedures used to establish the bidding structure, including an alleged failure to follow the rulemaking procedures set forth in 5 U.S.C. § 553. The "policies" that plaintiffs allege were improperly adopted without notice and comment relate exclusively to these subjects, and the categories cover the processes and methods followed by CMS in establishing a bidding structure and awarding of contracts as well as the results of those processes and methods. Because the processes and methods are unreviewable, their adherence to rulemaking requirements are also.

Plaintiffs incorrectly assert that the Ninth Circuit's decision in Skagit County Public Hospital v. Shalala, 80 F.3d 379 (9th Cir. 1996), supports the conclusion that judicial review is available here despite the language of § 1395w-3(b)(10). Pl. Mem. at 12. In Skagit, the Ninth Circuit held that it lacked jurisdiction to consider plaintiff's challenge based on the statutory bar to judicial review in 42 U.S.C. § 1395ww(d)(10)(C)(iii)(II), which states that "[t]he decision of the Secretary shall be final and shall not be subject to judicial review." Skagit, 80 F.3d at 385 (quoting provision). The court distinguished the plaintiff's claim in that case, which, it concluded, in essence sought to overturn the Secretary's decision, from challenges to "'methods' and other collateral issues." Id. at 386. This distinction was based on the specific statutory

---

[9] Plaintiffs' takings claim in fact posits that not only will plaintiffs lose in the competitive bidding process, but they will also be forced to supply laboratory services to Medicare beneficiaries within the demonstration project area without any hope of compensation for these services. Pl. Mem. at 10. They reference a CMS "policy" that allegedly requires this result. While CMS has stated as a general rule that a laboratory enrolled as a Medicare supplier cannot legally refuse to provide services to a beneficiary based on payment, CMS presumes that nonwinning bidders either will receive compensation for services provided in the project area through contractual arrangements with winning bidders, or will not conduct tests for beneficiaries in the project area because hospitals, physicians, and winning bidders will not refer such tests to them. See Def.'s PI Opp. at 23 (citing Wynn Decl. ¶ 29). Because plaintiffs fail to point to anything other than pure speculation for their assertions to the contrary, their takings claim is unripe. Indeed, CMS has recently clarified that if a nonwinning laboratory is in fact asked to provide a test covered by the project to a beneficiary within the project area, but does not serve as a reference laboratory for a winning bidder, it need not perform the test. See Exhibit A.

1    language of § 1395ww, which only barred challenges to "decision[s]" of the Secretary.

2    Contrary to plaintiffs' suggestion, there is no automatic exception to statutory bars on
3    judicial review for claims that might be characterized as "collateral" or that challenge
4    "methodology . . . , rather than the determination itself." See Pl. Mem. at 12. Rather, as the
5    Supreme Court in Illinois Council recognized when holding that § 405(h) broadly precludes
6    judicial review of all claims arising under the Medicare Act, the scope of a statutory bar is
7    governed by the statutory text. Ill. Council, 529 U.S. at 14 (distinguishing McNary v. Haitian
8    Refugee Ctr., Inc., 498 U.S. 479, 494 (1991), where the Court had upheld § 1331 jurisdiction, by
9    recognizing that the different outcome in that case "turned on the different language of that
10   different statute"). Here, as explained, the statutory language in § 1395w-3(b)(10) encompasses
11   plaintiffs' challenges. The provision therefore precludes judicial review in this case.

12   **III.   BECAUSE PLAINTIFFS' ALLEGED INJURIES ARE SPECULATIVE AND THE PROJECT TERMS ARE NOT FINAL, RIPENESS AND STANDING REQUIREMENTS ARE NOT MET**

14   Even if judicial review were not otherwise barred for the reasons discussed above, the
15   purely speculative nature of plaintiffs' asserted injuries – which rely on the assumption that they
16   will not be declared winners through the demonstration project's bidding process, and the further
17   assumption that they will, as a result, lose business – should lead this Court to conclude that
18   plaintiffs lack standing and their claims are unripe. Def.'s TRO Opp. at 14-15; see Thomas v.
19   Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (recognizing
20   that a plaintiff must assert an injury "that is real and concrete rather than speculative and
21   hypothetical" (internal quotation omitted)). In response, the only injury-in-fact that plaintiffs
22   attempt to identify is that related to the Secretary's alleged failure to comply with rulemaking
23   requirements, which they challenge in Count One of their Complaint. Pl. Mem. at 12-13.
24   Plaintiffs fail to identify any injury that could support their standing to assert Counts Two, Three,
25   and Four of their Complaint, in effect conceding that they cannot meet their burden in regard to
26   these Counts. See Loritz v. U.S. Court of Appeals for the Ninth Circuit, 382 F.3d 990, 992 (9th
27   Cir. 2004) (recognizing a plaintiff's burden at the pleading stage to "alleg[e] specific facts

sufficient to satisfy the standing elements"). Plaintiffs' failure to identify a nonspeculative injury related to these three counts also demonstrates that they are unripe. Portman v. County of Santa Clara, 995 F.2d 898, 902 (9th Cir. 1993).[10]

