PATRIC HOOPER (State Bar No. 57343)
JORDAN B. KEVILLE (State Bar No. 217868)
ABIGAIL WONG (State Bar No. 245652)
**HOOPER, LUNDY & BOOKMAN, INC.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
E-Mail: jkeville@health-law.com

Attorneys for Plaintiffs SHARP HEALTHCARE, INTERNIST LABORATORY and SCRIPPS HEALTH

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE; INTERNIST LABORATORY and SCRIPPS HEALTH,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL LEAVITT, SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | CASE NO. 08-CV-0170 W POR<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: April 8, 2008<br>Time: 9:00 a.m.<br>Dept.: Courtroom of the Hon. Thomas J. Whelan |

## I. INTRODUCTION

In opposing Plaintiffs' motion for a preliminary injunction to temporarily halt the Medicare clinical laboratory competitive bidding demonstration project ("demonstration project"), the Secretary has adeptly executed a misdirection play. By characterizing this as a case of a few laboratories prematurely panicking about losing money as a result of not being declared demonstration project "winners," the Secretary has obscured the real issues at stake here. Plaintiffs did not initiate this action solely out of a fear of losing Medicare business (although that certainly is a component). Rather, Plaintiffs object to the Secretary suddenly forcing into place, after years of inertia, a program that is likely to fundamentally alter a successful system for delivering laboratory services in the San Diego area, without following procedures mandated by federal law. Whether they ultimately are winners or losers, Plaintiffs already have been (and continue to be) harmed by the Secretary's failure to comply with the Administrative Procedure Act ("APA") by not fully and appropriately engaging the public in the development of the demonstration project.

Further, aside from the fact that the Secretary's violation of APA procedures creates harm in and of itself, the Secretary's "wait and see" approach to the other harm alleged here is self-serving, not supported by law, and wholly detached from reality. The Secretary's concept of irreparable harm puts laboratories like Plaintiffs in a "Catch 22" whereby there can never be a right time to challenge the Secretary's unlawful implementation of the demonstration project. According to the Secretary, Plaintiffs cannot adequately show harm until they have been announced as losers and **actually are losing money as a result**. The whole point of preliminary injunctive relief is to prevent potential harm before it happens. As Plaintiffs have explained previously, if they are forced to wait until after the harm they are alleging comes to fruition to pursue their claims, it will be too late.

The Secretary's position in this case also flies in the face of longstanding principles of administrative law. The bottom line is that, but for a few, narrow

exceptions that do not apply here, agency action is required to be subject to court review.  This is particularly true of an agency's adherence (or lack thereof) to procedural standards that are intended to protect the public interest.  The Secretary is seeking to create an exception to the presumption of reviewability for anything labeled a "demonstration project" because such things are meant to be experimental and therefore, in the Secretary's estimation, can never be "final" for the purposes of the APA.  Congress knows how to exempt programs and agency activity from the scope of the APA when it sees fit and easily could have done so here.  It did not.  The Secretary cannot take this demonstration project, which has had and will continue to have consequences for impacted laboratories, out of the purview of the APA just by arguing that he may change his mind about some or all of it.

Finally, the Secretary's claims about the competing hardships in this case do not hold up.  The Secretary relies on grandiose statements about how the demonstration is intended to protect the Medicare trust fund.  These assertions are far more speculative than anything Plaintiffs have alleged.  By the Secretary's own account, this demonstration project is an experiment and he therefore has no idea at this point whether it will achieve any monetary savings.  Further, the mandate of Congress with respect to the demonstration project was not only for the Secretary to cut the cost of services, but to do so without sacrificing access to services and quality.  Plaintiffs are not seeking to stop the Secretary from ever implementing the demonstration project.  Rather, Plaintiffs are seeking to slow the process down so that the project is rolled out in as reasonable a manner as possible, with the highest likelihood of meeting all of the goals established by Congress.

## II. PLAINTIFFS HAVE BEEN AND WILL CONTINUE TO BE HARMED

With respect to irreparable harm, the Secretary's Opposition focuses entirely on what Plaintiffs have alleged will happen to them individually, as well as to their employees and patients, if they are not declared winners under the demonstration project. *See* Secretary's Opposition to Motion for Preliminary Injunction ("Sec. PI

Opp.") at 4 – 10.  While Plaintiffs maintain that this harm is sufficiently significant and concrete to establish the need for a preliminary injunction, it is not the only harm at play here.  Even if Plaintiffs are ultimately declared winners under the demonstration project, they have already been injured by the Secretary's failure to properly include the public in the development and promulgation of the demonstration project.  Case law establishes that an agency's failure to comply with the procedural mandates of the APA, by itself, gives rise to an injury.

