1  PATRIC HOOPER (State Bar No. 57343)
   JORDAN B. KEVILLE (State Bar No. 217868)
2  ABIGAIL WONG (State Bar No. 245652)
   **HOOPER, LUNDY & BOOKMAN, INC.**
3  1875 Century Park East, Suite 1600
   Los Angeles, California 90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
5  E-Mail: jkeville@health-law.com

6  Attorneys for Plaintiffs SHARP
   HEALTHCARE, INTERNIST
7  LABORATORY and SCRIPPS HEALTH

8

9              **UNITED STATES DISTRICT COURT**

10            **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 SHARP HEALTHCARE; INTERNIST        CASE NO. 08-CV-0170 W POR
   LABORATORY and SCRIPPS
13 HEALTH,                           **PLAINTIFFS' OPPOSITION TO**
                                     **DEFENDANT'S MOTION TO**
14            Plaintiffs,            **DISMISS ON GROUNDS OF**
                                     **MOOTNESS, DISSOLVE THE**
15    vs.                           **PRELIMINARY INJUNCTION,**
                                     **AND VACATE THE COURT'S**
16 MICHAEL LEAVITT, SECRETARY        **INTERLOCUTORY OPINIONS;**
   OF THE DEPARTMENT OF              **DECLARATION OF JORDAN B.**
17 HEALTH AND HUMAN SERVICES,        **KEVILLE IN SUPPORT THEREOF**

18            Defendant.             Date:  Sept. 22, 2008
                                     Time:  10:00 a.m.
19                                   Crtrm.: 7

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## <u>TABLE OF CONTENTS</u>                                    <u>Page</u>

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................ 2

III.  ARGUMENT ................................................................................ 4

   A.    This Case is Not Moot............................................................ 5

        1.    The Secretary's Collection of the Bid Information Was
              Unlawful .......................................................................... 6

        2.    Plaintiffs Cannot Obtain Full Relief In this Case Unless
              the Secretary's Retention of the Bid Applications is
              Addressed........................................................................ 9

   B.    Vacatur of the Court's Prior Orders is Not Appropriate........................ 11

IV.   CONCLUSION ............................................................................ 15

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL. (310) 551-8111 • FAX. (310) 551-8181

1052545.2

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF AUTHORITIES

Page

### Federal Cases

*Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*,
  97 F.3d 492 (11th Cir. 1996) ................................................................ 8

*American Bankers Association v. Lockyear*,
  239 F. Supp. 2d 1000 (E.D. Cal. 2002) ............................................. 11

*American Games, Inc. v. Trade Products, Inc.*,
  142 F.3d 1166 (9th Cir. 1998) ........................................................... 14

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1988) ........................................................... 11

*Chemical Manufacturers Association v. United States Evt'l Protection Agency*,
  859 F.2d 977 (D.C. Cir. 1988) ............................................................. 5

*Church of Scientology of California v. United States*,
  506 U.S. 9, 113 S. Ct. 447, 121 L. Ed. 2d 313 (1992) ................... 6, 7, 8, 9

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
  92 F.3d 1486 (9th Cir. 1996) ............................................................. 11

*Forest Serv. Employees for Environmental Ethics v. U.S. Forest Service*,
  408 F. Supp. 2d 916 (N.D. Cal. 2006) ............................................... 14

*Jacobus v. Alaska*,
  338 F.3d 1095 (9th Cir. 2003) ............................................................. 5

*Mahoney v. Babbitt*,
  113 F.3d 219 (D.C. Cir. 1997) ................................................. 13, 14, 15

*Ocean Conservancy v. National Marine Fisheries Service*,
  416 F. Supp. 2d 972 (D. Hawaii 2006) ............................................. 12

*Smith v. University of Washington Law School*,
  233 F.3d 1188 (9th Cir. 2000) ............................................................. 5

*Southern Pacific Transportation Co. v. Public Utility Commission of the State of Oregon*,
  9 F.3d 807 (9th Cir. 1993) ................................................................... 5

*Tembec, Inc. v. United States*,
  475 F. Supp. 2d 1393 (Ct. Int'l Trade 2007) .................................... 11

*U.S. Bancorp v. Bonner Mall Partnership*,
  513 U.S. 18, 115 S. Ct. 386, 130 L. Ed. 2d 233 (1994) .................... 12

*United States v. American Target Advertising, Inc.*,
  257 F.3d 348 (4th Cir. 2001) ............................................................... 8

*Valero Terrestrial Corp. v. Paige*,
  211 F.3d 112 (4th Cir. 2000) ............................................................. 14

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA, 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF AUTHORITIES <span style="float:right">Page</span>

### Public Laws

Pub. L. 110-275, § 145, 122 Stat. 2494 (2008) ............................................................4

### Publications

Wright & Miller, *13 Federal Practice & Procedure* § 3533.2, n. 66 .........................8

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.    **INTRODUCTION**

In moving to dismiss the Plaintiffs' lawsuit in this case on mootness grounds, Defendant, the Secretary of the United States Department of Health and Human Services ("Secretary"), fails to present the Court with a complete and accurate picture of the current state of the proceedings.  While Congress has indeed intervened since this Court issued a preliminary injunction and statutorily eliminated the Medicare demonstration project that is at the heart of this case, the Secretary neglects to mention in his Motion to Dismiss ("Motion") that, due to his own intransigence, there is a single issue arising from the demonstration project that remains very much in dispute between the parties.

