1  JEFFREY S. BUCHOLTZ
   Assistant Attorney General
2  KAREN P. HEWITT
   United States Attorney
3  SHEILA LIEBER
   Deputy Director
4  KATHRYN L. WYER
   U.S. Department of Justice, Civil Division
5  20 Massachusetts Avenue, N.W.
   Washington, DC  20530
6  Tel.  (202) 616-8475 / Fax (202) 616-8470
   kathryn.wyer@usdoj.gov
7  *Attorneys for Defendant*

8            UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF CALIFORNIA
9

10 _____  )   Case No. 08 CV 0170 W Por
                                     )
11 SHARP HEALTHCARE;                 )
   INTERNIST LABORATORY;             )
12 AND SCRIPPS HEALTH,               )   **REPLY IN SUPPORT OF MOTION
                                     )   TO DISMISS ON GROUNDS OF MOOTNESS,
13         Plaintiffs,               )   DISSOLVE THE PRELIMINARY
                                     )   INJUNCTION, AND VACATE THE COURT'S
14         v.                        )   INTERLOCUTORY OPINIONS**
                                     )
15 MICHAEL LEAVITT, SECRETARY        )   Date: September 22, 2008
   OF THE DEPARTMENT OF              )   Courtroom: 7
16 HEALTH AND HUMAN SERVICES,        )
                                     )   NO ORAL ARGUMENT PURSUANT TO LOCAL
17         Defendant.                )   RULE 7.1(d)
                                     )
18 _____  )   HONORABLE THOMAS J. WHELAN

19

20

21

22

23

24

25

26

27

28 Defendant's Reply in Support of Motion to Dismiss, Dissolve PI, & Vacate Prior Orders        08cv0171 W POR

1

## TABLE OF CONTENTS

2  TABLE OF AUTHORITIES ............................................................................................ii

3  INTRODUCTION .........................................................................................................1

4  ARGUMENT ................................................................................................................2

5  I.    PLAINTIFFS CANNOT AVOID MOOTNESS BY ASSERTING ENTITLEMENT
6        TO RELIEF THAT IS UNAVAILABLE THROUGH THE CLAIMS THEY
       ASSERTED IN THEIR COMPLAINT .................................................................2

7  II.   VACATUR IS APPROPRIATE DESPITE THE SECRETARY'S FAILURE
       TO SEEK INTERLOCUTORY APPEAL OF THE PRELIMINARY
8        INJUNCTION ......................................................................................................9

9  CONCLUSION .............................................................................................................10

10

11

12

## TABLE OF AUTHORITIES

13

## CASES

14  Ala. Disabilities Advocacy Program v. J.S. Tarwater Dev. Dtr., 97 F.3d 492 (11th Cir. 1996) ......3

15  Bennett v. Spear, 520 U.S. 154, 117 S. Ct. 1154 (1997) ..................................................5

16  Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575, 983 F.2d 325 (1st Cir. 1992) ..............9

17  Church of Scientology v. United States, 506 U.S. 9, 113 S. Ct. 447 (1992) ...........................2-3, 3

18  County of Los Angeles v. Shalala, 192 F.3d 1005 (D.C. Cir. 1999) ...................................4

19  Covenant Media of Cal., LLC v. City of Huntington Park, 377 F. Supp. 2d 828 (C.D. Cal. 2005) ....7

20  Dream Palace v. County of Maricopa, 384 F.3d 990 (9th Cir. 2004) ...............................5

21  Garelick v. Sullivan, 987 F.2d 913 (2d Cir. 1993) ..............................................3

22  Golden Gate Restaurant Ass'n v. City & County of San Francisco,
       512 F.3d 1112 (9th Cir. 2008) .................................................7
23

24  Hoa Hong Van v. Barnhart, 483 F.3d 600 (9th Cir. 2007) ....................................9

   In re Pattullo, 271 F.3d 898 (9th 2001) ..........................................5
25

