1  PATRIC HOOPER  (State Bar No. 57343)
   JORDAN KEVILLE  (State Bar No. 217868)
2  ABIGAIL WONG  (State Bar No. 245652)
   HOOPER, LUNDY & BOOKMAN, INC.
3  1875 Century Park East, Suite 1600
   Los Angeles, California  90067-2517
4  Telephone: (310) 551-8111
   Facsimile: (310) 551-8181
5  E-Mail:   phooper@health-law.com

6  Attorneys for Plaintiffs Sharp Healthcare,
   Internist Laboratory, Scripps Health,
7  American Association of Bioanalysts and
   American Clinical Laboratory Association

8

9               IN THE UNITED STATES DISTRICT COURT

10         FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  SHARP HEALTHCARE; INTERNIST LABORATORY; SCRIPPS HEALTH; 13  AMERICAN ASSOCIATION OF BIOANALYSTS AND AMERICAN 14  CLINICAL LABORATORY ASSOCIATION | CASE NO. 08-CV-0170 W Por |
| 15       Plaintiffs, | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| 16       vs. | |
| 17  CHARLES JOHNSON, ACTING 18  SECRETARY OF THE DEPARTMENT OF HEALTH AND 19  HUMAN SERVICES, | |
| 20       Defendant. | |

21

22       Sharp HealthCare, Internist Laboratory, Scripps Health, the American

23  Association of Bioanalysts and the American Clinical Laboratory Association,

24  plaintiffs, allege as follows:

25

26                        __INTRODUCTION__

27       1.     The present lawsuit was originally initiated to challenge the manner in

28  which the defendant Secretary of the United States Department of Health and

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   Human Services ("Secretary") was implementing a statutorily mandated competitive

2   bidding demonstration project concerning payment for clinical laboratory services

3   under the Medicare program (hereinafter "demonstration project."). The plaintiffs

4   in the case succeeded in getting an order from this Court enjoining the Secretary

5   from proceeding any further with the demonstration project and, shortly thereafter,

6   Congress repealed the statute that created the demonstration project. Nevertheless,

7   due to the Secretary's intransigence and disregard for the strictures of federal law,

8   the flawed demonstration project still is causing harm to clinical laboratories,

9   including the plaintiffs herein and/or their members.

10       2.      This Court's order enjoining further implementation of the

11  demonstration project came after impacted clinical laboratories already had

12  submitted their bid applications to the Secretary's agents. Those applications

13  contained extensive information about the laboratories submitting them, including

14  information of a confidential and proprietary nature and even personal information

15  about the laboratories' owners and directors. The Secretary represented at all times

16  prior to when the bid applications were submitted that the information contained

17  therein would be used for the purposes of declaring winners under the demonstration

18  project and setting the demonstration project payment rates. However, with the

19  demonstration project statute now repealed, the Secretary nevertheless refuses to

20  return the bid applications to the laboratories that submitted them and, even more

21  troubling, has represented that he intends to use the information set forth in those

22  applications for some yet undisclosed purpose.

23       3.      The Secretary's obstinate refusal to return the bid applications and his

24  unilateral determination that he can use the information contained in those

25  applications despite the fact there no longer is a demonstration project is the reason

26  the plaintiffs in this action continue to require Court intervention. The Secretary's

27  retention and intended use of the bid information violate fundamental principles of

28  federal administrative law and also constitute an unreasonable seizure under the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  Fourth Amendment to the United States Constitution.   Therefore, as explained

2  below, the plaintiffs in this action are seeking an order from this Court to compel the

3  Secretary to return the bid applications and to preclude him from using the

4  information set forth in those applications for any purpose or improperly disclosing

5  the information to any party.

6

7  ## JURISDICTION AND VENUE

8      4.     Under 28 United States Code ("U.S.C.") § 1331, this Court has the

9  authority to resolve the very important questions of federal law raised by this action.

10  The Court also has mandate jurisdiction pursuant to 28 U.S.C. § 1361.

11      5.     Venue lies in this judicial district under 28 U.S.C. § 1391 in that

12  plaintiffs or their members are located and reside within this judicial district and the

13  consequences of defendant's unauthorized and arbitrary activities are occurring

14  within this judicial district.

