

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARP HEALTHCARE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> KATHLEEN SEBELIUS, Secretary of the Department of Health and Human Services, <br><br> Defendant. | CASE NO. 08-CV-0170 W POR <br><br> ORDER: <br><br> 1) GRANTING PLAINTIFFS' EX-PARTE MOTION FOR LEAVE TO FILE EXCESS PAGES [DOC. NO. 42.] <br><br> 2) GRANTING DEFENDANT'S EX-PARTE MOTION FOR LEAVE TO FILE EXCESS PAGES [DOC. NO. 47.] <br><br> 3) GRANTS-IN-PART AND DENIES-IN-PART DEFENDANT'S MOTION TO DISMISS [DOC.NO. 41.] |

Plaintiffs Sharp Healthcare, Internist Laboratory, Scripps Health, the American Association of Bioanalysts, and the American Clinical Laboratory Association (jointly, "Plaintiffs") filed a First Amended Complaint ("FAC") against Defendant Charles Johnson, the acting Secretary of the Department of Health and Human Services

("Secretary" or "Defendant"). On May 4, 2009, Secretary Kathleen Sebelius was substituted in her official capacity as the Defendant in this case. (See Doc. 39 n.1.) Defendant has now filed a motion to: (1) dismiss the complaint, (2) dissolve the preliminary injunction, and (3) vacate the Court's interlocutory opinions.

The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal. Civ. R. 7.1(d)(1). After a thorough review of the parties' submissions, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motion to dismiss. Additionally, the Court **DENIES** the motion to dissolve the preliminary injunction and vacate the Court's interlocutory opinions.

I. **BACKGROUND**

This litigation involves Part B of the Medicare program. Medicare Part B is a voluntary insurance program that covers a portion of the costs for, among other things, clinical diagnostic laboratory services for Medicare beneficiaries. Typically, Medicare pays for clinical laboratory services on a fee-for-service basis according to the Medicare Part B Clinical Laboratory Fee Schedule established in 1984.

In 2003, Congress passed the Medicare Prescription Drug Improvement and Modernization Act of 2003, 42 U.S.C. § 1395w–3. The statute required the Secretary, through the Center for Medicare and Medicaid Services ("CMS"), to conduct a demonstration project on the application of competitive acquisition for payment of clinical diagnostic laboratory tests that would otherwise be covered by the Medicare Part B Fee Schedule. 42 U.S.C. § 1395w–3(e). The statute also required Defendant to designate competitive acquisition areas where the project will be implemented. Id.

On October 17, 2007, Defendant announced the San Diego-Carlsbad-San Marcos area as the first competitive acquisition demonstration site. See 72 Fed.Reg. 58856-01. Under the bidding process, laboratories had to submit bids for 303 laboratory tests, and for the collection and handling of laboratory specimens. Laboratories were required to bid for each of the 303 tests, even if the laboratory did not provide the

specific test. Bids would then be evaluated based on CMS's determination of the "best value for the Medicare program," using price and non-price criteria. The deadline for submitting bids was February 15, 2008. The winning bidders would have been announced on April 11, 2008.

On January 29, 2008, Plaintiffs filed this lawsuit seeking to enjoin Defendant from implementing the demonstration project. The Complaint included four counts. Count I alleged Defendant violated notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b), in developing certain demonstration project rules. In Count II, Plaintiffs alleged that three of Defendant's rules (including the limitation on the face-to-face exception) violate sections 701–706 of the APA because the rules are arbitrary, capricious, an abuse of discretion or not otherwise in accordance with the law. Count III alleged that Defendant's rules would cause a taking in violation of the Fifth Amendment to the United States Constitution. In Count IV, Plaintiffs claimed that Defendant had violated 42 U.S.C. § 1395w–3(e) by increasing the scope of the demonstration project to include collecting and handling laboratory specimens.

On February 4, 2008, Plaintiffs filed a motion for a Temporary Restraining Order ("TRO") to enjoin the demonstration project before the February 15, 2008, application deadline. On February 14, 2008, the Court denied the motion because Defendant had raised serious issues regarding the Court's jurisdiction–thereby preventing a finding that Plaintiffs had a likelihood of success on the merits– and because Plaintiffs had failed to establish that they would suffer irreparable harm by having to comply with the application deadline. In light of the serious jurisdictional issues raised by Defendant, the Court also issued an order to show cause ("OSC") requiring the parties to provide briefing regarding whether jurisdiction existed, and whether Plaintiffs had standing.

On March 10, 2008, Plaintiffs filed a preliminary injunction motion seeking to enjoin the demonstration project before April 11, 2008, the date Defendant would have announced the winning bidders. After Plaintiffs' motion was filed, the parties filed their

briefs on the OSC. On April 4, 2008, the Court issued an Order that found that the Court had jurisdiction and that Plaintiffs' claims were ripe for review.