In regard to plaintiffs' rulemaking challenge, plaintiffs misconstrue the Ninth Circuit's holding in Paulsen v. Daniels, 413 F.3d 999 (9th Cir. 2005), as holding that an agency's alleged failure to follow procedures required under the APA is, in and of itself, sufficient to establish an injury-in-fact for standing purposes. Pl. Mem. at 13. Contrary to plaintiffs' assertion, the "injury in fact" that the court in Paulsen recognized as "affording the[] [plaintiffs] standing" to challenge a regulation on procedural grounds was the "effect of the regulation" on them – specifically, the denial of their sentence reductions. Paulsen, 413 F.3d at 1005.[11] Here, in contrast, the "policies" that plaintiffs seek to challenge on rulemaking grounds have had no injurious effect on them

---

[10]Though plaintiffs claim they have now submitted bids to participate in the demonstration project, standing cannot be conferred on them retroactively. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 838 (9th Cir. 2007). Ripeness must also be satisfied at the time the complaint is filed. See Malama Makua v. Rumsfeld, 136 F. Supp. 2d 1155, 1161 (D. Haw. 2001) ("[R]ipeness is not a moving target affected by a defendant's action."); cf. 15 Moore's Federal Practice, § 101.74 (Matthew Bender 3d ed. 2005) ("[S]ubsequent ripening of the issue while the matter is under the court's consideration on a jurisdictional motion to dismiss is not sufficient to confer the court with jurisdiction that did not originally exist when the action was initiated."). Moreover, submitting bids has not resulted in any concrete injury to plaintiffs since there is no reason to assume they will lose as bidders.

[11]The other cases cited by plaintiffs are also utterly lacking in support for their position; rather, all recognized that the "injury," for standing purposes, is not merely the procedural violation. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 573 n.8 (1992) (recognizing standing could not rest "solely on the basis of a 'procedural right' unconnected to the plaintiff's own concrete harm"); Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 51 (D.C. Cir. 1999) (recognizing that the agency's alleged violation of its own regulations had completely removed a procedural barrier such that "the impending threat of injury is sufficiently real to constitute injury-in-fact"); Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 937 (D.D.C. 1986) (plaintiffs' "complaint identifies concrete organizational interests detrimentally affected by the particular HHS regulatory dispositions they challenge"); Ctr. for Auto Safety v. Tieman, 414 F. Supp. 215, 219 (D.D.C. 1976) (plaintiff organization alleged injury to its organizational activities, which included keeping the public informed, as a result of lack of information due to agency's alleged failure to follow rulemaking requirements).

1  since their bids remain pending and the demonstration project has not yet begun.[12] The lack of an
2  injury deprives plaintiffs of standing and makes their claim unripe.

3  Moreover, contrary to plaintiffs' assertion, the fact that the "agency policies" they
4  challenge are "still . . . being refined," Pl. Mem. at 14, also defeats their rulemaking challenge on
5  ripeness grounds because, as previously discussed, Def.'s TRO Opp. at 16-19, these policies
6  cannot qualify as "final agency action." Cf. Texas v. United States, 497 F.3d 491, 498 (5th Cir.
7  2007) (recognizing that whether "the challenged regulations constitute 'final agency action'" is
8  an element of the court's ripeness analysis); Ass'n of Flight Attendants-CWA v. Chao, 493 F.3d
9  155, 160 (D.C. Cir. 2007) ("[R]ipeness, and the requirement of final agency action are related
10 and often overlapping doctrines . . . ."). Where a plaintiff brings a procedural challenge to an
11 alleged "rule" of an agency, the minimum requirement for ripeness is that the rule be a final
12 agency action. See Ore. Natural Desert Ass'n v. U.S. Forest Serv., 465 F.3d 977, 979 (9th Cir.
13 2006) ("We conclude that the Forest Service's action . . . is 'final agency action' under [5 U.S.C.]
14 § 704 and therefore that plaintiffs' claims are ripe for judicial review."). Indeed, the Ninth
15 Circuit has also recognized the "final agency action" requirement as part of the prudential
16 standing analysis that determines whether a plaintiff may assert an APA claim. See Laub v. U.S.
17 Dep't of Interior, 342 F.3d 1080, 1087-88 (9th Cir. 2003).