The notice and comment procedures proscribed by the APA are not insignificant, make work requirements to be disregarded at an agency's whim.  Rather, "[w]hen substantive judgments are committed to the very broad discretion of an administrative agency, procedural safeguards that assure the public access to the decision maker should be **vigorously enforced**." *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982) (emphasis added).  Along these lines, parties have a "concrete interest to have the public participate in [agency] rulemaking. . ." *Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005).  When agencies fail to allow the public to adequately participate in rulemaking, that interest is thwarted. *See id*.  In such circumstances, injunctive relief is appropriate. *See Southern Utah Wilderness Alliance v. Thompson*, 811 F.Supp. 635, 641 (D. Utah 1993) ("If the court finds a substantial likelihood that the ADCs violate either **the APA** or NEPA, injunctive relief is presumptively available . . .") (emphasis added) [hereinafter *"SUWA."*]

Here, Plaintiffs have made a more than colorable showing that the Secretary violated the APA by not adopting the current demonstration project scheme through the notice and comment process required by the APA.  Even though the Secretary still is in the process of reviewing bids, Plaintiffs have already lost because not only have they have been denied their opportunity to fully participate in the rulemaking process, their interest in having other members of the public, such as patients and doctors, have a say in the demonstration project has been wholly disregarded.  The Secretary's failure to abide be the APA has lead to several demonstration act policies

being uninformed and ill-advised. Accordingly, regardless of whether they win or lose under the demonstration project, Plaintiffs should awarded injunctive relief to address the inappropriate and unlawful process the Secretary has used to develop the demonstration project.

### A. Plaintiffs Do Not Have to Show They Will Not Be Able to "Offset" Lost Medicare Business

The Secretary argues that in order to satisfy the irreparable harm requirement, not only must Plaintiffs show that they will lose revenue as a result of being cut out of the Medicare program, but that they will not be able to "offset" that loss of revenue by other means, including serving "as reference laboratories for winning bidders." Sec. PI Opp. at 5. The Secretary's view of the required showing for irreparable harm goes well beyond anything established by case law.

The Secretary has not cited a single case standing for the proposition that a party seeking injunctive relief based on allegations of possible irreparable harm must make a showing as to intervening circumstances that could somehow mitigate or minimize the harm. This is because there is no such requirement. It would be both unfair and illogical to make a plaintiff's burden of showing irreparable harm include providing information about what third parties may or may not do. Indeed, taken to its extreme, the Secretary's formulation of the irreparable harm requirement might require Plaintiffs to show that they will not be able to compensate for lost business by winning the lottery. This same reasoning applies to the Secretary's contention that Plaintiffs should be required to show that they will not be able to make up for the lost business by providing more services that are not subject to the demonstration project. *See* Sec. PI Opp. at 8 – 9.

More to the point, particularly with respect to Plaintiff Internist, there is evidence currently before the Court indicating that is very **unlikely** that the laboratory will be able to offset impending harm by contracting with winning laboratories to be a reference laboratory. As explained previously, Plaintiff Internist

1045464.2

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

4                                           08-CV-0170 W POR
PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

only has the capacity to provide roughly half of the 303 laboratory test codes that are included in the demonstration project. Declaration of Gary Stevens ("Stevens Decl.") ¶ 11. Internist (unsuccessfully) had to seek the cooperation of other laboratories that provide the tests that Internist cannot do just to complete the demonstration project bid application. *Id.* The laboratories that are declared winners under the demonstration project likely will be able to provide all of the relevant tests or already have relationships with laboratories who will serve as their reference laboratories. There seems to be little reason why a winning laboratory would want or need to contract with Internist.

Further, even if Internist did succeed in securing contracts to provide services for some winning laboratories, it is extremely unlikely that the compensation derived from these contracts would make up for all of Internist's lost revenue. Roughly 65% of the laboratory services that Internist provides are Medicare fee-for-service patients. Stevens Decl. ¶ 7. It tests the bounds of credulity for the Secretary to suggest that a laboratory that will have virtually no bargaining power will be able to secure enough business through contracts with other laboratories to make up for losing 65% of the services it currently provides.

Finally, the Secretary's assertions about the timing of Plaintiffs' claims do not account for the practical realities of running a business. The Secretary suggests that an injunction is not appropriate now because, even though winners and losers are going to be announced in mid-April, the payment changes resulting from the demonstration project will not go into effect until July 1, 2008. Sec. PI Opp. at 5 – 6. In light of the implementation date, the Secretary contends that Plaintiffs should be able to have the merits of their claims determined before any harm actually results. *See id.* This is nonsense. If any of the Plaintiffs are declared losers in April, they are not going to be able to wait until July before making changes to the way they operate. Unwinding contracts, firing employees and restructuring operations are not things that can be done in instant. If they are declared losers, it

would be imprudent for Plaintiffs to wait for July without taking any precautionary measures in the hopes that they somehow will be able to make up for their lost Medicare business. Again, the Secretary is effectively arguing that the Plaintiffs have to wait for the harm to occur before they can rightfully claim the benefit of injunctive relief. That is not what the law requires.[1]

### B. Injunctive Relief is Available In this Case Because the Secretary Violated the APA

The Secretary takes issue with Plaintiffs' characterization of the cases establishing that injunctive relief is presumptively available in cases where federal statutes have been violated. The Secretary argues that this rule only applies in cases where the government is a plaintiff or where the statute that allegedly was violated specifically provides for injunctive relief. Sec. PI Opp. at 10 – 11. Not so.