The Secretary continues to steadfastly refuse to either return, or agree to limit his use of, the information contained in the bid applications submitted by the clinical laboratories that were subject to the now aborted demonstration project.  The bid applications included data of a highly confidential and/or proprietary nature that is of considerable value to the Plaintiffs and other laboratories that submitted bids.  In light of the Court's rulings in this case to date, Plaintiffs are likely to succeed on the merits of their claim that the Secretary was without authority to collect the bid applications in the first place.  Accordingly, Plaintiffs maintain that the bid applications must be returned to their rightful owners or, at a minimum, the Secretary should be permanently enjoined from using the information contained therein.  Since the Secretary will not return the information or assent to not using it voluntarily, Plaintiffs continue to require the assistance of the Court.  Therefore, this case is not moot.

By asking the Court to dismiss Plaintiffs' case, dissolve the preliminary injunction currently in place and to vacate all prior rulings in the matter (that are unfavorable to him), the Secretary is attempting to put himself in the position he would have occupied if this litigation never happened.  As long as the Secretary holds the bid applications, free of any restrictions on how he might use the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  information contained therein, the parties cannot return to anything close to the

2  *status quo ante* and Plaintiffs will be deprived of the complete relief to which they

3  are entitled.

4  **II.    BACKGROUND**

5      The background the Secretary lays out for his Motion is more or less accurate,

6  but both omits and underemphasizes a few key points.  Accordingly, Plaintiffs will

7  briefly recite the relevant history of this dispute.  Plaintiffs filed suit on January 29,

8  2008, more than two weeks prior to the date bid applications were to be submitted

9  under the demonstration project.  The Plaintiffs' Complaint sets forth several causes

10  of action against the Secretary related to the development and implementation of the

11  demonstration project.  The Complaint seeks prospective and injunctive relief

12  barring the Secretary from implementing the demonstration project, including the

13  submission of bids and "such other and further relief as the Court deems necessary

14  and appropriate."  *See* Complaint at 21 – 22 (Docket ("Dckt") No. 1).

15      Less than a week after the Complaint was filed and still well in advance of the

16  February 15, 2008 bid submission date, Plaintiffs applied to the Court for a

17  temporary restraining order ("TRO") to stop the Secretary from implementing the

18  demonstration project.  The application for TRO specifically requested that the Court

19  prohibit the Secretary from carrying out the demonstration project, including

20  collecting bids from impacted laboratories.  (Dckt. No. 5).  By order dated February

21  14, 2008, the Court denied the Plaintiffs' TRO application based mainly on concerns

22  about its own jurisdiction over the case, which were fueled by then yet to be rebutted

23  assertions from the Secretary that administrative remedies would be available to

24  laboratories aggrieved by the demonstration project.  *See* Order (1) Denying Motion

25  for Temporary Restraining Order and (2) to Show Cause Why the Case Should Not

26  be Dismissed at 6 [hereinafter "TRO Order"] (Dckt. No. 13).  These representations

27  were shown upon further briefing to be baseless and expressly contradicted by

28  documents generated by the Secretary and his agents.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    As part of the TRO Order, the Court directed the Plaintiffs to submit a brief

2  addressing three questions related to the Court's jurisdiction and the justiciability of

3  the dispute. *See* TRO Order at 7. The Plaintiffs complied with the Court's order and

4  filed the required brief on February 28, 2008.

5    On March 10, 2008, while the Court's ruling on the jurisdictional issues was

6  pending, the Plaintiffs filed a Motion for Preliminary Injunction to stop the

7  Secretary's continued implementation of the demonstration project. Since bid

8  applications already had been submitted, the Plaintiffs' injunction request asked

9  specifically for an order from the Court requiring the Secretary to return the bid

10  applications to the laboratories who submitted them. *See* Notice of Motion and

11  Motion for Preliminary Injunction ("Docket ("Dckt") No. 15).

12    As explained in the Secretary's Motion, the Court issued two separate

13  opinions related to the Plaintiffs' injunction request. On April 4, 2008, the Court

14  issued an order finding that it had jurisdiction over the Plaintiffs' claims (Dckt. No.