26  Jacobus v. Alaska, 338 F.3d 1095 (9th Cir. 2003) .............................................2

   Mahoney v. Babbitt, 113 F.3d 219 (D.C. Cir. 1997) ...........................................9
27

28

Defendant's Reply in Support of Motion to Dismiss, Dissolve PI, & Vacate Prior Orders          08cv0171 W POR

1  Mich. Ass'n of Indep. Clinical Laboratories v. Shalala, 52 F.3d 1340 (6th Cir. 1994) ..................8

2  Myers v. Sullivan, 916 F.2d 659 (11th Cir. 1990) ...........................................................9

3  Rattlesnake Coalition v. EPA, 509 F.3d 1095 (9th Cir. 2007) .........................................5

4  Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs, 486 F.3d 638 (9th Cir. 2007) .....4

5  St. Michael's Convalescent Hosp. v. State of Cal., 643 F.2d 1369 (9th Cir. 1981) .......................3

6  United States v. Am. Target Advertising, Inc., 257 F.3d 348 (4th Cir. 2001) ............................3, 4

7  United States v. Lahey Clinic Hosp., Inc., 399 F.3d 1 (1st Cir. 2005) ...........................................8

8
## STATUTES
9

10  Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 ........................................................1

11  5 U.S.C. § 706 ...........................................................................................................................4

12  Trade Secrets Act ("TSA"), 18 U.S.C. § 1905 ........................................................................6

13  41 U.S.C. § 423 .........................................................................................................................7

14  42 U.S.C. § 1395w-3 ..............................................................................................................4, 7

15
## REGULATIONS
16
48 C.F.R. § 3.104-4 .....................................................................................................................7

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>INTRODUCTION</u>

2      Despite Congress' repeal of the statutory provision that authorized the Medicare clinical

3  diagnostic laboratory services competitive bidding demonstration project at issue in this case, and

4  the agency's cessation of any plan to implement the project, plaintiffs contest the notion that their

5  challenge to the project's implementation is moot.  The sole concern that plaintiffs raise is that

6  the Secretary, through the Centers for Medicare and Medicaid ("CMS"), retains in his possession

7  the bid applications that plaintiffs and other bidders submitted prior to the project's dissolution.

8  Plaintiffs are misguided in their assertion that the government's "mere possession" of

9  information that was voluntarily submitted, and as to which no restrictions regarding internal use

10  were provided by CMS, constitutes a basis for continuing to litigate their challenge.  Plaintiffs

11  attempt to analogize this situation to cases addressing government-compelled disclosures of

12  information.  However, the analogy must fail.  The disclosures at issue in the cases plaintiffs cite

13  were actual "seizures," subject to challenge as unreasonable under the Fourth Amendment, or

14  otherwise contested through the judicial process when enforced by subpoena or summons.

15      Here, on the other hand, plaintiffs did not assert a direct challenge to the Secretary's

16  acceptance of the information that bidders submitted in their applications, nor could they.

17  Because their claims were asserted under the Administrative Procedure Act ("APA"), 5 U.S.C.

18  §§ 701-706, only final agency action could be challenged, and acceptance of applications does

19  not qualify as a final action.  Moreover, the only remedy that a court may grant under the APA is

20  to set aside the final agency action that was challenged and to remand to the agency for further

21  proceedings in compliance with the law.  The APA does not provide a mechanism for plaintiffs

22  to seek judicially-imposed permanent restrictions on the Secretary's possession or use of bid

23  information.  The only relief that the APA could have provided is now unavailable because the

24  final agency actions that were challenged have already been "set aside," in effect, by Congress'

25  cancellation of the project.  Plaintiffs claims therefore must be dismissed as moot.