15

16  ## THE PARTIES

17      6.     Defendant Charles Johnson is the Acting Secretary of the Department

18  of Health and Human Services, the federal agency responsible for administering the

19  Medicare program.   Medicare is the health insurance program for the aged and

20  disabled.  The Secretary administers the Medicare program through the Centers for

21  Medicare and Medicaid Services ("CMS").

22      7.     Plaintiff Internist Laboratory ("Internist'") is an independent clinical

23  laboratory located in Oceanside, California.  Internist is owned and operated by the

24  husband and wife team of Gary and Christine Stevens, with a single location in

25  Oceanside.  The laboratory has only eight full-time employees.  Internist, which has

26  been in operation for 18 years, currently is certified to receive reimbursement for

27  laboratory testing services provided for the benefit of Medicare beneficiaries.

28  Internist submitted a bid application to participate in the demonstration project.

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

8.      Plaintiff Sharp HealthCare ("Sharp") operates an integrated health care delivery system providing health care services in San Diego County to a wide variety of patients, including Medicare beneficiaries, through acute care hospitals, a home health agency, a hospice program, physical rehabilitation facilities, skilled nursing facilities, mental health hospitals, and affiliated medical clinics.  It also owns and operates various clinical laboratories including clinical laboratories that provide services not only to hospital inpatients and outpatients but also to non-hospital patients.  Sharp's clinical laboratories are approved to receive payment for services under the Medicare program.  Sharp also submitted a bid application to participate in the demonstration project.

9.      Plaintiff Scripps Health ("Scripps") is a not-for-profit, community-based health care delivery network in San Diego that includes four acute-care hospitals on five campuses, more than 2,300 affiliated physicians, an extensive ambulatory care network, home health care and associated support services, including clinical laboratories.  Scripps' clinical laboratories provide services for both hospital inpatients and outpatients and non-hospital patients.  Scripps's clinical laboratories are approved to receive payment for services under the Medicare program. Scripps also submitted a bid application to participate in the demonstration project.

10.     Plaintiff American Association of Bioanalysts ("AAB") is a national association representing the interests of clinical laboratory directors, owners, managers, supervisors, technologists, technicians and phlebotomists.  AAB also has a sub-organization, known as the National Independent Laboratory Association ("NILA"), that represents clinical laboratories themselves.  AAB's principal office is located in St. Louis, Missouri.  The mission of AAB is to promote excellence in clinical laboratory services by enhancing the professional skills of each of its members; promoting more efficient and productive operations; offering external quality control programs; collaborating with other professional associations and

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  government agencies; promoting safe laboratory practices; and educating legislators,
2  regulators, and the general public about clinical laboratory tests and procedures.
3  Many of AAB's members are the directors, owners and/or managers of clinical
4  laboratories that participate in the Medicare program and that submitted applications
5  to participate in the demonstration project.  Some laboratory members of NILA also
6  submitted bid applications in connection with the demonstration project.  AAB
7  brings this action on its own behalf and in its representative capacity on behalf of its
8  members who have been, and are being, affected by the demonstration project,
9  including the Secretary's refusal to return bid applications submitted under the
10  demonstration project and his intended use of information contained in those
11  applications.

12      11.    Plaintiff American Clinical Laboratory Association ("ACLA") is a
13  national association representing the interests of clinical laboratories.  ACLA is a
14  non-for-profit organization that is headquartered in Washington, D.C.  ACLA's
15  purpose is to advocate laws and regulations that recognize the essential role that
16  laboratory services play in delivering cost-effective health care; encourage the
17  highest standards of quality, service and conduct among its members and promote
18  public awareness about the value of laboratory services.  Many of ACLA's members
19  are clinical laboratories that participate in the Medicare program and that submitted
20  applications to participate in the demonstration project.  ACLA brings this action on
21  its own behalf and in its representative capacity on behalf of its members that have
22  been, and are being, affected by the demonstration project, including the Secretary's
23  refusal to return bid applications submitted under the demonstration project and his
24  intended use of information contained in those applications.

25      12.    AAB and ACLA shall be referred to collectively hereinafter as the
26  "Associational Plaintiffs."