On April 8, 2008, the Court granted Plaintiffs' motion for a preliminary injunction enjoining Defendant from (1) announcing winners in the laboratory services demonstration project at issue; (2) implementing the laboratory services demonstration project; and (3) disclosing any information included in the bid applications submitted in connection with the laboratory services demonstration project.

On July 15, 2008, Congress passed the Medicare Improvements for Patients and Providers Act of 2008 ("MIPPA"). Pub.L. 110-275, § 145, 122 Stat. 2494 (2008). Both parties agree that this law repealed the original statutory authority for the demonstration project. In other words, the demonstration project for which Plaintiffs submitted bids no longer exists.

On August 8, 2008, Defendant filed a motion to: (1) dismiss on mootness grounds, (2) dissolve the preliminary injunction, and (3) vacate the Court's interlocutory opinions. This Court granted the motion to dismiss because the statute giving rise to Plaintiffs' claims had been repealed by act of Congress, rendering the existing causes of action moot. The Court was persuaded, however, that a controversy still existed between the parties. Specifically, Plaintiffs' object to Defendant's retention of the bid applications and the information they contain. As such, the Court granted leave to amend and denied Defendant's request to dissolve the preliminary injunction or vacate prior orders.

Plaintiffs filed their FAC seeking an order from this Court to compel the Secretary to return the bid applications and to preclude her from using or improperly disclosing the information set forth in those applications for any purpose.[1] The FAC

---

[1] In a footnote, Defendant also argues that Plaintiffs have improperly added two new organizational plaintiffs to the FAC. Defendant requests that these two new parties be dismissed because they were added without leave of the Court pursuant to Rule 21. (Doc. No. 41 at 10 n.3.) In opposition, Plaintiffs argue that Rule 21 is inapplicable to the asserted issue and that the additional authority cited by Defendant is also not instructive. (Doc. No. 43 at 8–9 n.2.) The Court agrees. The additional

contains three counts. Count I alleges a violation of the Administrative Procedure Act ("APA"). In Count II, Plaintiffs allege that the retention of the bidding applications constitutes a violation of the Fourth Amendment. And in Count III, Plaintiffs seek declaratory relief in regards to the Secretary's authority to retain or use information contained in the bid applications.

The Secretary has now moved to dismiss the FAC. Plaintiffs filed an opposition.[2] Defendant then filed a Reply.[3]

## II.   LEGAL STANDARD

Rule 12(b)(1) provides that a court may dismiss a claim for "lack of jurisdiction over the subject matter[.]" Fed. R. Civ. P. 12(b)(1). Although the defendant is the moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction. Therefore, the plaintiff bears the burden of proof on the necessary jurisdictional facts. McCauley v. Ford Motor Co., 264 F.3d 952, 957 (9th Cir. 2001).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (citing Thornhill Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979)); see also Marriot Int'l, Inc. v. Mitsui Trust & Banking Co., Ltd., 13 F. Supp. 2d 1059, 1061 (9th. Cir. 1998).

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule

---

plaintiffs shall not be dismissed.

[2] With their Opposition, Plaintiffs also filed an ex parte motion for leave to file excess pages. Their request was not opposed. Having read the moving papers, and good cause appearing, the Court **GRANTS** the motion. (Doc. No. 42.)

[3] With their Reply, Defendant also filed an ex parte motion for leave to file excess pages. Their request was not opposed. Having read the moving papers, and good cause appearing, the Court **GRANTS** the motion. (Doc. No. 47.)

12(b)(6) tests the complaint's sufficiency. See North Star Int'l. v. Arizona Corp. Comm'n., 720 F.2d 578, 581 (9th Cir. 1983). All material allegations in the complaint, "even if doubtful in fact," are assumed to be true. Id. The court must assume the truth of all factual allegations and must "construe them in the light most favorable to the nonmoving party." Gompper v. VISX, Inc., 298 F.3d 893, 895 (9th Cir. 2002); see also Walleri v. Fed. Home Loan Bank of Seattle, 83 F.3d 1575, 1580 (9th Cir. 1996).

As the Supreme Court recently explained, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

### III. DISCUSSION

As a preliminary matter, it should be noted that both parties cited the applicable legal standards for 12(b) motions. Yet despite these recitations, both parties have attempted to elicit legal determinations from this Court that are beyond the scope of the instant proceeding. The Court has declined to do so and has endeavored to limit itself to the relevant legal determinations for a 12(b) motion.

This Court originally dismissed this lawsuit because the causes of action—as pled at the time—did not adequately encompass the ongoing retention of the bid applications. That deficiency was not the result of poor pleading on the part of the Plaintiffs. Rather, as mentioned above, the statute upon which the lawsuit was based had been repealed by Congress. In that unique factual setting, this Court maintained the previously ordered injunction and granted Plaintiffs leave to amend.