18 The "final agency action" requirement is not met here. In order to qualify as "final," an
19 action must both "mark the consummation of the agency's decision making process," and "be
20 one by which rights or obligations have been determined or from which legal consequences
21 flow." Ecology Ctr., Inc. v. U.S. Forest Serv., 192 F.3d 922, 925 (9th Cir. 1999) (citing Bennett

---

[12] Plaintiffs' suggestion in passing that they have standing to assert claims on behalf of Medicare beneficiaries, Pl. Mem. at 12 n.4, is baseless. This is not a case where plaintiffs' interests and those of Medicare beneficiaries are necessarily aligned. To the contrary, plaintiffs' interests may well be adverse to the reduction of Medicare costs, which is of paramount importance to beneficiaries since it affects the long-term viability of the Medicare program. See TAP Pharm. v. U.S. Dep't of Health & Human Servs., 163 F.3d 199, 205 (4th Cir. 1998) (holding a pharmaceutical company's interest in selling a particular brand of drug was not aligned with Medicare beneficiaries' interests where there was no reason to believe the company's brand was superior to others).

v. Spear, 520 U.S. 154, 177 (1997)); cf. Indus. Customers of Nw. Utilities v. Bonneville Power Admin., 408 F.3d 638, 646 (9th Cir. 2005) (listing as "indicia" of a final agency action "whether the [action] amounts to a definitive statement of the agency's position, whether the [action] has a direct and immediate effect on the day-to-day operations of the party seeking review, and whether immediate compliance [with the terms] is expected" (internal quotation omitted)).  Even if some aspects of the demonstration project, such as its initial bidding requirements, were deemed to have reached consummation by the time plaintiffs filed their Complaint, no legal consequences flow from those aspects.  Particularly because the bidding process at issue is part of a demonstration project, it must be expected that CMS will adjust various aspects of the project, perhaps even during the bid selection process, which offers CMS an opportunity to reevaluate whether the bidding criteria established thus far has achieved the anticipated bid results.  Certainly, plaintiffs' rights and obligations under the demonstration project are far from settled where it has not been determined whether plaintiffs' bids will be selected as winners and where payment amounts have not been set.  Plaintiffs' rulemaking challenge, like the other challenges raised in their Complaint, is therefore unripe.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss plaintiffs' claims for lack of subject matter jurisdiction.

DATED: March 14, 2008

Respectfully Submitted,
JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
KAREN P. HEWITT
United States Attorney
SHEILA LIEBER
Deputy Director

/s/   Kathryn L. Wyer
KATHRYN L. WYER
U.S. Department of Justice, Civil Division
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel.  (202) 616-8475 / Fax (202) 616-8470
kathryn.wyer@usdoj.gov
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE; INTERNIST LABORATORY; AND SCRIPPS HEALTH,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>MICHAEL LEAVITT, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　　Defendant. | Case No. 08 CV 0170 W (POR)<br><br>**CERTIFICATE OF SERVICE** |

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

　　　IT IS HEREBY CERTIFIED that:

　　　I, Kathryn L. Wyer, am a citizen of the United States over the age of eighteen years and a resident of the District of Columbia; my business address is 20 Massachusetts Ave., Washington, DC  20530; I am not a party to the above-entitled action.

　　　I have caused service of the following document(s) on the parties indicated below by electronically filing said document(s) with the Clerk of the District Court using its ECF System, which electronically notifies them:

DOCUMENT(S) SERVED:

　　　- Defendant's Response to Plaintiffs' Memorandum Pursuant to the Court's February 14, 2008 Order

PARTIES ON WHOM SERVED:

　　　Plaintiffs, by and through their counsel of record, Patric Hooper,
　　　phooper@health-law.com

　　　I declare under penalty of perjury that the foregoing is true and correct.

　　　Executed on March 14, 2008.

　　　　　　　　　　　　　　　　　　　　　　　　　s/ Kathryn L. Wyer
　　　　　　　　　　　　　　　　　　　　　　　　　KATHRYN L. WYER