This presumption has been applied in cases involving non-government plaintiffs and statutes without express injunctive relief provisions, including one of the cases cited previously by Plaintiffs. The Secretary tries to distinguish away this case, *SUWA, supra*, on the grounds that it involved alleged violations of the

---

[1] The Secretary maintains that harm to third parties should not be part of the calculus when deciding whether injunctive relief is available. It is worth noting that in one of the two cases cited by the Secretary for this proposition, *L.A. Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980), the party seeking injunctive relief did not even allege any potential harm to third parties. Interestingly, *L.A Memorial* is the authority that the other case cited by the Secretary, *Poeng v. United States,* 167 F. Supp.2d 1136 (S.D. Cal. 2001) relied on in declining to consider harm to third parties. As Plaintiff's have pointed out previously, cases involving the Medicare program have considered allegations of harm to patients raised by provider plaintiffs. Another example of such a case is *Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 60 (1st Cir. 2004). Although the 1st Circuit Court vacated the injunction issued by the district court in *Long Term Care*, it made a point of noting that the district judge was correct in considering the interests of patients when considering whether an association of providers was entitled to injunctive relief. *See id*.

National Environmental Protection Act and not the APA. *See* Sec. Opp. at 11. The express language of the case shows the Secretary is wrong. Again, *SUWA* provides, "If the court finds a substantial likelihood that the ADCs violate **either the APA or NEPA**, injunctive relief is presumptively available . . ." *SUWA*, 811 F. Supp. at 641 (emphasis added). Courts have also applied the presumption in favor of injunctive relief to an agency's alleged violation of the federal Medicaid Act, which does not expressly provide for injunctive relief. *See Long Term Care Pharmacy Alliance v. Ferguson*, 260 F. Supp.2d 282, 289 (D. Mass 2003) *overruled on other grounds* 362 F.3d 50. Plaintiffs' characterization of the rule making injunctive relief available in cases involving statutory violations is accurate and that rule should apply here.

### III.   PLAINTIFFS WILL PREVAIL ON THEIR APA CLAIMS

The Secretary has failed to present any compelling arguments why the procedural mandates of the APA do not apply to the demonstration project. The Secretary clings to the proposition that the rules governing the demonstration project are not "final" under the APA and are not subject to review. *See* Sec. PI Opp. at 12 – 14. Plaintiff's brief in support of its Motion for Preliminary Injunction explains in detail why the Secretary is wrong, so those arguments need not be reiterated here. However, certain points raised in the Secretary's Opposition merit a response.

The Secretary attempts to prove his point regarding the non-final nature of the demonstration project by identifying language in the Bidder's Package reserving the Secretary's right to change the policies set forth therein. Again, agency disclaimers and characterizations of their actions are not determinative of reviewability. *See Appalachian Power Co. v. Envt'l Protection Agency*, 208 F.3d 1015, 1023 (D.C. Cir. 2000). As Plaintiffs have explained, the Bidder's Package is filled with language that places immediate burdens on impacted laboratories and that creates immediate consequences. These are the hallmarks of "final" agency action. The Secretary is effectively trying to create an APA exemption for all demonstration projects because they are "experimental" and subject to change. It is for Congress, and not

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

the Secretary, to determine when agency action need not comply with the APA. Congress did not make such a determination in this instance.

Plainly recognizing the weakness of his arguments on the finality of the demonstration project, the Secretary argues in his Opposition that his failure to comply with the APA should be excused because Plaintiffs had an opportunity to participate to some extent in the development of the demonstration project. *See* Sec. PI Opp. at 15 – 16. The "harmless" error rule that the Secretary relies upon is extremely narrow and does not apply here. As stated in *Pualsen*, *supra*:

> To avoid gutting the APA's procedural requirements, harmless error analysis in administrative rulemaking must therefore focus on the process aw well as the result . . . the failure to provide notice and comment is harmless only where the agency's mistake 'clearly had no bearing on the procedure used or the substance of the decision reached.

*See Paulsen*, 413 F.3d at 1006.