15  23). Then, on April 8, 2008, the Court issued an order granting the Plaintiffs'

16  request for a preliminary injunction. (Dckt. No. 25). The order granting the

17  preliminary injunction found that the Plaintiffs had adequately shown that they were

18  likely to succeed on the merits of several of their claims, including their assertion

19  that the entire demonstration project was invalid due to the Secretary's failure to

20  comply with the procedural mandates of the Administrative Procedure Act ("APA"),

21  and that the Plaintiffs would endure irreparable harm if the demonstration project

22  was not enjoined. As part of the order, the Court expressly precluded the Secretary

23  from "further disclosing any information included in the bid applications submitted

24  in connection with" the demonstration project. *See* Order Granting Motion for

25  Preliminary Injunction ("PI Order") at 19.

26    The Secretary reports that he complied with the Court's order and did "halt

27  implementation" of the demonstration project, such that "the winning bidders were

28  never announced, and payments were never made under competitively-set rates in

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  the demonstration project area." *See* Motion at 2.  One thing that also "never"

2  happened, but that is not mentioned in the Secretary's Motion, is the return of the bid

3  applications to the laboratories who submitted them.

4      As pointed out by the Secretary in his Motion, on July 15, 2008, Congress

5  passed the Medicare Improvements for Patients and Providers Act of 2008

6  ("MIPPA"), Pub. L. 110-275, § 145, 122 Stat. 2494 (2008).  This law repealed the

7  original statutory authority for the demonstration project.  Consequently, the

8  Secretary was forced to permanently cease all plans to further implement the

9  demonstration project.

10      Subsequent to the repeal of the demonstration project statute, the Plaintiffs and

11  the Secretary communicated regarding the continuation of the present lawsuit.  The

12  Plaintiffs indicated that they would be willing to voluntarily dismiss the case and

13  agree to the Court vacating its orders on the preliminary injunction if the Secretary

14  would stipulate not to use the information contained in the bid applications submitted

15  in connection with the demonstration project for any purpose, including setting

16  Medicare reimbursement rates for laboratory services.  *See* Declaration of Jordan B.

17  Keville ("Keville Decl.") ¶ 3.  The Secretary would not agree to these terms and

18  instead offered only not to disclose proprietary information that identifies individual

19  bidders (which he is obligated to do in any event under certain federal laws).  Keville

20  Decl. ¶ 4.  When the Plaintiffs refused to alter their position on the use of the bid

21  information, the Secretary broke off the dialogue and filed the instant Motion.

22  Keville Decl. ¶ 5.

23  **III.    ARGUMENT**

24      The facts set forth above make plain that there remains a live controversy in

25  this case.  Namely, whether the Secretary is entitled to retain, without limitation,

26  confidential information that he never had the right to collect in the first place, as

27  claimed in Plaintiffs' Complaint.  As discussed below, case law establishes that, so

28  long as a single live issue remains in a case, it cannot be dismissed as moot.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    A.    **This Case is Not Moot**

2        The Secretary bears a "heavy" burden in seeking to have the Plaintiffs' lawsuit

3    dismissed on mootness grounds. *See Smith v. University of Washington Law School*,

4    233 F.3d 1188, 1194 (9th Cir. 2000) (". . . when a party asserts that a case has

5    become moot, '[t]he burden of demonstrating mootness is a heavy one'") (internal

6    citations omitted); *see also Jacobus v. Alaska*, 338 F.3d 1095, 1102 (9th Cir. 2003).

7    Dismissal of a case due to mootness is **only** justified if it is "absolutely clear that the

8    litigant no longer has any need of the judicial protection it sought." *See Jacobus*,

9    338 F.3d at 1103.  Where only some issues in a case become moot, the remaining

10   live issues supply the case and controversy sufficient to meet the requirements of

11   Article III of the Constitution. *See Southern Pacific Transportation Co. v. Public*

12   *Utility Comm'n of the State of Oregon*, 9 F.3d 807, 810 (9th Cir. 1993).  It is

13   immaterial that the mooted claim is bigger in magnitude than the remaining claims.

14   *See Chemical Manufacturers Ass'n v. United States Evt'l Protection Agency*, 859

15   F.2d 977, 982 (D.C. Cir. 1988) (". . . a case is not moot if some stake in the outcome

16   remains, notwithstanding the size of the dispute.").

17       Contrary to the Secretary's representations in his motion, even the repeal of a

18   statute that is subject to challenge in a particular lawsuit does not necessarily render

19   the whole case moot. *See* Motion at 3 -5.  The Ninth Circuit has decreed that, in

20   cases involving the amendment or repeal of a statute, "mootness . . . is not a

21   jurisdictional issue; rather, we may continue to exercise authority over a purportedly

22   moot case where the balance of interests favors such continued authority." *See*

23   *Jacobus*, 338 F.3d at 1103.  Further, the repeal of a statute does not make an issue

24   moot if there "are present effects that are legally significant." *See id*.  Rather, the

25   case is only moot if the repeal of the statute "completely and irrevocably" eradicates

26   the effects of the alleged violation." *See Smith v. University of Washington*, 233

27   F.3d 1188, 1194 (9th Cir. 1994).  Here, because the Secretary retains the bid

28   applications that were submitted by laboratories pursuant to the demonstration

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   project, the repeal of the statute creating the demonstration project does not moot the

2   entire case.