26      Plaintiffs also oppose the Secretary's request for vacatur of the Court's interlocutory

27  adverse decisions.  They base their opposition on the fact that the Secretary did not seek

28  immediate appellate review of the Court's issuance of a preliminary injunction, arguing that that

failure constituted a forfeiture of any right to vacatur. Their analysis is flawed, however, because the Secretary's choice not to file an interlocutory appeal did not prevent him from continuing to litigate the case on the merits in this Court and, following final judgment, on appeal from the Court's final decision. Because the Court's interlocutory orders were not final, the issues in this case remained subject to further litigation until Congress cancelled the demonstration project. Plaintiffs acknowledge that courts have regarded such a legislative repeal of underlying statutory authority as equivalent to "happenstance," and have therefore found vacatur appropriate in such circumstances. Plaintiffs offer no legitimate alternative to reaching the same conclusion here.

## ARGUMENT

## I.  PLAINTIFFS CANNOT AVOID MOOTNESS BY ASSERTING ENTITLEMENT TO RELIEF THAT IS UNAVAILABLE THROUGH THE CLAIMS THEY ASSERTED IN THEIR COMPLAINT

Plaintiffs' theory of why their claims are not moot despite Congress' repeal of statutory authorization for the program they challenge is fundamentally flawed. The entire basis for their argument on this point is their assertion that "[t]he Secretary's **mere possession** of [the bid] information [that bidders submitted in their bid applications] is injurious to the Plaintiffs (and other laboratories)." Pl. Opp. at 7. Plaintiffs' use of bold font cannot hide the fact that their brief fails to provide any legitimate rationale for how CMS' mere possession of this information causes them injury, nor have they explained how the claims raised in their Complaint provide a means of seeking redress for this newly-alleged injury.

The authorities that plaintiffs cite in support of their proposition are inapplicable. Plaintiffs first cite Jacobus v. Alaska, 338 F.3d 1095, 1102 (9th Cir. 2003), as holding that mootness after statutory appeal can be avoided if there are "present effects that are legally significant." Pl. Opp. at 5. The "legally significant" effect in Jacobus was the threatened prosecution of the plaintiffs for statutory violations that occurred before the repeal. 338 F.3d at 1104. That, of course, is a far cry from plaintiffs' assertions here regarding the Secretary's retention of bid information, which by itself cannot qualify as "legally significant" at all.

For their contrary position, plaintiffs rely heavily on Church of Scientology v. United

1   States, 506 U.S. 9, 113 S. Ct. 447 (1992), designating it "[t]he seminal case" in support of the

2   idea that the Secretary's possession of their bid information is injurious because it violates their

3   constitutionally-protected right to privacy.  Pl. Opp. at 6, 7.  Their suggestion on this point has no

4   merit.  The constitutional protection recognized in Church of Scientology stems from the Fourth

5   Amendment's prohibition of unreasonable searches and seizures.  See 506 U.S. at 13 & n.5.  The

6   Fourth Amendment was applicable in that case because the information at issue had been

7   "seized" through a summons issued by IRS agents.  See id. at 11.  Here, in contrast, no search or

8   seizure occurred.  Rather, CMS acquired the bid information when plaintiffs voluntarily

9   submitted it in their applications.  Cf. Garelick v. Sullivan, 987 F.2d 913, 917 (2d Cir. 1993)

10  ("All court decisions of which we are aware . . . have . . . recogni[zed] that [providers']

11  participation in Medicare is voluntary.").  As far as defendant has been able to determine, no

12  court has ever held that a federal agency's call for bids and acceptance of bid applications might

13  conceivably constitute a search or seizure within the meaning of the Fourth Amendment.  There

14  is therefore  "no cognizable constitutional right of privacy" implicated here.  Cf. St. Michael's

15  Convalescent Hosp. v. State of Cal., 643 F.2d 1369, 1375 (9th Cir. 1981) (recognizing "no

16  cognizable constitutional right of privacy" was implicated by the government's use or disclosure

17  of Medicare provider cost information).

18          Another important distinction is that Church of Scientology and the other cases cited by

19  plaintiffs all involved direct appeals from government-initiated efforts to compel the production

20  of documents.  See Church of Scientology, 506 U.S. at 10-11 (Church initiated action to contest a

21  state court clerk's compliance with a summons for records issued by the IRS); United States v.