27

28

1063263.3

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

## ASSOCIATIONAL PLAINTIFFS' STANDING

13.     Many of the members of the Associational Plaintiffs are laboratories that participate in the Medicare program and that submitted bid applications under the demonstration project.  These laboratories have been harmed, and will suffer further harm, due to the Secretary's unlawful retention and intended use of the information contained in the demonstration project bid applications, including data derived therefrom.

14.     The Associational Plaintiffs, as associations representing the interests of clinical laboratories and the directors, owners and managers of clinical laboratories that participate in the Medicare program and, as parties seeking to compel the Secretary to comply with federal law, have a right and an enforceable interest to maintain this action to: (1) enjoin Defendant's continuing violation of federal law; and (2) compel Defendant to comply with applicable federal laws.

15.     Under 28 U.S.C. § 2201, the Associational Plaintiffs are entitled to a declaration of their rights and/or their members' rights.

## EXISTING MEDICARE POLICY REGARDING
## CLINICAL LABORATORY SERVICES

16.     Clinical laboratory services are critical to the successful diagnosis and treatment of illnesses and diseases.  Due to their conditions, Medicare beneficiaries, who consist of the elderly and the disabled, require a disproportionately high level and quantity of health care services, including clinical laboratory services.  Indeed, Medicare beneficiaries on average typically use nearly three times as many laboratory tests as non-Medicare patients.  Clinical laboratories are highly regulated by federal and state law, including the Clinical Laboratory Improvement Amendment of 1988 ("CLIA"), codified at 42 U.S.C. § 263a and state licensing laws, Cal. Bus. & Prof. Code §§ 1200, et seq.  Under these laws and implementing regulations, a laboratory may only perform testing at the electronic or written

1  request of an authorized person, typically a physician, specifying the tests to be

2  performed.

3        17.    Under CLIA and state licensing statutes and regulations, and other

4  applicable laws, clinical laboratories routinely have to furnish certain types of

5  information to federal and state regulatory agencies for licensing, certification and

6  payment purposes.

7        18.    Under 42 U.S.C. § 1395l(h), the Secretary has established fee schedules

8  for clinical diagnostic laboratory tests other than laboratory tests performed by a

9  hospital for an inpatient.  The fee schedules, known commonly as the Medicare Part

10  B fee schedules, apply not only to independent clinical laboratories and physician

11  office laboratories but also to hospital laboratories which perform testing for

12  hospital outpatients and non-hospital patients.  The Secretary has committed himself

13  to developing Medicare policies governing the Medicare Part B fee schedules and

14  coverage for clinical laboratory testing (as well as other Medicare policies) through

15  compliance with the notice and comment rule-making procedures of the federal

16  Administrative Procedure Act ("APA"), 5 U.S.C § 553.  See, e.g., the final rules

17  governing Medicare coverage and administrative policies for clinical diagnostic

18  laboratory services published in the Federal Register ("Fed. Reg.") on November 23,

19  2001.  66 Fed. Reg. 58788-58890 (Nov. 23, 2001).  These latter rules were

20  established by the Secretary to develop national coverage and administrative

21  policies for clinical diagnostic laboratory services to promote Medicare program

22  integrity and national uniformity and to simplify administrative requirements for

23  clinical diagnostic laboratory services.  66 Fed. Reg. at 58788.

24        19.    Under the existing Medicare fee-for-service payment system,

25  laboratories furnishing services to Medicare beneficiaries are paid in accordance

26  with the Part B fee schedules.

27

28

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1063263.3

COMPLAINT FOR INJUNCTIVE RELIEF

**THE MEDICARE DEMONSTRATION PROJECT**

20.   Section 302(b) of the Medicare Prescription Drug Improvement, and Modernization Act of 2003 (Public Law 108-173) required the Secretary to conduct a demonstration project on the application of competitive acquisition for clinical laboratory services that would otherwise be paid under the Part B fee schedules of 42 U.S.C. § 1395l(h).   This Congressional directive was <u>codified</u> at 42 U.S.C. § 1395w-3(e), and was entitled "Demonstration Project for Clinical Laboratory Services."