As mentioned above, Plaintiffs' FAC includes three counts. The Secretary has moved to dismiss all three. The Court will address the arguments in the order in which they appear in the Complaint. And for the reasons discussed below, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the motion to dismiss.

### A. Plaintiffs' APA Claim Is Not Dismissed

In Count I, Plaintiffs assert that the Secretary's retention of the demonstration project bid applications is a violation of the Administrative Procedure Act ("APA"). See 5 U.S.C. § 706(2). Specifically, Plaintiffs claim that Defendant's retention of the bid applications is invalid under the APA because: (1) the statutory authority to use the information no longer exists; (2) authority to collect the bids may not have ever existed; (3) the Secretary intends to use the information contained in the bid applications for a purpose to which the bidders did not consent; and (4) because the information is unreliable and therefore has no real utility. (FAC ¶¶ 45–47.)

The Secretary argues that Plaintiffs' APA claim must be dismissed because the doctrines of standing and ripeness preclude their APA claim on jurisdictional grounds. (Doc. No. 41 at 9.) In support, she argues that: (1) Plaintiffs' claim is too speculative,; (2) that Plaintiffs have failed to identify the "final agency decision" that is necessary to maintain their APA claim; and (3) that her retention and anticipated analysis of the bid applications is within her general authority to make recommendations concerning Medicare operations. The Court strongly disagrees.

The Secretary was only able to attain the bidding applications because of statutory authority pursuant to 42 U.S.C. § 1395w–3. The original Bidders Package included this explanation in regards to the confidentiality of the applications:

> Information from individual bids will not be released at any time. The bids are exempt from the Freedom of Information Act (FOIA). The bid information will be used for both demonstration operations and the demonstration evaluation.

(*Def.'s Mot, Bidder's Package* at 51.) As seen, the Bidder's Package appears to limit the use of the information to the actual demonstration.

Despite this express limitation—and despite the fact that the authority used to collect the bids no longer exists—the Secretary has retained the applications and has continually alluded to her intention to use the information for some other yet-to-be-revealed purpose. (See e.g. Doc. No. 41 at 14 (indicating "the Secretary *could* reference the results of the analysis in a report to Congress.") (emphasis added).

Because she has been purposefully coy, only the Secretary actually knows what she intends to do with the bid applications. But in the instant motion, she has the audacity to ask this Court to dismiss Plaintiffs claim because they can not accurately define her secret intent. (See Doc. No. 41 at 12:14–16 ("...any ultimate use that plaintiffs might suggest is purely speculative.")) The Court will not endorse this tactic. More importantly, federal pleading standards do not require such specificity. Twombly, 550 U.S. at 555. Plaintiffs have sufficiently pled a potential injury in Count I because the Secretary's authority to possess the information is in question and because the use of that information beyond the demonstration project may constitute an abuse of discretion. See 5 U.S.C. § 706(2).

Nor is the Court persuaded by the Secretary's contention that standing is lacking because Plaintiffs have not identified a "final agency action."[4] (Doc. No. 41 at 10.)

Defendant is correct that in order to be subject to challenge under the APA, the agency action must be final. Oregon Natural Desert Ass'n v. U.S. Forest Serv., 465 F.3d 977, 982 (9th Cir. 2006) (citing 5 U.S.C. § 704; Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990); Ukiah Valley Med. Ctr. v. FTC, 911 F.2d 261, 264 n. 1 (9th Cir.1990) ("finality is ... a jurisdictional requirement")). Agency action is final if it marks the consummation of the agency's decision making process, and results in the determination of rights or obligations. Bennett v. Spear, 520 U.S. 154, 178 (1997). In

---

[4] This is not the first time that Secretary has unsuccessfully raised this argument with the Court. (See Doc. No. 23 at 7.)

making this determination, however, this Court is specifically instructed that "the finality element must be interpreted in a pragmatic and flexible manner." <u>Oregon Natural Desert Ass'n</u>, 465 F.3d at 982 (internal citations and quotations omitted).

Here, there is no dispute that the demonstration project has been repealed. Thus, the Secretary's decision to retain the applications for some other use is the consummation of her decision making process with respect to the now-nonexistent demonstration project.

Lastly, the Secretary argues that she is expressly authorized by Congress to make continuing studies in regards to Medicare, and thus, her retention of the bid applications is proper. (Doc. No. 41 at 17; citing 42 U.S.C. § 1395ll(2).) Moreover, the Secretary claims that when Congress repealed the demonstration project it did not explicitly require her to return the bid information, and in the absence of such a command, she is authorized to retain it. See 42 U.S.C. § 1395w-3(e).