There is no way that the Secretary can say that his failure to go through notice and comment in this case had no bearing on the procedure used or the substance of the current demonstration project policies. The Secretary has revised some of the policies based on what little input he has allowed laboratories to give. This suggests that if formal notice and comment procedures were followed, the demonstration project might look completely different. Further, the Secretary has only solicited input from laboratories related to the demonstration project. The Secretary has not at any point tried to involve Medicare beneficiaries or their doctors. Input from these groups would be invaluable. Thus, as in *Paulsen*, the Secretary has precluded true "public participation" in the creation of the demonstration project and his failure to follow the APA is not harmless.

## IV. THE SECRETARY'S POLICIES ARE INVALID

The Secretary again misapprehends administrative law in suggesting that his demonstration project policies are so vested with discretion and so complex, as to be

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

unreviewable. *See* Sec. PI Opp. at 16. Under the APA, courts have the power to determine whether agency action is arbitrary and capricious. An agency decision may be held arbitrary and capricious where the agency has failed to consider relevant factors or made a decision so "implausible" that it could not be ascribed to "agency expertise." *See Alvarado Community Hosp. v. Shalala*, 155 F.3d 1115, 1121 – 1122 (9th Cir. 1998); *see also Sierra Club v. Bosworth*, 510 F.3d 1016, 1023 (9th Cir. 2007). Further, courts will defer to an agency's decision only if it is "fully informed and well considered." *Sierra Club,* 510 F.3d at 1023. There is nothing so special about the demonstration project to take it outside of the arbitrary and capricious standard set forth above. This Court is perfectly well equipped to decide if the Secretary failed to consider relevant factors or acted in an ill-informed manner when promulgating the demonstration act policies under review.[2]

## V.  THE PUBLIC INTEREST FAVORS PLAINTIFFS

The Secretary has presented no compelling reason why the demonstration project must be implemented now, without any further delays. The Secretary states that the creation of the demonstration project shows an "awareness" by Congress of "the urgency of finding some remedy to the high costs of Medicare, which threaten the long-term viability of the program." Sec. PI Opp. at 12. If Congress felt the problem was so urgent, it would have set forth a date by which the demonstration project needed to be implemented. It did not. Further, the statute creating the

---

[2] With respect to the Secretary's arguments regarding Plaintiffs' takings claim, Plaintiffs note only that the Centers for Medicare and Medicaid Services ("CMS") policy statement that supposedly clarifies that non-winning bidders will not be required to continue to service Medicare beneficiaries without compensation was published **after** the present lawsuit was filed. *See* Sec. PI Opp. at 18. While this policy statement is not nearly as clear as the Secretary represents, assuming it says what the Secretary claims, it no doubt was developed in response to Plaintiffs' takings allegations. This course of events highlights why the demonstration project will benefit from a delay for further refinement and public participation.

demonstration project was enacted in 2003.  If this issue needed such immediate attention, why did it take the Secretary five years to develop the project?  Surely if the Medicare program has not folded in the five years since the demonstration project was created, a delay of an additional few months to allow for further public notice and comment will not mean the end of Medicare.

In addition, since the demonstration project is an experiment, the Secretary does not know at this time whether it actually will result in any savings to the Medicare program.  This fact severely undermines the Secretary's urgency claims.  Also, given the testimony offered by Plaintiffs Scripps and Sharps, it is doubtful whether the current incarnation of the demonstration project will achieve the Congressional directive of maintain access to quality laboratory services.  Thus, if the Secretary is really concerned with carrying out the mandate of the demonstration project statute, allowing additional time for a public notice and comment process can only be beneficial.

Again, Plaintiffs are not trying to permanently enjoin the demonstration project.  They are seeking only a short delay to allow the Secretary to formulate the policies in accordance with the APA.  There simply is no way any public interest will be harmed by such a delay.

DATED: March 28, 2008                HOOPER, LUNDY & BOOKMAN, INC.


By: ___/s/_____
        JORDAN B. KEVILLE
Attorneys for Plaintiffs SHARP
HEALTHCARE, INTERNIST
LABORATORY and SCRIPPS HEATLH

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1875 Century Park East, Suite 1600, Los Angeles, California 90067-2517.

On March 28, 2008, I served the following document(s) described as **PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Christopher B. Latham<br>Assistant United States Attorney<br>Christopher.Latham@usdoj.gov | *Attorneys for Defendant* |
| Sheila Lieber<br>Assistant United States Attorney<br>Sheila.Lieber@usdoj.gov | *Attorneys for Defendant* |
| Kathryn L. Wyer<br>Assistant United States Attorney<br>Kathryn.Wyer@usdoj.gov | *Attorneys for Defendant* |

**ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from pnewler@health-law.com on March 28, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e mail address listed below their address(es). The document(s) was/were transmitted by electronic transmission via USDC-Southern District of California Official Court Electronic Document Filing System.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 28, 2008, at Los Angeles, California.

/s/
Jordan B. Keville

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181