3          1.    The Secretary's Collection of the Bid Information Was Unlawful

4          The Secretary's retention of the demonstration project bid information is

5   legally significant.  As mentioned above, and as explained in the documents

6   submitted in support of the Plaintiffs' preliminary injunction request, demonstration

7   project bidders had to provide the Secretary with several categories of sensitive

8   information.  For example, the application required bidders to list bank accounts and

9   lines of credit, provide audited financial statements and credit ratings, and to disclose

10  any adverse legal actions taken against them.  *See* Plaintiffs' Memorandum of Points

11  and Authorities in Support of Motion for Preliminary Injunction, Exh. A at 35 – 37

12  (Dckt. No. 15).  People and entities have a constitutional right to maintain the

13  privacy of this type of information.  *See Church of Scientology of California v.*

14  *United States*, 506 U.S. 9, 13, 113 S.Ct. 447, 450, 121 L.Ed.2d 313 (1992).  Further,

15  the actual bid prices submitted with the applications have proprietary value to the

16  applicants and could bestow an advantage on competitors if disclosed.

17         The Secretary's failure to comply with federal law when developing and

18  rolling out the demonstration project renders his initial collection of the bid

19  information unlawful.  For example, the Plaintiffs contend that the demonstration

20  project was invalid because the Secretary did not adopt the controlling policies,

21  including the elements of the bid application, through a public and notice and

22  comment process, as required under the APA.  The Court already has determined

23  that the Plaintiffs have a substantial likelihood of prevailing on their procedural APA

24  claim.  *See* PI Order at 11 – 13.  Had the Secretary actually engaged in the required

25  rulemaking, the bid applications for the demonstration project may have changed

26  dramatically in terms of the information laboratories were required to provide.

27         The Court also determined that there was merit to the Plaintiffs' claim that the

28  Secretary failed to exclude from the demonstration project all laboratories that have a

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   "face-to-face" encounter with patients, as was required by the now-repealed

2   demonstration project statute. *See* PI Order at 15 – 16. This means that the

3   Secretary collected bid applications from laboratories that never should have been

4   required to submit them, including at least some of the Plaintiffs.

5        Finally, the Court recognized the validity of the Plaintiffs' claim that the

6   Secretary violated the terms of the demonstration project statute, which extends only

7   to laboratory tests, by requiring providers to submit bids for the collection and

8   handling of laboratory specimens. *See id.* at 17 – 19. Again, this means that the

9   Secretary now has in his possession information that he never was authorized to

10  collect in the first place.

11       In light of the foregoing, Congress' repeal of the demonstration project has not

12  "completely and irrevocably" eradicated the effects of the Secretary's various legal

13  violations. The Secretary retains confidential information that he never was

14  authorized to collect at all, and certainly was not authorized to collect from certain

15  laboratories and with respect to certain services. The Secretary's **mere possession** of

16  this information is injurious to the Plaintiffs (and other laboratories) and must be

17  redressed. The proper remedy is for this Court to either order the Secretary to return

18  the bid applications or to preclude him from using the information contained therein

19  for any purpose (or both, should the Court deem such relief appropriate).

20       Due to the unique nature of the demonstration project, this is a case of first

21  impression. However, the issue that is presently before the Court is not completely

22  without precedent. Courts have routinely considered the continuing viability of a

23  party's claim that a government agency lacked the authority to compel the party to

24  produce documents or materials **after** the materials already were disclosed. The

25  seminal case in this area is *Church of Scientology, supra.* In that case, the Church of

26  Scientology contested an Internal Revenue Service ("IRS") summons requiring a

27  California court clerk to turn over tapes with recordings of conversations between

28  Church officials and their attorneys. *See Church of Scientology*, 506 U.S. at 11. By

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  the time the matter reached the United States Supreme Court, the tapes had been

2  turned over to the IRS, so the United States argued that the matter was moot. *See id.*

3  at 12.  Among other things, the United States claimed that, because there was

4  nothing the court could do to withdraw all knowledge and information that IRS

5  agents may have already gleaned from the tapes, the court could not fashion any

6  meaningful relief in the case for the Church.

7      The Supreme Court held otherwise, ruling that while the exact *status quo ante*

8  could not be recaptured, relief was not completely unavailable to the Church:

9      Taxpayers have an obvious possessory interest in their records.  When
   the Government has obtained such materials as a result of an unlawful
10  summons, that interest is violated and a court can effectuate relief by
   ordering the Government to return the records.  Moreover, even if the
11  Government retains only copies of the disputed materials, a tax payer
   still suffers injury by the Government's continued possession of those
12  materials, namely the affront to the taxpayer's privacy.  A person's
   interest in maintaining the privacy of his 'papers and effects' is of
13  sufficient importance to merit constitutional protection . . . Even though
   it is now too late to prevent, or to provide a fully satisfactory remedy
14  for, the invasion of privacy that occurred . . . a court does have the
   power to effectuate a partial remedy by ordering the Government to
15  destroy or return any an all copies it may have in its possession.  The
   availability of this possible remedy is sufficient to prevent this case
16  from being moot.