22  Am. Target Advertising, Inc., 257 F.3d 348, 351 (4th Cir. 2001) (appeal from postal inspector's

23  subpoena enforcement action seeking records); Ala. Disabilities Advocacy Program v. J.S.

24  Tarwater Dev. Dtr., 97 F.3d 492, 494-95 (11th Cir. 1996) (appeal from lower court's order

25  compelling defendants to produce records relevant to the investigation of the plaintiff, a

26  watchdog program operating under federal authority).  In these cases, the cause of action asserted

27  and the remedy requested at the outset revolved around whether the production of records could

28  lawfully be compelled.  The mootness question addressed by these courts was simply whether,

1   once the records were produced, the compelled production could continue to be contested.  E.g.,

2   Am. Target Advertising, Inc., 257 F.3d at 350 n.1.  The answer was that, even though full relief,

3   in the form of preventing the compelled production in the first place, could not be granted, partial

4   relief was available in the form of ordering the records' return.  See id.

5        Here, on the other hand, plaintiffs' Complaint does not allege (nor could it) that the

6   Secretary sought to unlawfully compel the information requested in the bid applications, nor that

7   its submission would cause any injury other than the time involved in preparing the applications.

8   In keeping with that distinction, none of the claims set forth in plaintiffs' Complaint provide a

9   basis for demanding prospective restrictions on the Secretary's possession or use of the bid

10  information.  In particular, counts one and two assert causes of action under APA provision §

11  706(2).[1]  The "normal remedy" for such a claim, should a plaintiff prevail, is to "set aside" the

12  final agency action being challenged and to remand to the agency so that it may proceed to act in

13  compliance with law.  Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs, 486 F.3d

14  638, 654-55 (9th Cir. 2007); see also County of Los Angeles v. Shalala, 192 F.3d 1005, 1011

15  (D.C. Cir. 1999) ("[W]hen a court reviewing agency action determines that an agency made an

16  error of law, the court's inquiry is at an end: the case must be remanded to the agency for further

17  action consistent with the corrected legal standards." (internal quotation omitted)).

18       The APA framework simply does not provide a mechanism for plaintiffs to seek a

19  permanent injunction prohibiting the use or requiring the return of bid information, particularly

20

21       [1] This Court has previously recognized that Count Three of plaintiffs' Complaint,
22  asserting a Takings claim with respect to an alleged policy of requiring losing bidders to provide
    services to Medicare beneficiaries without compensation, was unlikely to succeed because "the
23  factual premise underlying [it] no longer exists."  Order of Apr. 8, 2008 (doc. #25), at 17.  This
    count need not be considered in connection with plaintiffs' suggestion that "live" issues remain
24  in this case.  In any event, the relief available for such a claim would have nothing to do with
25  restricting the Secretary's possession or use of bid information.  In regard to Count Four, the
    Complaint characterizes this count as a claim that the Secretary "violated" 42 U.S.C. § 1395w-3,
26  or "exceeded the scope of his authority" under that provision.  Compl. ¶¶ 42-43.  Any relief that
    might be available for this claim, which in any case is limited to bids on specimen collection
27  rather than the entire bid, is also governed by the APA, 5 U.S.C. § 706(2)(C) (allowing courts to
28  set aside final agency action that is "in excess of statutory authority").

1  where the submission of the information was not the "final agency action" that plaintiffs

2  challenged in the first place.  Here, plaintiffs raised challenges to certain rules and statutory

3  interpretations, none of which will ever take effect since Congress canceled the demonstration

4  project.  Specifically, the allegedly-final agency actions that plaintiffs sought to challenge in their

5  Complaint were the Secretary's alleged promulgation of certain rules without notice and

6  comment rulemaking, and the Secretary's alleged implementation of certain aspects of the

7  demonstration project in a manner contrary to what the authorizing statute allowed.  See Compl.