21.   The governing statute specifically required the demonstration project to include tests paid under the Medicare Part B Clinical Laboratory Fee Schedule and excludes entities that have a "face-to-face encounter" with the patient (such as physician office laboratories and hospitals) and excludes pap smears and colorectal cancer screening tests.  <u>Id.</u>

22.   The controlling statute also incorporated the provisions of other subsections of 42 U.S.C. § 1395w-3, dealing with Medicare competitive acquisition programs in general, including the program requirements listed at 42 U.S.C § 1395w-3(b), such as those for awarding contracts, the term of such contracts, the number of contractors, etc.

23.   Significantly, while Congress authorized the Secretary to waive certain provisions of the Federal Acquisition Regulation in order to implement competitive acquisition programs, <u>see</u> 42 U.S.C. § 1395w-3(a)(1)(C), Congress did not authorize the Secretary to dispense with his longstanding compliance with the rule-making requirements of the APA.

24.   Pursuant to statute, the Secretary was required to submit a report to Congress regarding the Demonstration Project for Clinical Laboratory Services no later than December 31, 2005.  42 U.S.C. § 1395w-3(e)(3).  The Secretary did not do so until April 2006.  In that report, the Secretary informed Congress that the Laboratory Competitive Bidding Demonstration project was developed by Research

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1063263.3

Triangle Institute, International, ("RTI"), a private contractor. RTI held a meeting to discuss the planned design of the project in Massachusetts in August 2005, and CMS held conferences in October 2006 and July 2007 to discuss the proposed project. However, the Secretary did not identify the San Diego-Carlsbad-San Marcos area as the site of the project until October 17, 2007.

25. In an October 17, 2007 Federal Register notice, in addition to announcing the location of the demonstration project, the Secretary set forth some of the details regarding the laboratory demonstration project, including that the purported objective of the demonstration project was to determine whether competitive bidding could be used to provide Part B clinical laboratory services at fees below current Medicare payment rates while maintaining quality and access to care.

26. At a December 5, 2007 bidders' conference, CMS also distributed bidders' packages and other voluminous documents to the attendees setting forth the parameters of the demonstration project and the requirements applicants would have to meet in order to be declared winners. With respect to the application for participation, the bidder's package stated, "[t]he purpose of this application is to collect information from organizations that supply clinical laboratory services to Medicare beneficiaries . . . and bid prices for each demonstration test. The information will be used to determine bidding status, winners under the bidding competition, and the competitively-determined fee schedule for demonstration tests."

27. Under the demonstration project bidding process, laboratories were required to submit bids for each of 303 different laboratory tests, and also must bid on a fee for the collection and handling of laboratory specimens. In addition, bidding laboratories also had to provide extensive additional information, some of which was of a highly confidential, proprietary nature. Among other things, bidding laboratories to include in the bid applications: (a) personal identifying information

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  regarding their owners and directors; (b) financial information including, bank

2  accounts, reviewed or audited financial statements and credit reports; and (c)

3  notification of adverse legal action taken against the bidding laboratory or any of its

4  owners.  The information that was required to be included with the bid applications

5  went well beyond anything that laboratories normally have to furnish to any

6  regulatory agencies in connection with routine regulatory and reimbursement

7  activities.

8      28.    Bids had to be submitted on or before February 15, 2008; a date

9  selected by CMS and RTI and not mandated by Congress.  The bids would be

10  evaluated and, based upon that evaluation, clinical laboratories serving beneficiaries

11  residing in the competitive bid area would be designated by CMS as (a) "winners,"

12  (b) "non-winners," and (c) "passive" laboratories (i.e. bidders that have designated

13  themselves as small business, ESRD laboratories or nursing home/home health

14  laboratories and therefore exempt from the bidding process).

15      29.    Given the date on which the bidders' packages were distributed and

16  when bid applications were due to CMS, laboratories wishing to participate in the

17  demonstration project had a very abbreviated time frame to develop bid prices for

18  the 303 designated tests and to compile the extensive information required for the

19  bid applications.  Laboratories that did not submit applications by the February 15,

20  2008 deadline would automatically be declared losers under the demonstration

21  project and therefore would be precluded from servicing Medicare beneficiaries in

22  the demonstration project area.  In effect, the timely submission of a bid application

23  was a "do or die" proposition for many laboratories, including the some of the

24  Plaintiffs and/or their members.

25      30.    None of the details of the demonstration project were developed

26  through a formal notice and comment process.  Among other things, only

27  laboratories located in the demonstration area and/or serving beneficiaries in that

28  area were invited to attend the bidder's conference, which represented the most

1063263.3

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  significant opportunity for public input on the Secretary's design and
2  implementation of the demonstration project.