The Secretary does have broad authority, based upon her "significant expertise" over Medicare's "complex and highly technical regulatory program." <u>Amgen, Inc. v. Smith</u>, 357 F.3d 103, 106 (D.C. Cir. 2004) (quoting <u>Tenet HealthSystems HealthCorp. v. Thompson</u>, 254 F.3d 238, 248 (D.C. Cir. 2001)). But at this stage in the proceeding, the Court believes that it would be improper to vest such authority within Congressional silence. If anything, Congress' silence should indicate that the authority to possess the bid applications was repealed in its entirety.

Accordingly, the Court **DENIES** the Secretary's motion to dismiss Count I.

### B. Plaintiffs' Fourth Amendment Claim Is Dismissed

In Count II, Plaintiffs assert that the Secretary's retention of the demonstration project bid applications is a violation of the Fourth Amendment of the United States Constitution. (*Compl* ¶ 48–54.) Specifically, Plaintiffs claim that the information they were "required" to submit exceeded the scope of normal regulatory activities. (*Id.*) The continued possession of the bid applications constitutes an unlawful seizure which is resulting in a loss of liberty and an invasion of privacy. (*Id.*)

The Secretary argues that this claim must be dismissed pursuant to Rule 12(b)(6) because Plaintiffs' original submissions were voluntary and the Fourth Amendment is simply not implicated in this context. (Doc. No. 41 at 19–24.) The Court agrees.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Plaintiffs are correct that its protections do extend into non-law enforcement areas. U.S. v. Attson, 900 F.2d 1427, 1430 (9th Cir. 1990). But courts have been "careful to limit this expansion to governmental conduct that can reasonably be said to constitute a "search" or a "seizure" within the meaning of the fourth amendment." Id. For example, the Fourth Amendment could be implicated if an administrative agency was conducting an investigation into violations of criminal laws or breaches of some other regulatory standard. Id.

The Court can not find anything similar in the present case. Plaintiffs have not claimed that this was an investigation or that there was any sort of physical intrusion by the Secretary. This case is simply not analogous to Vaughn v. Baldwin, 950 F.2d 331 (6th Cir. 1991) (where a dentist supplied financial documents to the IRS in response to an investigatory summons and ultimately sued for their return). In the present situation, Plaintiffs voluntarily submitted their applications to the demonstration project, even though they were simultaneously pursuing legal remedies.

In opposition, Plaintiffs disagree with this conclusion and contend that the submissions of their bid applications was compelled due to their fear of being automatically excluded from the Medicare program. (Doc. No. 43 at 17–18.) This argument must fail because—even though they might believe it be economically mandatory—Plaintiffs participation in Medicare is enitrely voluntary. See e.g. Garelick v. Sullivan, 987 F.2d 913 (2nd Cir. 1993) (finding in a similar context that "economic hardship is not equivalent to legal compulsion...."). 

Because the Court does not find a cognizable legal theory exists to support the finding of a "search" or a "seizure" within the present context; Plaintiffs' attempt to implicate the Fourth Amendment by characterizing the ongoing controversy as a

withdrawal of their 'consent' to the Secretary's possession of their documents fails. The Court is also unable to see how the retention of the bid applications would rise to the level of a *constitutional* privacy interest for these *corporate* plaintiffs. See e.g. Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 284 (1989) (O'Connor, J., concurring in part) (explaining that a corporation has no constitutional right to privacy); see also U.S. v. Morton Salt Co., 338 U.S. 632, 652 (1950) (emphasizing that while corporations may have some protection under the Fourth Amendment they can "can claim no equality with individuals in the enjoyment of a right to privacy.").

In sum, this case does present unique challenges, but it does not contain sufficient facts to state a cognizable theory under the Fourth Amendment. Robertson, 749 F.2d at 534.

As such, the Secretary's motion in regards to Count II is **GRANTED WITHOUT LEAVE TO AMEND**.

### C. Plaintiffs' Claim For Declaratory Relief Is Not Dismissed

In Count III, Plaintiffs seek declaratory relief based upon the Secretary's violations of the APA (Count I) and the Fourth Amendment (Count II). (*Compl* ¶ 55–58.) The Secretary argues this claim should be dismissed if the other two counts are dismissed. (Doc. No. 41 at 25.)

In light of the foregoing, however, Plaintiffs' APA claim still exists. As such, Count III is not subject to dismissal. Accordingly, the Court **DENIES** the Secretary's motion to dismiss Count III.

//
//
//
//
//

IV. **CONCLUSION**

In light of the foregoing, the Court:

1. **DENIES** Defendant's motion to dismiss Counts I and III.
2. **GRANTS** Defendant's motion to dismiss Count II **WITH PREJUDICE.**
3. **DENIES** Defendant's motion for vacatur of the Court's prior orders and dissolution of the preliminary injunction.

**IT IS SO ORDERED.**

DATE: March 18, 2010

HON. THOMAS J. WHELAN
United States District Court
Southern District of California