17  *Id.* at 13.

18      The Supreme Court's reasoning in *Church of Scientology* has been applied by

19  subsequent courts in a number of contexts involving different types of agency

20  actions and different types of records.  *See, e.g. United States v. American Target*

21  *Advertising, Inc.*, 257 F.3d 348, 350 n. 1 (4th Cir. 2001) (challenge to U.S. Postal

22  Service subpoena not mooted by fact party had already produced the requested

23  records); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental*

24  *Ctr.*, 97 F.3d 492, 496 (11th Cir. 1996) (issue of whether agency had statutory

25  authority to require medical records to be turned over was not mooted by production

26  of the documents because the court still could fashion a remedy by ordering the

27  records returned); *see also* Wright & Miller, 13 **Federal Practice & Procedure**

28  § 3533.2, n. 66 (citing numerous cases in which challenges to government or agency

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1  compelled document productions were found not moot despite previous

2  relinquishment of the materials).  Collectively, these cases establish that if the

3  government or one of its agencies obtains records in an unauthorized or otherwise

4  unlawful manner, the owner of those records is entitled to their return and the case is

5  not moot so long as such relief is appropriate and available.

6       It makes sense to extend the reasoning announced in *Church of Scientology* to

7  the present case.  Here, under the terms of the demonstration project, the Plaintiffs

8  and other laboratories had to submit bid applications or face the sanction of

9  automatically losing the right to bill Medicare for covered services furnished in the

10 demonstration project area.  In other words, as in the cases discussed above, the

11 laboratories were effectively compelled to turn over to the Secretary the information

12 required by the bid applications.  As Plaintiffs' Complaint make plain, the Secretary

13 was without authority to collect that bid information, yet he still has it in his

14 possession.  Since the Court can fashion meaningful relief in this case by ordering

15 the Secretary to return the bid applications or restricting the Secretary's use of any

16 information contained therein, the case is not moot.

17       2.   <u>Plaintiffs Cannot Obtain Full Relief In this Case Unless the</u>

18            <u>Secretary's Retention of the Bid Applications is Addressed</u>

19       So long as the Secretary holds on to the bid information, without restriction on

20 how he may use it, the Plaintiffs cannot obtain meaningful relief in this case.  One of

21 the Plaintiffs' main objectives in initiating this lawsuit was keeping the bid

22 information out of the Secretary's hands.  That is why the lawsuit was filed and a

23 TRO was requested **before** bid applications were due.  When the Plaintiffs were

24 unable to avoid submitting the bid applications after the TRO was denied, they made

25 sure that their requests for a preliminary injunction included a directive that the

26 Secretary not be permitted to use the information in the bid applications for any

27 purpose, including setting Medicare reimbursement rates for laboratory services.

28       Indeed, the Plaintiffs had, and continue to have, reason to fear the Secretary

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  planned to use the bid information for rate-setting purposes because one of the

2  announced purposes of the demonstration project was to determine whether

3  competitive bidding could be used as a means of furnishing laboratory services at

4  prices below the current Medicare fee schedule amounts.  *See* Complaint, Exh. A

5  (Dckt. No. 1).  Stated another way, why would the Secretary be so obstinately

6  against returning the bid materials unless he planned to use them in some way?

7  Nevertheless, for reasons explained above, it must be stressed that the Secretary's

8  acquisition of the bid material was contrary to law, independent of what he might or

9  might not do with the bid applications and the information they contain.  Hence,

10  Plaintiffs' claims will remain live so long as the Secretary retains the bid

11  applications.

12         The Plaintiffs maintain that it would be inappropriate and unreasonable for the

13  Secretary to set Medicare payment rates based on a flawed bidding system that was

14  not fully vetted through a public comment process.  Yet, as long as the Secretary

15  retains the bid information, without any restrictions on how he can use it, he still can

16  attempt to do exactly that.  If the Secretary can go through the backdoor and do

17  exactly what the Plaintiffs were trying to prevent by challenging the demonstration

18  project, this entire lawsuit would have been for naught.  Accordingly, the only way

19  that the Plaintiffs can obtain the complete relief to which they are entitled is for this

20  Court to either order the Secretary to return all bid applications or to enjoin the

21  Secretary from using the information contained in the bid applications for any

22  purpose, including setting Medicare laboratory payment rates.[1]

23  _____

24  [1] Plaintiffs believe that their Complaint as currently worded encompasses this request

25  for relief.  Again, the Complaint challenges all aspects of the demonstration project,
   asks for the Secretary to be enjoined from implementing any aspect of the project

26  and also seeks any other relief that the Court deems "necessary and appropriate."