8  ¶¶ 32 (rulemaking challenge); 36 (challenges to various aspects of the bidding process), 42

9  (challenge to the inclusion of laboratory specimen collection as an item for which bidders must

10  submit bids).  Even if plaintiffs prevailed on any of these claims, the result would simply be that

11  the Secretary's corresponding action would be set aside, and the case would be remanded to the

12  agency.  None of plaintiffs' claims provide any basis for compelling the agency to return bid

13  documents or permanently enjoining it from using bid information. Since Congress' cancellation

14  of the demonstration project has in effect permanently "set aside" the actions plaintiffs

15  challenged already, there is no further meaningful relief that is available under the APA for this

16  Court to provide, and the case is therefore moot.  Dream Palace v. County of Maricopa, 384 F.3d

17  990, 1000 (9th Cir. 2004).[2]

18       Plaintiffs suggest that if the Court concludes that their Complaint as written does not

19

20

21  [2]Plaintiffs suggest that the request in their Complaint for "other and further relief as the Court deems necessary and appropriate" encompasses restrictions on the Secretary's use of bid

22  information.  Pl. Opp. at 10 n.1.  However, plaintiffs cannot change the scope of relief available for their claims merely by inserting a broad request for "necessary and appropriate relief."

23  Plaintiffs also express the idea that they are entitled to be returned to the "status quo ante."  Pl. Opp. at 2.  The Ninth Circuit has used this phrase when analyzing whether a case qualifies as

24  moot.  Dream Palace, 384 F.3d at 1000.  However, the notion of returning a party to the "status quo ante," for purposes of a mootness analysis, simply means providing the full relief available

25  under the relevant cause of action.  The fact that the normal remedy for a particular cause of action becomes unavailable because, in effect, it has already been achieved does not expand a

26  court's authority to issue remedies that were never available under that cause of action to begin

27  with.  Cf. In re Pattullo, 271 F.3d 898, 901-02 (9th 2001) ("To have jurisdiction, we must be able

28  to grant effective relief *within the boundaries of the present case* . . . ." (emphasis added)).

1    encompass a request for restrictions on the Secretary's use of the bid documents, plaintiffs could

2    amend their Complaint "to add a specific claim related to the Secretary's wrongful and

3    unauthorized retention of the bid information."  Pl. Opp. at 10-11 n.1.  For the reasons just

4    explained, however, no possible APA claim could be raised that would address this issue.  The

5    Secretary's retention of bid applications does not constitute a "final agency action" because no

6    rights or obligations flow from the mere possession of bid information.  See Rattlesnake

7    Coalition v. EPA, 509 F.3d 1095, 1103 (9th Cir. 2007) ("An agency action is 'final' when (1) the

8    agency reaches the 'consummation' of its decisionmaking process and (2) the action determines

9    the 'rights and obligations' of the parties or is one from which 'legal consequences will flow.'"

10   (quoting Bennett v. Spear, 520 U.S. 154, 177-78, 117 S. Ct. 1154 (1997))).  Even if plaintiffs are

11   correct in their speculation that CMS may use bid information in some way in connection with

12   some as-yet-unidentified decision in the future, which may eventually be subject to challenge

13   under the APA, any such claim is, at this point, unripe, and any injury-in-fact that plaintiffs might

14   suffer from such a use can at this point only be speculative.  Defendant is not aware of any other

15   cause of action that plaintiffs might assert that would entitle them to impose permanent

16   restrictions on CMS' use of the submitted bid information.