3      31.    In all documents issued by the Secretary in connection with the
4  demonstration project, including Federal Register notices, the bidder's packages,
5  and other notices or alerts, the Secretary represented that the demonstration project,
6  including the collection of bid applications, was being carried out under the auspices
7  of the demonstration project statute set forth in the Medicare Act.

8      32.    The Secretary represented at all times, including in both written notices
9  and during the bidder's conference, that the information contained in the
10 demonstration project bid applications was being collected for the purpose of
11 designating winners and losers under the demonstration project and setting the
12 payment rates under the demonstration project.  At no time prior to the submission
13 of the bid applications did the Secretary indicate that the information used therein
14 would be used for any purpose other than carrying out the demonstration project.

15

16 **LITIGATION CONCERNING THE DEMONSTRATION PROJECT**

17     33.    On January 29, 2008, more than two weeks prior to the date bid
18 applications were to be submitted under the demonstration project, Plaintiffs
19 Internist, Sharp and Scripps filed the present lawsuit concerning the demonstration
20 project.  The original Complaint in the action set forth several causes of action
21 against the Secretary related to the development and implementation of the
22 demonstration project.  In particular, the Complaint alleged that the demonstration
23 project was unlawful because it was implemented by the Secretary without
24 compliance with the notice and comment provisions of the APA.  The Complaint
25 sought prospective and injunctive relief barring the Secretary from implementing the
26 demonstration project, including the submission of bids and "such other and further
27 relief as the Court deems necessary and appropriate."

28     34.    Less than a week after the original Complaint was filed, and still well

1063263.3

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

1   in advance of the February 15, 2008 bid submission date, Plaintiffs Internist, Scripps

2   and Sharp applied to the Court for a temporary restraining order ("TRO") to stop the

3   Secretary from implementing the demonstration project.  The application for TRO

4   specifically requested that the Court prohibit the Secretary from carrying out the

5   demonstration project, including collecting bids from impacted laboratories.  By

6   order dated February 14, 2008, the Court denied the TRO application based mainly

7   on concerns about its own jurisdiction over the case, which were fueled by then yet

8   to be rebutted assertions from the Secretary that administrative remedies would be

9   available to laboratories aggrieved by the demonstration project.   These

10  representations were shown upon further briefing to be baseless and expressly

11  contradicted by documents generated by the Secretary and his agents.

12       35.    As part of the TRO Order, the Court directed the Plaintiffs to submit a

13  brief addressing three questions related to the Court's jurisdiction and the

14  justiciability of the dispute.  The Plaintiffs complied with the Court's order and filed

15  the required brief on February 28, 2008.

16       36.    On March 10, 2008, while the Court's ruling on the jurisdictional

17  issues was pending, the Plaintiffs filed a Motion for Preliminary Injunction to stop

18  the Secretary's continued implementation of the demonstration project.  Since bid

19  applications already had been submitted, the Plaintiffs' injunction request asked

20  specifically for an order from the Court requiring the Secretary to return the bid

21  applications to the laboratories who submitted them.

22       37.    The Court issued two separate opinions related to the Plaintiffs'

23  preliminary injunction request.  On April 4, 2008, the Court issued an order finding

24  that it had jurisdiction over the Plaintiffs' claims.  Then, on April 8, 2008, the Court

25  issued an order granting the Plaintiffs' request for a preliminary injunction.  The

26  order granting the preliminary injunction found that the Plaintiffs had adequately

27  shown that they were likely to succeed on the merits of several of their claims,

28  including their assertion that the entire demonstration project was invalid due to the

1063263.3

12

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111  •  FAX: (310) 551-8181

1  Secretary's failure to comply with the procedural mandates of the APA, and that the

2  Plaintiffs would endure irreparable harm if the demonstration project was not

3  enjoined.  As part of the order, the Court expressly precluded the Secretary from

4  "further disclosing any information included in the bid applications submitted in

5  connection with" the demonstration project.