27  However, assuming the Court believes that the issue of the Secretary's retention of

28  the bid information is not adequately addressed by the Complaint as it stands,
   (footnote continued)

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   As indicated above, the Plaintiffs are requesting that the Court issue an order

2   regarding all bid applications submitted to the Secretary as part of the demonstration

3   project, not just their own.  The Court has the authority to issue such broad relief.  As

4   the Ninth Circuit has explained, "an injunction is not made over-broad by extending

5   benefit or protection to persons other than prevailing parties in the lawsuit – even if it

6   is not a class action – if such breadth is necessary to give prevailing parties the relief

7   to which they are entitled."  *See Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir.

8   1988) (emphasis omitted); *see also Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92

9   F.3d 1486, 1501 – 1502 (9th Cir. 1996); *American Bankers Ass'n v. Lockyear*, 239 F.

10  Supp.2d 1000, 1021(E.D. Cal. 2002).  In this case, if **all** bid applications are not

11  returned or the Secretary is not restrained with respect to all information contained in

12  the applications, the Plaintiffs will not be adequately protected.  The Secretary could

13  still use the information contained in the bid applications for a purpose that would

14  impact the Plaintiffs, e.g. lowering Medicare payment rates for laboratory services, if

15  only the Plaintiffs' bid applications are returned.  Accordingly, the only way to grant

16  the Plaintiffs the "relief to which they are entitled" is for the Court to broadly restrict

17  the Secretary's use of the bid application information he currently has in his

18  possession.

19   **B.    Vacatur of the Court's Prior Orders is Not Appropriate**

20  The Secretary's request that the Court vacate its two orders that are favorable

21  to the Plaintiffs (notably, the Secretary does not request vacatur of the Court's TRO

22  Order) is based entirely on the premise that the case is moot.  *See* Motion at 5 – 8.

23  As explained in detail above, this case is not moot.  Therefore, vacatur of the Court's

24  prior orders is not appropriate.  *See Tembec, Inc. v. United States*, 475 F. Supp.2d

25  1393, 1396 (Ct. Int'l Trade 2007) ("Based on our conclusion that the matter was not

26  ————————————

27  Plaintiffs could amend the Complaint to add a specific claim related to the
    Secretary's wrongful and unauthorized retention of the bid information.
28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  moot . . . we deny both the Defendant's motion to dismiss and its motion . . . to

2  vacate the court's decision . . ."); *see also Ocean Conservancy v. Nat'l Marine*

3  *Fisheries Service*, 416 F. Supp.2d 972, 979 (D. Hawaii 2006) (citing Wright &

4  Miller for the proposition that, when a case remains alive in district court, vacatur of

5  preliminary injunction order is not appropriate).

6        Further, even if the case were moot because of the statutory elimination of the

7  demonstration project, it does not necessarily follow that the Court's prior orders

8  must be vacated. Vacatur is not automatic when a case has become moot; it is an

9  equitable remedy that must be exercised in the manner "most consonant to justice"

10 considering "the nature and character of the conditions which have caused the case to

11 become moot." *See U.S. Bancorp v. Bonner Mall Partnership*, 513 U.S. 18, 24, 115

12 S.Ct. 386, 130 L.Ed.2d 233 (1994). It is the burden of the party seeking relief from a

13 judgment or order to demonstrate, "equitable entitlement to the **extraordinary**

14 remedy of vacatur." *Id.* at 26 (emphasis added). The Secretary is correct that some

15 courts have considered the repeal of a statute and consequent mooting of a case an

16 equitable basis for vacating prior orders. *See* Motion at 5 – 8. However, the

17 Secretary has once again omitted important facts that make this case different from

18 those he relies upon and that make the balance of the equities tip against vacatur.

19       The decisions holding that vacatur is appropriate in cases that are mooted by

20 "happenstance" are premised on the notion that some supervening event deprived the

21 party seeking vacatur of the opportunity to challenge the ruling in question. *See id.*

22 at 25 and cases cited thereat. Here, the facts indicate that the Secretary had no

23 intention of challenging the Court's orders at any time, whether or not the

24 demonstration project statute was repealed. The Secretary could have appealed the

25 Court's order granting a preliminary injunction in this case and elected not to.

26 Moreover, the Secretary cannot claim that his decision not to appeal the order was

27 driven by the legislative elimination of the demonstration project because the

28 Secretary's appeal deadline (June 8, 2008) lapsed more than one month **before**

1052545.2

12

08-CV-0170 W POR

1  Congress repealed the demonstration project statute (July 15, 2008).  For the

2  Secretary now to suggest that he did not have an opportunity to contest the Court's

3  preliminary injunction order because of Congress' action on the demonstration

4  project is inaccurate and misleading.  Hence, the Secretary should be denied the

5  equitable remedy of vacatur.