17        It should also be pointed out that plaintiffs' characterization of the bid information as

18   "highly confidential and/or proprietary," Pl. Opp. at 1, with the potential to "bestow an advantage

19   on competitors if disclosed," id. at 6 (emphasis added), is immaterial to the issue of whether

20   plaintiffs have a cause of action that would allow them to seek restrictions on the Secretary's use

21   of the information.  As plaintiffs acknowledge, federal law, specifically the Trade Secrets Act

22   ("TSA"), 18 U.S.C. § 1905, already prohibits the government's unauthorized disclosure of

23   confidential business information.  If plaintiffs' characterization of the information is correct,

24   then, it is already shielded from disclosure by the TSA.  Meanwhile, since CMS is not plaintiffs'

25   marketplace competitor, it is difficult to imagine how CMS' mere possession of proprietary

26   information that plaintiffs chose to submit would cause plaintiffs competitive harm.

27        Plaintiffs also point to their request in their motion for a preliminary injunction for

28   restrictions on the Secretary's use of submitted bid information as an indicator that this is a "live"

1    issue in the case.  Pl. Opp. at 9; see Pl. Mot. for Prelimary Injunction, at 2 (doc. #15).  However,

2    unlike the APA's limited remedy of setting aside the final agency action and remand to the

3    agency, there is no statutory limitation on what form a preliminary injunction may take; rather, it

4    may be fashioned in a court's discretion so as to preserve the status quo where the court concludes

5    that doing so is necessary to avoid irreparable injury.  Golden Gate Restaurant Ass'n v. City &

6    County of San Francisco, 512 F.3d 1112, 1116 (9th Cir. 2008).  Of course, once the original

7    claims in a plaintiff's complaint become moot, a court cannot maintain the preliminary injunction

8    in perpetuity but should dissolve it forthwith.  See, e.g., Covenant Media of Cal., LLC v. City of

9    Huntington Park, 377 F. Supp. 2d 828, 842 (C.D. Cal. 2005) (recognizing that once a claim

10   becomes moot due to the repeal of an underlying statute, a plaintiff has no likelihood of success

11   on the merits that would entitle him to a preliminary injunction).  Here, moreover, the injunction

12   issued by this Court did not adopt plaintiffs' requested restriction on the Secretary's use of the

13   information, and instead merely prohibited the Secretary from "[f]urther disclosing any

14   information included in the bid applications."  Order of April 8, 2008, at 19 (doc. #25) (emphasis

15   added).[3]  The preliminary injunction currently in effect therefore does not support the plaintiffs'

16   argument that the Secretary's possession of bid information prevents this case from being moot,

17   and indeed only indicates that this Court has already recognized that the Secretary's mere

18   possession and internal use of bid information pose no legally cognizable harm to plaintiffs.

19        Plaintiffs' asserted concern that the Secretary may somehow "go through the backdoor" by

20   secretly setting Medicare rates for laboratory services based upon the bid information that was

21   submitted has no basis in reality.  Medicare fee schedule amounts for laboratory services are, for

22   the most part, governed by 42 U.S.C. § 1395*l*(h), which sets rates for existing tests at 60% of the

23   

24        [3]As it happens, for as long as bid applications were pending, the Secretary was already
     prevented from disclosing any bid information by the confidentiality provisions of the Federal
25   Acquisition Regulation ("FAR"), 41 U.S.C. § 423(a) (prohibiting pre-award disclosure of bid
     information).  See 42 U.S.C. § 1395w-3(a)(1)(C) (indicating that FAR provisions "relating to
26   confidentiality of information" applied to the competitive bidding processes authorized by this
     provision, including the demonstration project); 48 C.F.R. § 3.104-4(a).  This restriction ended
27   when the demonstration project and associated bidding process were canceled.  41 U.S.C. §
     423(h)(3).  As indicated, any information covered by the TSA remains protected from disclosure.
28

1   carrier-wide prevailing charge, see Mich. Ass'n of Indep. Clinical Laboratories v. Shalala, 52 F.3d

2   1340, 1343 n.1 (6th Cir. 1994), and requires that, before establishing a rate for a new test, the

3   Secretary cite the basis for his proposed rate and accept public comment thereon, see 42 U.S.C.

4   § 1395*l*(h)(8).  The Secretary cannot simply unilaterally set rates at what they would have been