6      38.     After the Court issued its ruling on the Plaintiffs' injunction request,

7  the Secretary represented that he complied with the Court's order and did "halt

8  implementation" of the demonstration project, such that "the winning bidders were

9  never announced, and payments were never made under competitively-set rates in

10  the demonstration project area."  However, the Secretary did not, at this time, return

11  any of the bid applications to the laboratories that submitted them.

12      39.     On July 15, 2008, Congress passed the Medicare Improvements for

13  Patients and Providers Act of 2008 ("MIPPA"), Pub. L. 110-275, § 145, 122 Stat.

14  2494 (2008).    This law repealed the original statutory authority for the

15  demonstration project.  Consequently, the Secretary was forced to permanently

16  cease all plans to further implement the demonstration project.

17      40.     Subsequent to the repeal of the demonstration project statute, the

18  Plaintiffs and the Secretary communicated regarding the continuation of the present

19  lawsuit.  The Plaintiffs indicated that they would be willing to voluntarily dismiss

20  the case and agree to the Court vacating its orders on the preliminary injunction if

21  the Secretary would stipulate not to use the information contained in the bid

22  applications submitted in connection with the demonstration project for any

23  purpose, including setting Medicare reimbursement rates for laboratory services.

24  The Secretary would not agree to these terms and instead offered only to not

25  disclose proprietary information that identifies individual bidders (which he is

26  obligated to do in any event under certain federal laws).  When the Plaintiffs refused

27  to alter their position on the use of the bid information, the Secretary broke off the

28  dialogue.

1063263.3

41.     On August 8, 2008, the Secretary filed a Motion to Dismiss On Grounds of Mootness, Dissolve the Preliminary Injunction, and Vacate the Court's Interlocutory opinions regarding the Plaintiffs' lawsuit ("MTD").  The Secretary argued in the MTD that, since Congress repealed the statutory authority for the demonstration project, there no longer was a live controversy between the parties and that the matter therefore was moot.  The Secretary also asked the Court to dissolve the previously issued injunction on ostensibly that same basis.  The Secretary's MTD made no mention of his continued possession of the bid applications and related information.

42.     On September 5, 2008, Plaintiffs Internist, Scripps and Sharp opposed the Secretary's MTD.  The Plaintiffs maintained that the case was not moot because there was an issue related to the demonstration project that still was in dispute.  Specifically, the Plaintiffs maintained that the Secretary's refusal to return the bid applications or agree that he would not use the information contained therein was unlawful and that additional Court intervention therefore was warranted.

43.     On March 25, 2009, the Court issued an order on the Secretary's MTD.  Although the Court granted the Secretary's motion to dismiss the Plaintiffs' original Complaint, the Court acknowledged that the Secretary's retention of the bid information constituted a live controversy between the parties.  However, the Court concluded that the original Complaint, as pleaded, did not include specific enough allegations related to that particular issue.  The Court therefore expressly granted the Plaintiffs' leave to amend the Complaint to set forth a cause of action challenging the Secretary's retention and intended use of the bid application information.  The Court also denied the Secretary's request to have the preliminary injunction dissolved and to vacate the Court's previous interlocutory orders in the case.  Finally, the Court made clear that its original injunction order precluded the Secretary from disclosing the bid application information to other parties.

44.     Subsequent to the issuance of the Court's order on the MTD, the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111  •  FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   Plaintiffs once again resumed discussions with the Secretary regarding his retention

2   of the bid information in an attempt to avoid further litigation in the case.

3   Specifically, the Plaintiffs renewed their request that the Secretary return the bid

4   application information and that he agree not to use the information for any purpose.

5   The Secretary remained steadfast in his position that he was not obligated to return

6   the information.  Further, the Secretary specifically represented that he intended to

7   use the information contained in the bid applications for "analysis purposes."

8

9                                    **COUNT ONE**

10   (Violation of the Administrative Procedure Act, 5 United States Code §§ 710-706)

11        45.    The allegations of paragraphs 1 – 44 above are incorporated herein by

12   reference.

13        46.    Under the APA, 5 U.S.C. §§ 701-706, courts must overturn agency

14   action that is arbitrary, capricious, an abuse of discretion or not otherwise in

15   accordance with the law.