6      The decision of *Mahoney v. Babbitt*, 113 F.3d 219 (D.C. Cir. 1997) is squarely

7  on point here.  In *Mahoney*, a preliminary injunction was issued against the United

8  States Department of the Interior, National Park Service ("NPS") precluding the NPS

9  from arresting the plaintiff and others for demonstrating in front of the White House

10  during an inaugural parade for President Clinton.  *See id.* at 220 – 221.  The NPS did

11  not attempt to challenge the injunction ruling, and the parade happened as scheduled,

12  with the injunction in effect.  *See id.*  Thereafter, the NPS returned to court seeking a

13  rehearing and a vacatur of the injunction order on, among other grounds, mootness.

14  The Court of Appeals for the District of Columbia Circuit rejected the mootness

15  argument and denied the request for vacatur.

16      The *Mahoney* court reasoned that, because the NPS elected not to seek

17  immediate relief from the injunction order, it forfeited its right to vacatur:

18      [The NPS] could have addressed the Circuit Justice for a stay.  They
        chose not to do so.  Thus, '[t]his controversy did not become moot due
19      to circumstances unattributable to any of the parties.'  The controversy
        ended when the losing party . . . declined to pursue its appeal.
20

21  *Id.* at 222.  The *Mahoney* court then went on to offer several policy reasons in

22  support of its decision.  In particular, the court noted that, "there is no particular

23  reason to assume that a decision, later mooted, is any less valid as precedent than an

24  other opinion of a court" and that "the precedential power of an opinion is a reason

25  arguing against vacatur."  *See id.* at 222 - 223.  The court commented that precedents

26  are valuable to the legal community as a whole and should only be vacated when to

27  do so would serve the public interest.  *See id.*

28      In addition, the *Mahoney* court suggested that granting vacatur in the case

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  could open the door to manipulation of the judicial system. Specifically, the court

2  commented that:

> 3  If government could by the expedient, of merely not challenging an
> adverse decision, cause its vacatur, the judicial system could seldom
> 4  establish precedent governing future cases . . .

5  *Id.* at 223. For all these reasons, the court concluded that vacatur of the injunction

6  order was not appropriate, notwithstanding that the dispute in the case clearly was

7  moot.

8      The reasoning expressed in *Mahoney* applies here. The Secretary could have

9  appealed the Court's ruling on the Plaintiffs' preliminary injunction motion. He did

10  not. Accordingly, the Secretary lost his ability "to seek review of the Court's

11  decisions on appeal" because of his own inaction and not because Congress changed

12  the law a month **after** the Secretary's time to appeal the preliminary injunction

13  expired. *See* Motion at 5. Therefore, like the NPS in *Mahoney*, the Secretary should

14  be deemed to have forfeited his right to vacatur.[2]

15      Further, contrary to the Secretary's suggestions, the public interest does not

16  weigh in favor of vacatur here. The Court's prior orders address important issues

17  that are likely to come up again, albeit probably not in the exact same context.

18  Among other things, the Court's orders establish that there must be an actual, viable

19  administrative forum for a particular dispute in order to render court review

20  unavailable and that the procedural mandates of the APA are of critical importance

---

22  [2] The cases that the Secretary relies upon to persuade the Court that vacatur is
23  equitable in this case are distinguishable. In *Forest Serv. Employees for Envt'l
Ethics v. U.S. Forest Service*, 408 F. Supp.2d 916 (N.D. Cal. 2006); *Valero
24  Terrestrial Corp. v. Paige*, 211 F.3d 112 (4th Cir. 2000) and *American Games, Inc.
v. Trade Products, Inc.*, 142 F.3d 1166 (9th Cir. 1998) vacatur was granted primarily
25  because the cases fell either squarely within the rule for decisions mooted by
26  "happenstance" or very close to it. For the reasons explained above, the Secretary
should not be permitted to invoke the "happenstance" rule in this case because of his
27  failure to appeal the Court's preliminary injunction order.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 and are not to be simply shrugged off by agencies. The public has an interest in

2 ensuring that agencies comply with the law and respect court jurisdiction and

3 therefore also have an interest in seeing that the Court's orders stand. To paraphrase

4 the *Mahoney* court, to the extent the Court's orders set precedent, they are valuable

5 to the legal community as a whole – whether or not the Secretary agrees with them.[3]

6     To summarize, the Court should deny the Secretary's request for vacatur

7 because this case is not moot. However, even if the Court decides the case is moot,

8 vacatur still is not justified because the equities weigh in favor of letting the two

9 orders at issue stand.

10 **IV.    CONCLUSION**

11     For the foregoing reasons, the Plaintiffs respectfully request that the Court

12 deny the Secretary's requests that this case be dismissed, that the preliminary

13 injunction be dissolved and that the prior court orders be vacated.