5   had the demonstration project been implemented.  The Secretary can, however, analyze the data

6   submitted in bid applications in order to evaluate and report to Congress what this information

7   reveals about the design of the competitive bidding process and other such matters, and how

8   effective a competitive bidding system might have been, had it been implemented.[4]  Such uses of

9   information, for purposes of analysis and policymaking, are standard practice within an agency,

10  and defendant is unaware of any cause of action available to curtail this activity.  Even assuming

11  *arguendo* that the Secretary might make some use of the bid information in connection with the

12  fee schedule, the only threat this use conceivably poses to plaintiffs is that, in the end, after the

13  required procedures are followed, the fee schedule rates may be lower than they are currently.

14  Plaintiffs have no right to reimbursement rates at a particular level, and they certainly have no

15  right to hide information that they already voluntarily submitted to the Secretary in order to

16  protect their profit margins or interfere with agency deliberations, particularly in light of the

17  longstanding public concern with the clinical laboratory fee schedule.  Cf. United States v. Lahey

18  Clinic Hosp., Inc., 399 F.3d 1, 5 (1st Cir. 2005) (explaining that "Medicare's escalating payments

19  for laboratory services" has been "a source of increasing concern to Congress, the Secretary, and

20  HHS's Office of Inspector General" since the 1980s).

21      Plaintiffs have not attempted to refute defendant's motion to dismiss on any ground other

22  than their assertion that the Secretary possesses and may make some use of bid information.

23  Because their claims do not provide a mechanism for challenging or restricting the Secretary's

24  possession or use of the information, this action should be dismissed as moot for the reasons fully

25  explained in defendant's opening brief.

26

27      [4]Plaintiffs, like all prospective bidders, were specifically informed in the Final Bidder's
    Package that bid information "will be used for both demonstration operations and the
28  demonstration evaluation."  Bidder's Package, at 51 (attached hereto as Exhibit A).

## II.    VACATUR IS APPROPRIATE DESPITE THE SECRETARY'S FAILURE TO SEEK INTERLOCUTORY APPEAL OF THE PRELIMINARY INJUNCTION

The Secretary has asked this Court to vacate its interlocutory adverse decisions on the ground that, because this case is now moot, the litigation process has been cut off before the Secretary had a full opportunity to overturn the Court's decisions on jurisdiction and the merits and ultimately prevail. In response, plaintiffs argue that vacatur is inappropriate in this case because the Secretary failed to seek interlocutory appeal from this Court's grant of a preliminary injunction.  According to plaintiffs, this failure effectively served to forfeit any interest the Secretary might have now in vacating the Court's interlocutory adverse decisions.  The only case plaintiffs cite in support of the idea that a failure to seek <u>interlocutory</u> appeal has this effect, however, is <u>Mahoney v. Babbitt</u>, 113 F.3d 219 (D.C. Cir. 1997), which presents an entirely different situation.  Unlike here, the <u>Mahoney</u> litigation had already reached the appellate stage before it became moot, and the appellate court had issued an emergency order, which the losing party failed to appeal before the demonstration that the order addressed took place.  113 F.3d at 220-21.  In that case, the losing party knew that if it did not immediately seek a stay, the demonstration would occur under the conditions that the court had ordered; by not seeking the stay, it therefore voluntarily forfeited its right to contest the court's decision.