16        47.    The Secretary's retention of the demonstration project bid applications

17   and his intention to use the information set forth in those applications, including data

18   derived therefrom, for purposes unrelated to the demonstration project is invalid

19   under the APA because it is arbitrary, capricious and an abuse of discretion for the

20   following reasons:

21             (a)    The Secretary no longer has any authority to use the information

22   contained in applications submitted under the demonstration project because the

23   statutory basis for the project has been repealed.  The Secretary only was authorized

24   to collect the bid information in the first instance for the purpose of carrying out

25   Congress' statutory directive that he implement a demonstration project for clinical

26   laboratory services under the Medicare program.  The Secretary's use of the bid

27   information therefore necessarily was limited to carrying out the demonstration

28   project.  As the statutory basis for the demonstration project no longer exists, the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   Secretary no longer has any authority to use the bid information;

2          (b)    It is arbitrary and capricious for the Secretary to use the bid

3   information now because he was never legally authorized to collect it initially

4   because of his failure to follow the procedural requirements of the APA in

5   implementing the demonstration project.  The Court already has determined that the

6   Plaintiffs have a substantial likelihood of prevailing on their procedural APA claim

7   with regard to the demonstration project.  Had the Secretary actually engaged in the

8   required rulemaking when rolling out the demonstration project, the bid applications

9   may have changed dramatically in terms of the information the bidding laboratories

10  were required to provide.  Among other things, the information that the Secretary

11  collected through the bid applications exceeds the scope of his authority as follows:

12          (i)    The Secretary collected bid applications from laboratories

13  that never should have been required to submit them, including some of the

14  Plaintiffs and/or their members.  The Court determined that there was merit to the

15  Plaintiffs' claim that the Secretary failed to exclude from the demonstration project

16  all laboratories that have a "face-to-face" encounter with patients, as was required

17  by the now-repealed demonstration project statute;

18          (ii)   The Secretary has in his possession information that he

19  never was authorized to collect in the first place.  The Court recognized the validity

20  of the Plaintiffs' claim that the Secretary violated the terms of the demonstration

21  project statute, which extended only to laboratory tests, by required providers to

22  submit bids for the collection and handling of laboratory specimens;

23          (c)    The Secretary intends to use the information contained in the bid

24  applications for a purpose to which the bidders did not consent.  As explained

25  above, the Secretary represented that the bid information would be used only for

26  purposes related to carrying out the demonstration project.  Therefore, the bidding

27  laboratories were consenting for the Secretary to use the information only for those

28  purported purposes, if at all.  It is arbitrary, capricious and an abuse of discretion for

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1  the Secretary to use the information for an as-of-yet undisclosed purpose to which

2  the bidding laboratories did not consent;

3          (d)   It is arbitrary and capricious for the Secretary to use the

4  information contained in, or derived from, the bid applications because this

5  information was complied by the laboratories under extremely rushed, effectively

6  coerced circumstances, for a very limited purpose.  It is unreasonable for the

7  Secretary to assume that this information has any value or utility outside of the

8  context of a competitive bidding program for clinical laboratories.

9

10  **COUNT TWO**

11  (Violation of the United States Constitution – Fourth Amendment)

12      48.   The allegations of paragraphs 1 – 44 above are incorporated herein by

13  reference.

14      49.   The Fourth Amendment of the United States Constitution establishes

15  the right for parties to be secure in their persons, houses, papers, and effects, against

16  unreasonable searches and seizures.  In acting as alleged in this Complaint, the

17  Secretary and his agents violated the rights of the Plaintiffs' and/or their members to

18  be free from unreasonable searches and seizures.

19      50.   As part of the demonstration project bidding process, bidding

20  laboratories were required to submit information to the Secretary well beyond

21  anything they would have had to furnish in connection with normal regulatory

22  activities, including highly confidential and proprietary information.  Under the

23  rules of the demonstration project, submission of this information was mandatory

24  for any laboratory that did not want to face the prospect of being automatically

25  excluded from furnishing services to Medicare beneficiaries residing the

26  demonstration project area.

27      51.   Bidding laboratories, including the Plaintiffs and/or their members,

28  submitted the information required by the bid applications solely for the purpose of

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1   being able to compete in the demonstration project.  They were never informed in

2   any way that information would or could be used for another purpose.  Accordingly,

3   the laboratories' consent to allow the Secretary to use the information contained in

4   the bid applications was limited.