14

15 DATED: September 5, 2008      HOOPER, LUNDY & BOOKMAN, INC.

16

17     By: /s/ _____

18          JORDAN B. KEVILLE
        Attorneys for Plaintiffs SHARP
        HEALTHCARE, INTERNIST

19         LABORATORY and SCRIPPS HEATLH

20

21 _____

22 [3] The Secretary's suggestion that the Court's orders are somehow of less force or

23 validity because they were issued on "an abbreviated time schedule" is erroneous.
*See* Motion at 7. The Plaintiffs' preliminary injunction motion was briefed, heard

24 and decided on the schedule normally prescribed by applicable court rules. Further,

25 as the Secretary had already seen all of the evidence and legal arguments supporting
the Plaintiffs' preliminary injunction request a month before the preliminary

26 injunction motion was even filed in connection with the TRO proceedings, he

27 effectively had much more time to develop a response to the Plaintiffs' motion than
could have been the case.

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

## DECLARATION OF JORDAN B. KEVILLE

I, JORDAN B. KEVILLE, declare as follows:

1.    I am an attorney duly licensed to practice law in the State of California. I am an attorney with the law firm of Hooper, Lundy & Bookman, Inc., counsel of record for Plaintiffs herein.  The facts stated herein are personally known to me, and if called as a witness I could and would competently testify to them.

2.    After the United States Congress amended the Medicare Act to remove the statutory authority for the creation of a demonstration project for clinical laboratory ("demonstration project") services on July 15, 2008, our firm began communicating with counsel for the Secretary of the United States Department of Health and Human Services ("Secretary") about the potential disposition of the Plaintiffs' lawsuit challenging the demonstration project.

3.    . Counsel for the Secretary inquired as to whether, in light of the legislative elimination of the demonstration project, the Plaintiffs would be willing to voluntarily dismiss their lawsuit and stipulate to the Court vacating its prior orders in the case, including the order enjoining further implementation of the demonstration project.  After conferring with our clients, we informed the Secretary's counsel that the Plaintiffs would only dismiss the lawsuit and assent to vacatur of the orders if the Secretary entered into a stipulation in which he would agree to disclose, or use for any purpose, including the setting of Medicare reimbursement rates for laboratory services, any information included in, or derived from, the bid applications from clinical laboratories he received in connection with the demonstration project.

4.    Counsel for the Secretary rejected the Plaintiffs suggestion for resolving the case and questioned why the Plaintiffs felt restrictions on the Secretary's internal use of the bid information was necessary.  Eventually, counsel for the Secretary indicated that he only would be willing to stipulate to not disclose any propriety information that identifies individual bidders.  Counsel for the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1    Secretary indicated that, if such assurances were not sufficient for the Plaintiffs, the

2    Secretary would unilaterally move to dismiss the case and have the Court's orders

3    vacated.  The Secretary would not agree to any limitations on his own use of the

4    information contained in the demonstration project bid applications.

5        5.    Shortly thereafter, we notified the Secretary's counsel that the

6    Secretary's offer to not disclose propriety information to outside parties was not

7    sufficient for the Plaintiffs and that Plaintiffs were maintaining their stance that they

8    would only voluntarily dismiss their lawsuit if the Secretary agreed to limit his own

9    use of the bid information. We heard nothing further from the Secretary's counsel

10   until he filed his motion to dismiss the Plaintiffs' lawsuit on mootness grounds on

11   August 8, 2008.

12       I declare under penalty of perjury under the laws of the United States of

13   America that the foregoing is true and correct.

14       Executed on September 5, 2008, at Los Angeles, California.

15

16       /s/

17       JORDAN B. KEVILLE

18

19

20

21

22

23

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL. (310) 551-8111 • FAX: (310) 551-8181

1052545.2

2                                        08-CV-0170 W POR

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3

    I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is

4

1875 Century Park East, Suite 1600, Los Angeles, California 90067-2517.

5

    On September 5, 2008, I served the following document(s) described as

6

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF MOOTNESS, DISSOLVE THE PRELIMINARY INJUNCTION, AND VACATE THE COURT'S INTERLOCUTORY**

7

**OPINIONS; DECLARATION OF JORDAN B. KEVILLE IN SUPPORT THEREOF** on the interested parties in this action by placing true copies thereof

8

enclosed in sealed envelopes addressed as follows:

9

Christopher B. Latham          *Attorneys for Defendant*
Assistant United States Attorney

10

Christopher.Latham@usdoj.gov

11

Sheila Lieber                  *Attorneys for Defendant*
Assistant United States Attorney

12

Sheila.Lieber@usdoj.gov

13

Kathryn L. Wyer          *Attorneys for Defendant*
Assistant United States Attorney

14

Kathryn.Wyer@usdoj.gov

15

**ELECTRONIC MAIL TRANSMISSION:** By electronic mail transmission from

16

pnewler@health-law.com on September 5, 2008, by transmitting a PDF format copy of such document(s) to each such person at the e mail address listed below their

17

address(es). The document(s) was/were transmitted by electronic transmission via USDC-Southern District of California Official Court Electronic Document Filing

18

System.

19

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office

20

of a member of the bar of this Court at whose direction the service was made.

    Executed on September 5, 2008, at Los Angeles, California.

21

22

23

                          /s/
                          Jordan B. Keville

24

25

26

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1052545.2

08-CV-0170 W POR