Here, in contrast, the Secretary's failure to seek interlocutory review of this Court's grant of the preliminary injunction did not end his ability to contest the Court's decision.  Rather, if, instead of becoming moot through Congress' cancellation of the demonstration project, the case had proceeded to the merits stage, the parties would have continued to contest the issues, and after final judgment, the nonprevailing party would then have had the opportunity to seek appellate review of the final judgment, including any interim decisions that became final by operation of the merger doctrine.  <u>Hoa Hong Van v. Barnhart</u>, 483 F.3d 600, 610 n.5 (9th Cir. 2007) ("Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order . . . ." (quoting <u>Myers v. Sullivan</u>, 916 F.2d 659, 673 (11th Cir. 1990))); <u>Chaparro-Febus v. Int'l Longshoremen Ass'n, Local 1575</u>, 983 F.2d 325, 331 n.5 (1st Cir. 1992) (recognizing that a district court's grant or

1  denial of a preliminary injunction is merged in the final judgment).  If the Secretary had prevailed

2  at any of these stages, the Court's prior rulings on issues related to jurisdiction or the merits could

3  have been overturned.  The Secretary's decision not to bring an interlocutory appeal was merely a

4  strategic choice in the course of ongoing litigation, and cannot appropriately be viewed as a

5  forfeiture of the right to seek vacatur where, as here, his ability to fully litigate the case on the

6  merits was unexpectedly frustrated while the case was still ongoing in district court.

7      The generalities that plaintiffs cite regarding, for example, the importance of complying

8  with the law, Pl. Opp. at 14-15, do not tip the balance of equities against vacatur in this case.

9  Plaintiffs do not contest that vacatur has commonly been held appropriate where a case is mooted

10 by "happenstance."  Pl. Opp. at 12.  Their only argument, as indicated above, is that the

11 Secretary's failure to seek immediate appellate review of the Court's preliminary injunction order

12 removes this case from that line of authority.  Because, as explained above, plaintiffs' position in

13 that regard is flawed, the Court should follow those cases that have recognized that legislative

14 repeal of legislation underlying a claim is equivalent to "happenstance" and should accordingly

15 conclude that vacatur is appropriate in this case.  See Def.'s Op. Br. at 5-7.

16                                    **CONCLUSION**

17      For the foregoing reasons and those set forth in defendant's opening brief, this Court

18 should dismiss plaintiffs' claims, dissolve the preliminary injunction, and vacate its interlocutory

19 orders of April 4 and April 8, 2008.

20 DATED: September 15, 2008          Respectfully Submitted,
                                      JEFFREY S. BUCHOLTZ
21                                    Assistant Attorney General
                                      KAREN P. HEWITT
22                                    United States Attorney
                                      SHEILA LIEBER
23                                    Deputy Director

24                                    /s/   Kathryn L. Wyer
                                      KATHRYN L. WYER
25                                    U.S. Department of Justice, Civil Division
                                      20 Massachusetts Avenue, N.W.
26                                    Washington, DC  20530
                                      Tel.  (202) 616-8475 / Fax (202) 616-8470
27                                    kathryn.wyer@usdoj.gov
                                      *Attorneys for Defendant*

28

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

_____ )
SHARP HEALTHCARE; INTERNIST )
LABORATORY; AND SCRIPPS )          Case No. 08 CV 0170 W (POR)
HEALTH, )
          )
          Plaintiffs, )
          )
          v. )                     **CERTIFICATE OF SERVICE**
          )
MICHAEL LEAVITT, SECRETARY )
OF THE DEPARTMENT OF )
HEALTH AND HUMAN SERVICES, )
          )
          Defendant. )
_____ )

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

IT IS HEREBY CERTIFIED that:

I, Kathryn L. Wyer, am a citizen of the United States over the age of eighteen years and a resident of the District of Columbia; my business address is 20 Massachusetts Ave., Washington, DC  20530; I am not a party to the above-entitled action.

I have caused service of the following document(s) on the parties indicated below by electronically filing said document(s) with the Clerk of the District Court using its ECF System, which electronically notifies them:

DOCUMENT(S) SERVED:

- Reply in Support of Motion to Dismiss on Grounds of Mootness, Dissolve the Preliminary Injunction, and Vacate the Court's Interlocutory Orders

PARTIES ON WHOM SERVED:

Plaintiffs, by and through their counsel of record, Patric Hooper,

         phooper@health-law.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 15, 2008.

                                        s/ Kathryn L. Wyer
                                        KATHRYN L. WYER