5        52.    Upon the injunction of the demonstration project and the later repeal of

6   the demonstration project statute, the laboratories' consent and permission for the

7   Secretary to use the information contained in the bid applications ended.

8   Consequently, the Secretary must return the bid applications and refrain from using

9   the information contained therein under the Fourth Amendment because the

10   continued seizure of the applications and information contained therein is

11   unreasonable.

12        53.    As a direct and proximate result of the Secretary's actions, described in

13   this Complaint, Plaintiffs and/or their members have suffered and are continuing to

14   suffer harm in the form of loss of liberty and invasion of privacy.

15        54.    In acting as is alleged in this Complaint, the Secretary acted knowingly

16   and willfully and in disregard of the federally protected rights of the Plaintiffs

17   and/or their members.

18

19   **COUNT THREE**

20   (Declaratory Relief)

21        55.    The allegations of paragraphs 1 – 44 above are incorporated herein by

22   reference.

23        56.    An actual and justiciable controversy exists between the Plaintiffs and

24   the Secretary regarding the Secretary's retention and intended use of the information

25   contained in bid applications submitted in connection with the demonstration

26   project.  Plaintiffs contend that the Secretary has no legal authority to retain and use

27   this information and that for him to do so is arbitrary, capricious and abuse of

28   discretion and a violation of the Fourth Amendment of the Constitution, while the

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL: (310) 551-8111 • FAX: (310) 551-8181

1 Secretary contends that he has the authority to retain and use the information

2 contained in the bid applications, as well as data derived therefrom.

3      57.    Accordingly, pursuant to 28 U.S.C. § 2201, the Plaintiffs request this

4 Court to declare that the Secretary is not authorized to retain or use information

5 contained in bid applications submitted under the demonstration project, or any

6 additional data that can be derived from that information.

7      58.    No administrative appeal process or other administrative remedy is

8 available to Plaintiffs to challenge the Secretary's retention and intended use of

9 information contained in bid applications submitted under the demonstration project.

10

11 <center>**INJUNCTIVE RELIEF IS NECESSARY**</center>

12      59.    To prevent the Plaintiffs and their members and others from being

13 further irreparably harmed, the Secretary and his agents must be enjoined from

14 unlawfully and arbitrarily withholding the bid applications and using the

15 information contained therein or data derived therefrom.

16

17 <center>**PRAYER**</center>

18     WHEREFORE, Plaintiffs Internist, Sharp, Scripps, AAB and ACLA pray as

19 follows:

20      1.    For an order enjoining the Secretary and his agents from using for any

21 purpose, or disclosing, any information, or any data derived therefrom, contained in

22 any bid application submitted under the demonstration project, including but not

23 limited to applications submitted by the Plaintiffs and/or their members; and

24      2.    For an order compelling the Secretary and his agents, including CMS,

25 to return all bid applications submitted under the demonstration project to the

26 bidders, to destroy any copies of those bid applications currently in his possession

27 and to purge from any system for storing data, electronic and non-electronic, any

28 information contained in the bid applications, or data derived therefrom, that the

1063263.3

HOOPER, LUNDY & BOOKMAN, INC.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  Secretary has recorded; and

2          3.      For an order declaring that the Secretary has no legal authority to retain

3  the bid applications submitted under the demonstration project or to use information

4  contained in the bid applications, including any data derived therefrom, for any

5  purpose and for an order declaring that the Secretary's retention of the bid

6  applications and intended use of the information contained therein, including any

7  data derived therefrom, is arbitrary, capricious, an abuse of discretion and a

8  violation of the rights of the Plaintiffs and/or their members under the Fourth

9  Amendment of the United States Constitution.

10         4.      For costs of suit, including reasonable attorneys fees; and

11         5.      For such other and further relief as the Court deems necessary and
   appropriate.

12

13 DATED: April 27, 2009               HOOPER, LUNDY & BOOKMAN, INC.

14

15                                     By:_____/ JORDAN B. KEVILLE_____

16                                     Attorneys for Plaintiffs Sharp Healthcare,
                                       Internist Laboratory, Scripps Health, American
17                                     Association of Bioanalysts and American
                                       Clinical Laboratory Association
18

19

20

21

22

23

24

25

26

27

28